# IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

|  |  |
|---|---|
| PJM Transmission Owners,<br><br>*Petitioners*<br><br>v.<br><br>Federal Energy Regulatory Commission,<br><br>*Respondent* | Case No. 25-1064 |

## PETITION FOR REVIEW

Petitioners American Electric Power Service Corporation on behalf of its affiliates, Appalachian Power Company, Indiana Michigan Power Company, Kentucky Power Company, Kingsport Power Company, Ohio Power Company, Wheeling Power Company, AEP Appalachian Transmission Company, Inc., AEP Indiana Michigan Transmission Company, Inc., AEP Kentucky Transmission Company, Inc., and AEP Ohio Transmission Company, Inc.; The Dayton Power and Light Company d/b/a AES Ohio; Dominion Energy Services, Inc. on behalf of Virginia Electric and Power Company d/b/a Dominion Energy Virginia; Duke Energy Corporation on behalf of its affiliates Duke Energy Ohio, Inc., Duke Energy Kentucky, Inc., and Duke Energy Business Services LLC; Duquesne Light Company; East Kentucky Power Cooperative, Inc.; Exelon Corporation on behalf

of its affiliates Atlantic City Electric Company, Baltimore Gas and Electric Company, Commonwealth Edison Company, Delmarva Power & Light Company, PECO Energy Company, and Potomac Electric Power Company; FirstEnergy Service Company, on behalf of its affiliates American Transmission Systems, Incorporated, Jersey Central Power & Light Company, Mid-Atlantic Interstate Transmission LLC, The Potomac Edison Company, Monongahela Power Company, Keystone Appalachian Transmission Company, and Trans-Allegheny Interstate Line Company; and PPL Electric Utilities Corporation ("PJM Transmission Owners") seek review in this Court pursuant to Section 313(b) of the Federal Power Act ("FPA"), 16 U.S.C. § 825*l*(b), Federal Rule of Appellate Procedure 15(a), and D.C. Circuit Rule 15 of the following orders issued by the Federal Energy Regulatory Commission ("FERC"):

1. *Duquesne Light Company, et al.*, Order Rejecting Consolidated Transmission Owners Agreement Amendments and Denying Complaint, Docket Nos. ER24-2336-000, ER24-2336-001, ER24-2338-000, ER24-2338-001, and EL24-119-000, 189 FERC ¶ 61,181 (Dec. 6, 2024) ("December 2024 Order"); and

2. *Duquesne Light Company, et al.,* Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration, Docket Nos. ER24-2336-002, ER24-2338-002, and EL24-119-001, 190 FERC ¶ 62,075 (Feb. 6, 2025) ("February 2025 Denial Notice").

The PJM Transmission Owners are investor-owned public utilities and a cooperatively owned utility that own transmission facilities in PJM Interconnection, L.L.C. ("PJM"), a regional transmission organization overseeing the operation of the

2

electric transmission system and associated energy markets serving 13 states and the District of Columbia.

On June 21, 2024, PJM and the PJM Transmission Owners filed limited amendments to the Consolidated Transmission Owners Agreement ("CTOA Amendments"), the organic contract that forms the basis of PJM, principally to move PJM's regional planning rules – Schedule 6 of the PJM Operating Agreement – to the PJM Open Access Transmission Tariff. In coordination with this, PJM also initiated a proceeding by filing a complaint pursuant to FPA section 206 to remove Schedule 6 from the Operating Agreement.

In the December 2024 Order, the Commission rejected the CTOA Amendments and denied the PJM FPA section 206 complaint. The PJM Transmission Owners are aggrieved by this order because it unlawfully interferes with their rights under Section 205 of the Federal Power Act, 16 U.S.C § 825*d*.

The PJM Transmission Owners timely sought rehearing of the December 2024 Order on January 6, 2025, in accordance with Section 313(a) of the Federal Power Act, 16 U.S.C. § 825*l*(a). On February 6, 2025, the Commission issued the February 2025 Denial Notice, which did not address the substance of the PJM Transmission Owners' request for rehearing, but deemed the rehearing request denied by operation of law. Under 16 U.S.C. § 825*l* and this Court's decision in

*Allegheny Defense Project v. FERC*, 964 F.3d 1, 15 (D.C. Cir. 2020) (en banc), Petitioners thus may seek immediate review of the December 2024 Order.

The PJM Transmission Owners hereby petition this Court for review of the December 2024 Order and the February 2025 Denial Notice on the grounds that the December 2024 Order is arbitrary and capricious, reflects a failure to engage in reasoned decision-making, is not supported by substantial evidence, and is otherwise contrary to law. Venue is proper under 16 U.S.C. § 825*l*(b).

Copies of the December 2024 Order and February 2025 Denial Notice are attached as Attachments A and B, respectively. In accordance with Rule 15(c) of the Federal Rules of Appellate Procedure, parties admitted to participate in the underlying agency proceedings have been served with a copy of this Petition for Review and are listed in Attachment C.

Respectfully submitted,

*/s/ John Longstreth*

Steven M. Nadel          John Longstreth
Senior Counsel           Donald A. Kaplan
PPL Services Corporation Kimberly B. Frank
645 Hamilton Street, Suite 700   Chimera N. Thompson
Allentown, PA 18101      K&L Gates LLP
Phone:  (610) 774-4775   1601 K Street, N.W.
Fax:     (610) 774-4102  Washington, D.C.  20006
Email:   SMNadel@pplweb.com   Phone:  (202) 778-9000
                         Fax:     (202) 778-9100
                         Email:  john.longstreth@klgates.com
                                 don.kaplan@klgates.com
                                 kimberly.frank@klgates.com
                                 chimera.thompson@klgates.com

                         Michelle S. Kallen
                         William M. Keyser
                         Karen Bruni
                         Steptoe LLP
                         1330 Connecticut Avenue N.W.
                         Washington, D.C. 20036
                         Phone:  (202) 429-8186
                         Email:  mkallen@steptoe.com
                                 wkeyser@steptoe.com
                                 kbruni@steptoe.com

*Counsel for PPL Electric Utilities Corporation*

Molly Suda               William M. Rappolt
Associate General Counsel   Assistant General Counsel, FERC
Duke Energy Corporation  AES US Services LLC
1301 Pennsylvania Ave. NW, Suite 200   4300 Wilson Blvd
Washington, D.C. 20004   Arlington, VA 22203
Phone:  (202) 824-8011   Phone:  (703) 682-6337
Email:  molly.suda@duke-energy.com   Email:  William.rappolt@AES.COM

*Counsel for Duke Energy*   *Counsel for The Dayton Power &
                         Light Co.*

Gary E. Guy
Assistant General Counsel
Exelon Corporation
701 Ninth Street, N.W., Suite 9426
Washington, DC 20001
Phone: (301) 956-6754
Email: gary.guy@exeloncorp.com

*Counsel for Exelon Corporation, Atlantic City Electric Company, Baltimore Gas and Electric Company, Commonwealth Edison Company, Delmarva Power & Light Company, PECO Energy Company, and Potomac Electric Power Company*

Christopher R. Jones
Miles H. Kiger
Troutman Pepper Locke LLP
401 9th Street, NW, Suite 1500
Washington, D.C. 20004
Phone: (202) 662-2181
Email: chris.jones@troutman.com
        miles.kiger@troutman.com

Cheri Yochelson
Assistant General Counsel
Dominion Energy Services, Inc.
120 Tredegar Street, RS-5
Richmond, VA 23219
(804) 819-2691
Cheri.M.Yochelson@dominion energy.com

*Counsel for Dominion Energy Services, Inc.*

David M. Gossett
Michael Kunselman
Richard P. Sparling
Davis Wright Tremaine LLP
1301 K Street, NW
Suite 500 East
Washington, D.C. 20005
Phone: (202) 973-4200
Email: davidgossett@dwt.com
        michaelkunselman@dwt.com
        ricksparling@dwt.com

Morgan E. Parke
Associate General Counsel
Amanda Parker
FERC Attorney
FirstEnergy Service Company
76 South Main Street A-GO-15
Akron, OH 44308
(330) 384-4595
mparke@firstenergycorp.com
aparker@firstenergycorp.com

*Counsel for the FirstEnergy Transmission Companies*

Regina Y. Speed-Bost
Founder and Managing Partner
SB Law, PLLC
200 Massachusetts Ave., N.W.
7th Floor
Washington, D.C. 20001
Phone: (202) 963-2700
Email: rspeed-bost@sblawlegal.com

*Counsel for Duquesne Light Company*

Daniel E. Frank
Allison E.S. Salvia
Eversheds Sutherland (US) LLP
700 Sixth St., N.W., Suite 700
Washington, D.C.  20001-3980
Phone:  (202) 383-0100
Fax:  (202) 637-3593
Email:  danielfrank@eversheds-
sutherland.com
Email:  allisonsalvia@eversheds-
sutherland.com

Denise R. Foster Cronin
Vice President, Federal and RTO
Regulatory Affairs
East Kentucky Power Cooperative, Inc.
4775 Lexington Road, P.O. Box 707
Winchester, KY  40392-0707
Office:  (859)745-9615
Cell:  (610)220-6382

*Counsel for East Kentucky Power
Cooperative, Inc.*

William M. Keyser
Steptoe LLP
1330 Connecticut Avenue N.W.
Washington, D.C. 20036
Phone:  (202) 429-8186
Fax:       (202) 429-3902
Email:  wkeyser@steptoe.com

Jessica Cano
Assistant General Counsel-FERC
American Electric Power Service Corp.
1 Riverside Plaza
Columbus, OH 43215
Phone:  (614) 716-2921
Email:  jacano@aep.com

*Counsel for American Electric Power
Service Corporation*

Dated:  February 14, 2025

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

PJM Transmission Owners,

    *Petitioners*

    v.

Federal Energy Regulatory
Commission,

    *Respondent*

Case No. 25-1064

**CORPORATE DISCLOSURE STATEMENT OF**
**AMERICAN ELECTRIC POWER SERVICE CORPORATION**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 26.1 of this Circuit, American Electric Power Service Corporation ("AEPSC") states that it is a corporation organized and existing under the laws of the State of New York. AEPSC is a wholly-owned subsidiary of American Electric Power Company, Inc. ("AEP"), a New York corporation whose common stock is held by the public and traded on the Nasdaq Exchange. AEP has no parent company. Certain institutional investors including Vanguard may from time to time hold 10 percent or more of the outstanding shares of AEP but to AEP's knowledge no publicly-held company has a 10 percent or greater ownership interest in AEP.

Among its many subsidiaries, AEP owns nine electric operating companies and seven transmission companies and is a joint owner in several additional

transmission companies. AEPSC provides a variety of administrative and technical services to AEP's affiliates, including Appalachian Power Company, Indiana Michigan Power Company, Kentucky Power Company, Kingsport Power Company, Ohio Power Company, Wheeling Power Company, AEP Appalachian Transmission Company, AEP Indiana Michigan Transmission Company, AEP Kentucky Transmission Company, AEP Ohio Transmission Company, and AEP West Virginia Transmission Company, on behalf of which AEPSC participated in the proceedings before the Federal Energy Regulatory Commission that resulted in the Orders as to which review is sought in this Court.

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| PJM Transmission Owners, | |
| *Petitioners* | |
| v. | Case No. 25-1064 |
| Federal Energy Regulatory Commission, | |
| *Respondent* | |

**CORPORATE DISCLOSURE STATEMENT OF**
**THE DAYTON POWER AND LIGHT CO. D/B/A AES OHIO**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 26.1 of this Circuit, Petitioner The Dayton Power and Light Co. d/b/a AES Ohio The Dayton Power & Light Company d/b/a AES Ohio ("Dayton") submits the following disclosure statement.

Dayton is a corporation organized and existing under the laws of the State of Ohio, with its principal place of business in Dayton, Ohio. Dayton is a public utility company subject to the jurisdiction of FERC. Dayton is an owner of transmission and distribution facilities located within PJM Interconnection, L.L.C.

Dayton is a subsidiary of DPL, Inc., which is a subsidiary of AES DPL Holdings, LLC. AES DPL Holdings, LLC is a subsidiary of The AES Corporation ("AES"). AES is a Delaware corporation with its principal place of business in

Arlington, Virginia.  AES has issued shares of stock and debt securities to the public.  Investment funds owned by the Vanguard Group Inc. ("Vanguard") hold over ten percent of the publicly-traded shares of AES.  Vanguard is investor-owned by its fund shareholders.

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| PJM Transmission Owners, | |
| *Petitioners* | |
| v. | Case No. 25-1064 |
| Federal Energy Regulatory Commission, | |
| *Respondent* | |

**CORPORATE DISCLOSURE STATEMENT OF**
**DUKE ENERGY BUSINESS SERVICES LLC, DUKE ENERGY OHIO, INC. AND DUKE ENERGY KENTUCKY, INC.**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 26.1 of the Circuit Rules of this Court, Petitioners Duke Energy Business Services LLC ("DEBS"), Duke Energy Kentucky, Inc. ("DEK"), and Duke Energy Ohio, Inc. ("DEO") (collectively, "Duke Energy") provide the following:

DEBS certifies that it is a Delaware limited liability company. DEBS is a direct, wholly-owned subsidiary of Duke Energy Corporate Services, Inc., which is a direct, wholly-owned subsidiary of Duke Energy Corporation (NYSE: DUK).

DEK certifies that it is a non-governmental corporation organized and existing under the laws of Kentucky. DEK is a direct, wholly-owned subsidiary of DEO. DEO certifies that it is a non-governmental corporation organized and

existing under the laws of Ohio.  DEO is a direct, wholly-owned subsidiary of Cinergy Corp. Cinergy Corp. is a direct, wholly-owned subsidiary of Duke Energy Corporation (NYSE: DUK).

Duke Energy Corporation is publicly traded on the New York Stock Exchange.  There is no company that has a 10 percent or greater ownership interest in Duke Energy Corporation.

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| PJM Transmission Owners, | |
| *Petitioners* | |
| v. | Case No. 25-1064 |
| Federal Energy Regulatory Commission, | |
| *Respondent* | |

**CORPORATE DISCLOSURE STATEMENT OF**
**PPL ELECTRIC UTILITIES CORPORATION**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 26.1 of this Circuit, Petitioner PPL Electric Utilities Corporation ("PPL Electric") submits the following required Disclosure Statement:

PPL Electric is a wholly owned indirect subsidiary of PPL Corporation. The Vanguard Group has a 10% or greater ownership interest in PPL Corporation. No other publicly held company has a 10% or greater ownership interest in PPL Corporation.

Pursuant to the requirement of Circuit Rule 26.1(b) that movants provide a statement of general nature and purpose relevant to the litigation, PPL Electric hereby states as follows:

PPL Electric is a Pennsylvania Corporation and owner of transmission and distribution facilities located within PJM Interconnection, L.L.C.  PPL Electric is a provider of last resort in central and eastern Pennsylvania under Pennsylvania's Electric Generation Customer Choice and Competition Act, 66 Pa. C. S. § 2801, *et seq*.

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

PJM Transmission Owners,

     *Petitioners*

     v.

Federal Energy Regulatory
Commission,

     *Respondent*

Case No. 25-1064

## CORPORATE DISCLOSURE STATEMENT OF
## <u>VIRGINIA ELECTRIC AND POWER COMPANY D/B/A</u>
## <u>DOMINION ENERGY VIRGINIA</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1 of the United States Court of Appeals for the District of Columbia Circuit, Dominion Energy Services, Inc., on behalf of its affiliate Virginia Electric and Power Company d/b/a Dominion Energy Virginia ("Dominion"), hereby provides the following Corporate Disclosure Statement:

Dominion is a Virginia corporation, and is regulated by the Federal Energy Regulatory Commission as a "public utility" under the Federal Power Act. Dominion generates, transmits, and distributes electricity for sale in Virginia and North Carolina. Dominion Energy Virginia is a wholly-owned subsidiary of Dominion Energy, Inc. ("Dominion Energy") (NYSE: D), which is a publicly-held

company incorporated in the Commonwealth of Virginia. To Dominion's knowledge, no publicly-held corporation owns 10 percent or greater ownership interest in Dominion Energy. However, from time to time pursuant to Federal Energy Regulatory Commission blanket authorizations, certain institutional investors may hold 10 percent or more of the outstanding shares of Dominion Energy, and Dominion currently understands that affiliates of The Vanguard Group, Inc. may hold more than 10 percent of Dominion Energy's outstanding shares.

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| PJM Transmission Owners, | |
| *Petitioners* | |
| v. | Case No. 25-1064 |
| Federal Energy Regulatory Commission, | |
| *Respondent* | |

**CORPORATE DISCLOSURE STATEMENT OF**
**THE FIRSTENERGY TRANSMISSION COMPANIES**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 26.1 of this Circuit, Petitioners American Transmission Systems, Incorporated, Jersey Central Power & Light Company, Keystone Appalachian Transmission Company, Mid-Atlantic Interstate Transmission LLC, Monongahela Power Company, The Potomac Edison Company, and Trans-Allegheny Interstate Line Company (collectively the "FirstEnergy Transmission Companies") are all direct or indirect subsidiaries of FirstEnergy Corp., a holding company engaged, through its subsidiaries, in the generation, transmission and distribution of power throughout the eastern portion of the United States. No publicly held company owns more than 10% of FirstEnergy Corp.

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| PJM Transmission Owners, | |
| *Petitioners* | |
| v. | Case No. 25-1064 |
| Federal Energy Regulatory Commission, | |
| *Respondent* | |

**CORPORATE DISCLOSURE STATEMENT OF**
**DUQUESNE LIGHT COMPANY**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 26.1 of this Circuit, Duquesne Light Company ("Duquesne Light") certifies as follows:

Duquesne Light is engaged in the transmission, distribution, and sale of electricity to retail and wholesale customers in Pennsylvania within the footprint of the PJM Interconnection, LLC regional transmission organization ("PJM RTO" or "PJM"). Duquesne Light is a Market Participant in PJM and is a wholly owned subsidiary of Duquesne Light Holdings.

In May 2007, Duquesne Light was acquired by a consortium of private equity investors. The consortium consists of several institutional investors which own all of the common equity of Duquesne Light's parent company, DQE

Holdings LLC.  The members of the consortium are: GIC Pte. Ltd., John Hancock Financial/PGGM Infrastructure Fund, and APG Americans Infrastructure/CalSTRS/Argo Infrastructure Partners.

No publicly held company owns more than 10% of Duquesne Light.

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| PJM Transmission Owners, | |
| *Petitioners* | |
| v. | Case No. 25-1064 |
| Federal Energy Regulatory Commission, | |
| *Respondent* | |

**CORPORATE DISCLOSURE STATEMENT OF
EXELON CORPORATION**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1 of the United States Court of Appeals for the District of Columbia Circuit, Exelon Corporation ("Exelon") submits the following disclosure statement.

Exelon is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and has its principal offices at 10 South Dearborn Street, Chicago, Illinois 60603. Exelon has no parent company. The Vanguard Group, Inc. and BlackRock, Inc. each hold a greater than 10 percent voting interest in Exelon pursuant to FERC blanket authorization under Federal Power Act Section 203, 16 U.S.C. § 824b. Of relevance to this proceeding, Exelon is engaged in the purchase, transmission, distribution, and sale of electricity through its

electric utility subsidiaries, Commonwealth Edison Company, PECO Energy

Company, Baltimore Gas and Electric Company, Potomac Electric Power

Company, Delmarva Power & Light Company and Atlantic City Electric

Company, all of which are electric utilities under the Federal Power Act subject to

regulation by the Federal Energy Regulatory Commission.

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

PJM Transmission Owners,

     *Petitioners*

     v.

Federal Energy Regulatory
Commission,

     *Respondent*

Case No. 25-1064

**CORPORATE DISCLOSURE STATEMENT OF
EAST KENTUCKY POWER COOPERATIVE, INC.**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1, East Kentucky Power Cooperative, Inc. ("EKPC") states as follows:

Petitioner EKPC is a not-for-profit generation and transmission cooperative that provides wholesale electric power to 16 owner-member cooperatives in Kentucky. EKPC's principal place of business is in Winchester, Kentucky. EKPC is owned by its 16 retail electric distribution cooperative members. None of EKPC's members owns 10% or more of EKPC. Relevant to this proceeding, EKPC is a generation- and transmission-owning member and customer of PJM Interconnection, L.L.C., and EKPC is a party to and has participated

in the proceedings in Docket Nos. ER24-2336-000, ER24-2336-001, ER24-2338-000, ER24-2338-001, and EL24-119-000 that are the subject of this appeal.

# CERTIFICATE OF SERVICE

In accordance with Fed. R. App. P. 15(c), I hereby certify that on this 14th day of February, 2025, I have served the foregoing on the Solicitor of the Federal Energy Regulatory Commission ("FERC") by U.S. mail, on the Secretary of FERC via FERC's electronic filing system and U.S. mail, and by electronic mail on each person designated on the official service list maintained by FERC's Secretary in the underlying proceeding.

Robert H. Solomon, Solicitor
Federal Energy Regulatory Commission
888 First Street, N.E.
Washington, D.C. 20426

Debbie-Anne A. Reese, Secretary
Federal Energy Regulatory Commission
888 First Street, NE
Washington, DC 20426

A list of the parties to the agency proceedings below who were served via electronic mail is attached as Attachment C.

*/s/ John Longstreth*
John Longstreth
K&L Gates LLP
1601 K Street, N.W.
Washington, DC 20006

Dated: February 14, 2025

# ATTACHMENT A

189 FERC ¶ 61,181
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners:  Willie L. Phillips, Chairman;
                       Mark C. Christie, David Rosner,
                       and Judy W. Chang

| | |
|---|---|
| Duquesne Light Company | Docket Nos.  ER24-2336-000 |
| PJM Interconnection, L.L.C. | ER24-2336-001 |
| | |
| PJM Interconnection, L.L.C. | ER24-2338-000 |
| | ER24-2338-001 |
| | EL24-119-000 |

ORDER REJECTING CONSOLIDATED TRANSMISSION OWNERS AGREEMENT
AMENDMENTS AND DENYING COMPLAINT

(Issued December 6, 2024)

1.      On June 21, 2024, as amended on October 9, 2024, pursuant to section 205 of the
Federal Power Act (FPA),[1] section 35.13 of the Commission's Rules of Practice and
Procedure,[2] and section 8.5.1 of the Consolidated Transmission Owners Agreement
(CTOA),[3] by and among PJM Interconnection, L.L.C. (PJM) and the PJM Transmission
Owners (PJM TO), PJM TOs submitted amendments to the CTOA (CTOA Amendments)
in Docket Nos. ER24-2336-000 and ER24-2336-001.[4]  Also on June 21, 2024, pursuant
to FPA section 206,[5] PJM filed a complaint asserting that the location of PJM's Regional
Transmission Expansion Planning (RTEP) Protocol in the Operating Agreement (OA) is
unjust, unreasonable, unduly discriminatory and preferential (PJM Complaint) in Docket
No. EL24-119-000.  In addition, on June 21, 2024, as amended on October 9, 2024,

---

[1] 16 U.S.C. § 824d.

[2] 18 C.F.R. § 35.13 (2024).

[3] PJM Interconnection, L.L.C., Rate Schedules, TOA, TOA-42 Rate Schedule
FERC No. 42 (1.0.0).

[4] PJM made the filings on behalf of PJM TOs with Duquesne Light Company as
the representative of PJM TOs.

[5] 16 U.S.C. § 824e.

pursuant to FPA section 205, PJM filed proposed revisions to its Open Access Transmission Tariff (Tariff) that would effectuate the transfer of the RTEP Protocol from the OA to the Tariff (PJM Transfer Filing, together with PJM Complaint, PJM Filings) in Docket Nos. ER24-2338-000 and ER24-2338-001.[6]  For the reasons discussed below, we reject the CTOA Amendments, deny the PJM Complaint, and dismiss the PJM Transfer Filing.

## I.   **Background**

2.    The RTEP Protocol contains the rules and procedures by which PJM's Office of the Interconnection plans for the expansion and enhancement of transmission facilities in the PJM region to meet the demands of firm transmission service and to support competition.[7]  This process results in the RTEP, which integrates all regional and local transmission projects into a single, optimized transmission solution set.[8]  The RTEP also designates the PJM TO or nonincumbent developer that will construct, own, maintain, operate, and/or finance each transmission enhancement and expansion, and sets out how all reasonably incurred costs are to be recovered.

3.    The RTEP Protocol is currently set forth in Schedules 6, 6-A, and 6-B to the OA. It has been in the OA since November 25, 1997, when the Commission conditionally accepted a proposal to comprehensively restructure PJM, which included an Amended and Restated Operating Agreement (1997 OA), a Transmission Owners Agreement (1997 TOA), the PJM Open Access Transmission Tariff (1997 Tariff), and a Reliability Assurance Agreement Among Load Serving Entities.[9]  On January 1, 1998, PJM began operation as the nation's first independent system operator (ISO).[10]

---

[6] Capitalized terms that are not defined in this order have the meaning specified in the Tariff, OA, or CTOA, as applicable.

[7] PJM, Intra-PJM Tariffs, OA Schedule 6.1.1, OA Schedule 6.1.1. Purpose and Objectives (0.0.0), § 1.1.

[8] *Id.* § 1.4.

[9] *Pa.-N.J.-Md. Interconnection*, 81 FERC ¶ 61,257 (1997) (PJM ISO Order), *order on reh'g*, 92 FERC ¶ 61, 282 (2000) (PJM ISO Rehearing Order).  The Commission subsequently accorded PJM regional transmission organization (RTO) status.  *See PJM Interconnection, L.L.C.*, 101 FERC ¶ 61,345, at P 14 (2002).

[10] Pa.-N.J.-Md. Interconnection, June 1997 Proposal, Docket Nos. ER97-3189-000 & EC97-38-000 (filed June 2, 1997) (June 1997 Proposal).

4.     In the 1997 TOA, a group of transmission owners agreed to "transfer to the ISO the responsibility for . . . regional transmission planning and operations."[11]  Specifically, section 2.3.7 of the 1997 TOA stated that "[e]ach Party agrees . . . [t]o transfer to the Office of the Interconnection and the PJM Board, in accordance with the [OA], the responsibility for preparing a [RTEP] in accordance with the [RTEP] Protocol."[12]

5.     Procedures for amending the RTEP Protocol were established in section 18.6(a) of the 1997 OA.[13]  In addition to these procedures, the PJM Board retained the right to petition the Commission to modify any provision of the OA that the PJM Board believes to be unjust, unreasonable, or unduly discriminatory under FPA section 206.[14]

6.     In addition to the division of certain rights and responsibilities set forth in the OA, PJM and a group of transmission owners entered into a settlement agreement to voluntarily allocate and share certain FPA section 205 rights (Atlantic City Settlement Agreement).[15]  The Commission accepted the Atlantic City Settlement Agreement, which provided that those transmission owners would retain certain FPA section 205 filing rights, such as rights pertaining to changes to transmission rate design and cost recovery and all other rights not transferred to PJM.  In turn, PJM would have the responsibility, in accordance with the OA, to prepare the RTEP.  PJM also would have exclusive rights to make FPA section 205 filings regarding the terms and conditions of the Tariff.  The

---

[11] PJM ISO Order, 81 FERC at 62,236.

[12] 1997 TOA, § 2.3.7.

[13] PJM, Intra-PJM Tariffs, OA, 18.6, OA 18.6 Amendment (1.0.0), § 18.6(a) ("Except as provided by law or otherwise set forth herein, this Agreement, including any Schedule hereto, may be amended, or a new Schedule may be created, only upon: (i) submission of the proposed amendment to the PJM Board for its review and comments; (ii) approval of the amendment or new Schedule by the Members Committee. . . in accordance with [OA], section 8.4 . . . and (iii) approval and/or acceptance for filing of the amendment by FERC . . . .").

[14] PJM, Intra-PJM Tariffs, OA, 7.7, OA 7.7 Duties and Responsibilities of the PJM Board (2.0.0), § 7.7(vi).

[15] *See Atl. City Elec. Co. v. FERC*, 295 F.3d 1 (D.C. Cir. 2002) (*Atlantic City*); *Pa.-N.J.-Md. Interconnection*, 105 FERC ¶ 61,294 (2003) (Atlantic City Settlement Order), *order on compliance*, 108 FERC ¶ 61,033 (2004).

allocation of these FPA section 205 rights is memorialized in CTOA section 7 and Tariff section 9.[16]

## II.    **Filings**

7.      These proceedings involve three filings that the filing parties assert are primarily directed at transferring the RTEP Protocol from the OA to the Tariff in order to provide PJM with the ability to make independent FPA section 205 filings to propose changes to the RTEP Protocol.  In the CTOA Amendments, PJM TOs state that they seek to transfer to PJM the responsibility to prepare the RTEP pursuant to the Tariff, rather than pursuant to the OA.[17]  In the PJM Complaint, PJM contends that the location of the RTEP Protocol in the OA is unjust, unreasonable, unduly discriminatory, and preferential and should be removed from the OA.[18]  In the PJM Transfer Filing, PJM seeks approval of Tariff revisions to effectuate the move of the RTEP Protocol from the OA to the Tariff.

8.      Before the PJM Filings were submitted, PJM attempted to amend the OA by a vote of the Members Committee, which would have allowed PJM to file the OA revisions under FPA section 205.[19]  On May 6, 2024, the Members Committee opposed PJM's proposal with a sector weighted vote of 1.227 out of 5.[20]  Because the Members Committee vote failed, the PJM Board of Managers directed PJM to make the instant filings to amend the OA and Tariff under FPA section 206.

---

[16] PJM, Intra-PJM Tariffs, Tariff  9.1, OATT 9.1 Rights of the Transmission Owners (2.1.0), § 9.1; PJM, Intra-PJM Tariffs, Tariff, 9.2 OATT 9.2 Rights of the Transmission Provider (1.1.0), § 9.2 (setting out the filing rights of each of the transmission owners and PJM).

[17] PJM TOs Transmittal at 2.

[18] PJM Filings Transmittal at 3-4.  PJM's transmittal letters for Docket Nos. EL24-119-000 and ER23-2338-000 are substantively identical.  For simplicity, they are collectively referred to as "PJM Filings Transmittal" unless otherwise noted.

[19] PJM Filings Transmittal at 10-11.

[20] PJM, *Supplemental Voting Results, PJM Members Committee* (May 6, 2024), https://www.pjm.com/-/media/committees-groups/committees/mc/2024/20240506-annual/mc-voting-results---item-08---proposed-oa-and-tariff-revisions-effectuating-the-transfer-of-the-regional-transmission-expansion-planning-protocol.ashx.

## A.    CTOA Amendments

9.      PJM TOs state that the CTOA Amendments are divided into three categories: (1) amendments related to PJM's FPA section 205 filing rights over the RTEP Protocol; (2) amendments recognizing the relationship of PJM TOs and PJM; and (3) amendments to make non-substantive cleanup and conforming changes.[21]

10.     PJM TOs explain that, in the CTOA, they have voluntarily agreed to transfer specific transmission planning responsibility to PJM.[22]  PJM TOs state that, in the instant case, through the CTOA Amendments, they voluntarily agree to "change the nature of that responsibility"—specifically that it be conducted under the Tariff, rather than the OA.[23]  PJM TOs argue that moving the RTEP Protocol to the Tariff is just and reasonable because the current location in the OA prevents PJM from proposing necessary and important changes to the rules under which PJM plans the transmission system.[24]

11.     PJM TOs state that the CTOA Amendments also include changes that:  (1) clarify that the rights and responsibilities transferred to PJM by PJM TOs reside in PJM as an independent public utility; (2) recognize PJM's authority to designate non-incumbents to construct RTEP Projects and to put such designated non-incumbents (referred to as CTOA Designated Parties) on the same footing as PJM TOs with respect to responsibilities to PJM under the CTOA; (3) reflect the more recent addition of PJM Tariff, Attachment M-3, governing PJM TOs' project planning, and recognize PJM TOs' rights recently confirmed by the Court of Appeals for the D.C. Circuit; (4) protect PJM and PJM TOs where there is a dispute regarding whether a proposed FPA section 205 filing would contravene the CTOA; (5) establish an annual meeting between PJM TOs and PJM Board committees to discuss the CTOA; (6) establish terms recognizing the importance of PJM's assistance and counsel to PJM TOs in the exercise of PJM TOs' FPA section 205 rights to adopt joint rates and transmission rate design; (7) articulate PJM's reliability obligation, and recognize that a withdrawing PJM TO can remain a PJM member and continue to participate in PJM markets; and (8) confirm the parties' intent

---

[21] PJM TOs Transmittal at 19.

[22] *Id.* at 27 & n.107 (citing *Atlantic City*, 295 F.3d at 10 ("Of course, utilities may choose to voluntarily give up, by contract, some of their rate filing freedom under Section 205."); *Am. Mun. Power, Inc. v. FERC*, 86 F.4th 922, 927 (D.C. Cir. 2023) (*AMP v. FERC*) ("PJM's authority to oversee and operate the electrical grid is limited to that granted to it by transmission owners in the [CTOA].")).

[23] *Id.* at 27.

[24] *Id.* at 28.

that certain provisions of the CTOA be accorded the highest form of protection for contractual undertakings under the FPA.[25]

### B.    Complaint and PJM Transfer Filing

12.    In the PJM Complaint, PJM asserts that the location of the RTEP Protocol in the OA is unjust, unreasonable, unduly discriminatory and preferential.  In support of its complaint, PJM argues that the location of the RTEP Protocol in the OA: (1) unreasonably hampers PJM's ability to meet its transmission planning responsibilities; (2) unduly discriminates against PJM; and (3) limits the Commission's ability to ensure comparability in its consideration of planning proposals from various RTOs.[26]  PJM requests that the Commission adopt as the just and reasonable replacement rate the deletion of Schedules 6, 6-A, and 6-B from the OA, as well as the removal of references and definitions related to those schedules.  In place of Schedules 6, 6-A, and 6-B, PJM requests that the Commission accept new Tariff schedules proposed in the PJM Transfer Filing.[27]

13.    In the PJM Transfer Filing, PJM explains that it is submitting revisions to the Tariff pursuant to FPA section 205 in order to implement its proposed changes set forth in the PJM Complaint to effectuate the move of the RTEP Protocol from the OA to the Tariff.[28]  Specifically, PJM proposes to add new Schedules 19, 19-A, and 19-B to the Tariff, as well as replace references and definitions related to those schedules.[29]  PJM states that it is not proposing any substantive changes to the RTEP Protocol or any other Tariff or OA provisions; rather PJM is proposing to move the RTEP Protocol from the OA to the Tariff.

14.    PJM and PJM TOs each explain the relationship between the three filings.  PJM states that the PJM Complaint and PJM Transfer Filing are submitted "in connection with" the CTOA Amendments and with "the mutual understanding that [they reflect] PJM and [PJM TOs'] agreement to the CTOA [A]mendments as a whole, and without acceptance of [the CTOA Amendments] . . . PJM does not have the legal authority to

---

[25] *Id.* at 10-11.

[26] PJM Filings Transmittal at 3.

[27] *Id.* at 4.

[28] PJM Filings Transmittal at 28.

[29] *Id.* at 29.

effectuate the changes proposed."[30]  PJM TOs further state that the PJM Complaint and PJM Transfer Filing are submitted "for the purpose of implementing the CTOA Amendments,"[31] and PJM states that the PJM Transfer Filing "implements" PJM's proposal set forth in the PJM Complaint.[32]  PJM TOs also state that acceptance of the CTOA Amendments is a "prerequisite" to granting the relief requested in the PJM Filings.[33]  In addition, PJM asks the Commission to accept the CTOA Amendments as the just and reasonable replacement rate if the Commission accepts the PJM Complaint finding the location of the RTEP Protocol in the OA to be unjust and unreasonable.[34]

## III.    Notice and Responsive Pleadings

15.    Notice of the CTOA Amendments and the PJM Transfer Filing was published in the *Federal Register*, 89 Fed. Reg. 53607 (Jun. 27, 2024), with interventions, comments, and protests due on or before July 12, 2024.  Notice of the PJM Complaint was published in the *Federal Register*, 89 Fed. Reg. 54450 (Jul. 1, 2024), with interventions and protests due on or before July 12, 2024.  On July 3, 2024, the Commission extended the deadline for filing interventions and protests to and including July 22, 2024.[35]  Notices of intervention and timely motions to intervene were submitted by the entities described in Appendix B.[36]

16.    Comments on the PJM Filings were submitted by Americans for a Clean Energy Grid, Harvard Electricity Law Initiative (Harvard ELI), the Public Utilities Commission of Ohio's Office of the Federal Energy Advocate (Ohio FEA), and Indicated PJM TOs.[37]

---

[30] PJM Filings Transmittal at 4-5; *see also* PJM TOs Transmittal at 2 (making similar statement).

[31] PJM TOs Transmittal at 2.

[32] PJM Filings Transmittal at 1, n.5.

[33] PJM TOs August 15 Answer at 2.

[34] PJM Deficiency Letter Response at 9.

[35] PJM Interconnection, L.L.C., Notice of Extension of Time (issued Oct. 27, 2023).

[36] The entity abbreviations listed in Appendix B are used throughout this order.

[37] Indicated PJM TOs are comprised of American Electric Power Service Corporation on behalf of its affiliates, Appalachian Power Company, Indiana Michigan Power Company, Kentucky Power Company, Kingsport Power Company, Wheeling Power Company, AEP Appalachian Transmission Company, AEP Indiana Michigan

Comments on the CTOA Amendments were filed by PJM and Ohio FEA.  Protests to the PJM Complaint, PJM Transfer Filing, and the CTOA Amendments were filed by Consumer Advocates,[38] Joint Protestors,[39] LS Power,[40] the Organization of PJM States, Inc. (OPSI), Public Advocates,[41] Clean Energy Buyers Association, Constellation Energy Generation, LLC, the Office of the Ohio Consumers' Counsel, and Theresa Ann Ghiorzi.  Protests to the CTOA Amendments were filed by Advanced Energy United and Harvard ELI.  Answers were filed by PJM TOs, PJM, LS Power, Central Transmission, Harvard ELI, Consumer Advocates, Public Advocates, and Joint Protestors.

17.    On September 9, 2024, Commission staff issued a letter informing PJM that the PJM Transfer Filing was deficient and requesting additional information (PJM Deficiency Letter).  Also on September 9, 2024, Commission staff issued a letter

---

Transmission Company, AEP Kentucky Transmission Company, and AEP West Virginia Transmission Company; The Dayton Power and Light Company d/b/a AES Ohio; Dominion Energy Services, Inc. on behalf of Virginia Electric and Power Company d/b/a Dominion Energy Virginia; Duke Energy Business Services, LLC for Duke Energy Kentucky, Inc.; Duquesne Light Company; East Kentucky Power Cooperative; Exelon Corporation on behalf of its affiliates Atlantic City Electric Company, Baltimore Gas and Electric Company, Commonwealth Edison Company, Delmarva Power & Light Company, PECO Energy Company, and Potomac Electric Power Company; FirstEnergy Service Company, as agent for its affiliates Jersey Central Power & Light Company, Keystone Appalachian Transmission Company, West Penn Power Company, Monongahela Power Company, and The Potomac Edison Company (collectively, the FirstEnergy Transmission Companies); PPL Electric Utilities Corporation; Public Service Electric and Gas Company; and Rockland Electric Company.

[38] Consumer Advocates are comprised of the Maryland Office of People's Counsel, New Jersey Division of Rate Counsel, and the Office of the People's Counsel for the District of Columbia.

[39] Joint Protestors are comprised of American Municipal Power, Inc., Blue Ridge Power Agency, Delaware Municipal Electric Corporation, Inc., Old Dominion Electric Cooperative, the PJM Industrial Customer Coalition, and the Public Power Association of New Jersey.

[40] LS Power includes:  LS Power Development, LLC, Rolling Hills Generating, L.L.C., Silver Run Electric, LLC, and Central Transmission, LLC.

[41] Public Advocates are comprised of Illinois Citizens Utility Board, Delaware Division of the Public Advocate, Office of the People's Counsel for the District of Columbia, Natural Resources Defense Council, Sustainable FERC Project, and Sierra Club.

informing PJM TOs that the CTOA Amendments filing was deficient and requesting additional information (PJM TOs Deficiency Letter). On October 9, 2024, PJM filed a response (PJM Deficiency Letter Response) and PJM TOs also filed a response (PJM TOs Deficiency Letter Response).

18.     Notice of PJM's Deficiency Letter Response and PJM TOs Deficiency Letter Response was filed in the *Federal Register*, 89 Fed. Reg. 83472 (Oct. 16, 2024), with interventions and protests due on or before October 30, 2024. OPSI, Joint Protestors, Harvard ELI, Public Advocates,[42] and Consumer Advocates filed protests to PJM TOs Deficiency Letter Response. OPSI, Joint Protestors, Consumer Advocates, and Harvard ELI also filed protests to the PJM Deficiency Letter Response. PJM and PJM TOs each submitted an answer to protests.

## IV.     Discussion

### A.     Procedural Matters

19.     Pursuant to Rule 214 of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.214 (2024), the notices of intervention and timely, unopposed motions to intervene serve to make the entities that filed them parties to the proceedings in which they were filed.[43]

20.     Rule 213(a)(2) of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.213(a)(2) (2024), prohibits an answer to a protest or an answer unless otherwise ordered by the decisional authority. We accept the answers filed in this proceeding because they have provided information that assisted us in our decision-making process.

### B.     Substantive Matters

21.     As discussed below, we reject the CTOA Amendments and deny the PJM Complaint. In addition, because we find that PJM has not met its burden to demonstrate that the location of the RTEP Protocol is unjust and unreasonable or unduly

---

[42] Office of the People's Counsel for the District of Columbia, while signing on to Public Advocates Protest, did not sign on to this answer.

[43] Entities that filed comments and/or protests but did not file a notice of intervention or motion to intervene are not parties to this proceeding. *See* 18 C.F.R. § 385.211(a)(2) (2024) ("The filing of a protest does not make the protestant a party to the proceeding. The protestant must intervene under Rule 214 to become a party."). Theresa Ann Ghiorzi filed comments but did not file a motion to intervene. Although we do not grant party status to Theresa Ann Ghiorzi, we address her pleadings in this order.

discriminatory or preferential, we reject the PJM Transfer Filing, which PJM states is its proposed replacement rate.[44]

22.     As noted above, PJM states that the PJM Complaint is submitted "in connection with" the CTOA Amendments and with "the mutual understanding that [it reflects] PJM and [PJM TOs'] agreement to the CTOA [A]mendments as a whole, and without acceptance of [the CTOA Amendments] . . . PJM does not have the legal authority to effectuate the changes proposed."[45]  PJM TOs further state that the PJM Complaint is submitted "for the purpose of implementing the CTOA Amendments."[46]  Consistent with the intent of the parties that the filings be treated as an integrated package, we find that, in the alternative, having rejected the CTOA Amendments on the merits, we dismiss the PJM Complaint; and having denied the PJM Complaint on the merits, we dismiss the CTOA Amendments.[47]

### 1.     CTOA Amendments

23.     We reject the CTOA Amendments on three independent grounds.[48]  First, we find that proposed CTOA sections[49] 7.9, 4.1.4(a), 6.3.3(ii), 6.3.4(a), and 6.3.5 have not been

---

[44] *See* PJM Filings Transmittal at 1 n.5 ("PJM is separately submitting in a parallel filing proposed revisions to the Tariff implementing [the Complaint] pursuant to FPA section 205."); PJM Filings Transmittal at 4 ("PJM requests that the Commission . . . adopt as the just and reasonable replacement rate new Tariff Schedules 19, 19-A, and 19-B and several conforming revisions described [in the PJM Transfer Filing].").

[45] PJM Filings Transmittal at 4-5; *see also* PJM TOs Transmittal at 2 (making similar statement).

[46] PJM TOs Transmittal at 2.

[47] *See supra* P 13.  Noting the intent of the parties that the filings be treated as an integrated package, the Commission takes no position as to whether PJM has the legal authority to effectuate the changes proposed in the PJM Complaint or PJM Transfer Filing in the absence of the CTOA Amendments or vice versa.

[48] PJM TOs state that the CTOA Amendments are a carefully negotiated integrated package of reforms that are not severable without upsetting the balance of the negotiations and requiring the parties to reevaluate the overall value of the proposed amendments.  PJM TOs Transmittal at 50.  Therefore, each ground for rejection serves as an independent basis to reject the CTOA Amendments as a whole.

[49] PJM TOs refer to these as "sections" in their transmittal.

shown to be just and reasonable and violate the independence requirements of Order No. 2000.[50]  Second, we find that proposed CTOA sections 4.1.4(b)(ii) and 6.3.4(b)(ii) have not been shown to be just and reasonable because they include substantive transmission planning rules in the CTOA.  Third, we find that proposed CTOA section 9.16.3 has not been shown to be just and reasonable because it extends *Mobile-Sierra*[51] protection to provisions that do not qualify for such protection either as a matter of law or through the exercise of the Commission's discretion.  We do not address the merits of the remaining CTOA Amendments.

### a.     Independence

24.     In Order No. 2000, the Commission established four minimum characteristics for an RTO, the first of which is "independence from market participants."[52]  In applying that principle, the Commission required each RTO to have "a decision making process that is independent of control by any market participant or class of participants."[53]  As the Commission explained, "the principle of independence is the bedrock upon which the ISO must be built."[54]  The Commission found that independence is critical to an RTO's non-discriminatory operation of the electric grid and reaffirmed that "[a]n RTO needs to be independent both in reality and perception."[55]

25.     As discussed below, we find that proposed CTOA sections 7.9, 4.1.4(a), 6.3.3(ii), 6.3.4(a), and 6.3.5 have not been shown to be just and reasonable because they violate the independence requirements of Order No. 2000.

---

[50] *Reg'l Transmission Orgs.*, Order No. 2000, FERC Stats. & Regs. ¶ 31,089 (1999) (cross-referenced at 89 FERC ¶ 61,285), *order on reh'g*, Order No. 2000-A, FERC Stats. & Regs. ¶ 31,092 (2000) (cross-referenced at 90 FERC ¶ 61,201), *aff'd sub nom. Pub. Util. Dist. No. 1 of Snohomish Cty. v. FERC*, 272 F.3d 607 (D.C. Cir. 2001).

[51] *See NRG Power Mktg., LLC v. Me. Pub. Utils. Comm'n*, 558 U.S. 165 (2010); *Morgan Stanley Cap. Grp. Inc. v. Pub. Util. Dist. No. 1*, 554 U.S. 527 (2008); *United Gas Pipeline Co. v. Mobile Gas Serv. Corp.*, 350 U.S. 332 (1956); *FPC v. Sierra Pac. Power Co.*, 350 U.S. 348 (1956).

[52] Order No. 2000, FERC Stats. & Regs. ¶ 31,089 at 31,073.

[53] 18 C.F.R. § 35.34(j)(1)(ii) (2024); *see* Order No. 2000, FERC Stats & Regs. ¶ 31,089 at 31,061; *PJM Interconnection, L.L.C.*, 96 FERC ¶ 61,061 (2001).

[54] Order No. 2000, FERC Stats & Regs. ¶ 31,089 at 31,061.

[55] *Id.*

### i.     **PJM TOs' Filing**

### (a)     **Filings Contravening CTOA**

26.     PJM TOs state that certain proposed CTOA Amendments are designed to clarify and protect the transfer of responsibilities and commitments of PJM and PJM TOs.[56] PJM TOs state that one such provision is section 7.9, which prohibits PJM TOs and PJM from making independent FPA section 205 filings that contravene the CTOA.[57]  PJM TOs explain that section 7.9 also requires that any dispute between PJM TOs and PJM as to whether an FPA section 205 filing would contravene the CTOA must be resolved by a dispute resolution mechanism included under a new Attachment B, section B to the CTOA.[58]  Under proposed Attachment B, such disputes are referred to a neutral party to make a binding decision upon the parties; however, PJM TOs state that the Commission is not bound by the neutral party's decision if a complaint is filed pursuant to FPA section 206.  PJM TOs state that proposed section 7.9 reinforces the contractual obligations of PJM TOs and PJM and protects them against demands by third parties to make FPA section 205 filings proposing changes that PJM TOs or PJM, respectively, have determined contravene the CTOA.

27.     PJM TOs assert that neither proposed section 7.9 nor Attachment B affects PJM's ability to continue to independently exercise its own judgment to interpret the terms of the CTOA.[59]  PJM TOs state that, regardless of which party prevails on an issue of whether an FPA section 205 filing would contravene the CTOA, the party that did not

---

[56] PJM TOs Transmittal at 20-21.

[57] Proposed section 7.9 of the CTOA reads: "Neither the Parties nor PJM shall make any filing under Section 205 of the [FPA] that contravenes Articles 2, 4, 5, 6, 7 or Attachment B of the Agreement or seeks to modify the terms of said Articles, unless PJM consents to such filing by the Parties or the Parties, acting through a vote pursuant to Section 8.5.1, consent to such filing by PJM.  If either PJM or the Parties seek to revise or modify the PJM Tariff, including the [RTEP] Protocol, under [FPA] Section 205, and PJM or a Party believes that such revisions or modifications contravene any part of Articles 2, 4, 5, 6 or 7 or Attachment B of the Agreement, PJM and such Party or Parties shall follow the dispute resolution procedures set forth in Section 9.19."  PJM, Rate Schedules, Article 7, TOA-42 Article 7 – Changes to Rate Design and Tariff Terms (1.0.0), § 7.9 (Filings Contravening the Agreement).

[58] PJM TOs Transmittal at 37-38.

[59] *Id.* at 38.

prevail always has the option of seeking a Commission resolution of the dispute pursuant to FPA section 206.

### (b)    RTEP Planning Provisions

28.    PJM TOs state that several CTOA Amendments modify the transfer to PJM of the responsibility to prepare the RTEP.[60]  Specifically, proposed sections 4.1.4(a), 6.3.3(ii), and 6.3.4(a) (RTEP Planning Provisions) specify the manner in which PJM must prepare the RTEP and how PJM may develop and file changes to the RTEP Protocol.  PJM TOs explain that, under existing CTOA section 4.1.4, PJM prepares the RTEP "in accordance with the Operating Agreement."  Under proposed CTOA sections 4.1.4(a) and 6.3.4(a), PJM is required to prepare the RTEP to "provide for the expansion and enhancement of the Parties' Transmission Facilities to address one or more of the following planning criteria:  (i) the [RTEP] Protocol . . . (ii) PJM Tariff, Attachment M-3, and (iii) [the CTOA]."  Proposed CTOA section 6.3.3(ii) requires PJM to develop and file changes to the RTEP Protocol consistent with the CTOA, among other things.

### (c)    RTO Status Provisions

29.    PJM TOs propose to amend section 6.3.5 to provide that PJM must "[m]aintain its status as an RTO, consistent with its obligations under this Agreement."  PJM TOs state that this amendment recognizes that, notwithstanding PJM's responsibility to maintain its status as an RTO, it nonetheless is concurrently responsible to maintain the safe and reliable operation of the PJM Region, under section 6.3.1.[61]  PJM TOs explain that this change ensures that there would be no break in service or reliability while PJM and/or PJM TOs address any changes to PJM's governing documents necessary for PJM to continue to qualify as an RTO if the Commission changes its RTO regulations.  PJM TOs assert that this amendment recognizes that PJM is responsible for maintaining its essential functions transferred to it under the CTOA and avoids any doubt as to PJM's authority to continue to perform its functions until it comes into compliance with any new regulations.[62]

---

[60] *Id.* at 19-20.

[61] PJM TOs Transmittal at 24.

[62] *Id.* at 40-41.

ii.    **Responsive Pleadings**

(a)    **Filings Contravening CTOA**

30.    Protestors argue that proposed section 7.9 and proposed section 9.19 and Attachment B are contrary to the filing's stated goal of providing PJM with independent filing rights and the ability to receive a timely decision and do not comply with the Commission's RTO independence requirement.[63]

31.    Protestors argue that proposed section 7.9 limits PJM independence by effectively providing PJM TOs with veto power over PJM FPA section 205 filings, or with the ability to influence what filings PJM will make.[64]  LS Power states that proposed section 7.9 could prohibit PJM from submitting Members Committee-approved amendments to the OA, which would interfere with the Members Committee's ability to exercise its right to amend the OA under FPA section 205.[65]  Protestors assert that, even when PJM TOs cannot block a filing that allegedly contravenes the CTOA, they will be able to delay the filing by forcing PJM to go through the proposed dispute resolution process.[66]

32.    Protestors argue that proposed section 7.9 would prejudice non-PJM TO stakeholders and provide PJM TOs with unique opportunities to influence decision making to the exclusion of other market participants.[67]  LS Power argues that, under the proposed CTOA Amendments, if a PJM TO alleges a conflict between a proposed transmission planning rule and the CTOA, PJM would be obligated to submit the matter

---

[63] Joint Protestors Protest at 29-32; Consumer Advocates PJM TOs Filing Protest at 16; CEBA Protest at 6-7.  As noted above, proposed section 7.9 prohibits PJM and PJM TOs from making any FPA section 205 filing that contravenes certain Articles and Attachment B of the CTOA, and proposed section 9.19 and Attachment B require and describe the dispute resolution process that applies when PJM and PJM TOs disagree on whether any filing contravenes the CTOA.

[64] United Protest at 7; Consumer Advocates PJM TOs Filing Protest at 16-17; Consumer Advocates PJM Filings Protest at 12; Joint Protestors Protest at 29-31; CEBA Protest at 6-9.

[65] LS Power PJM TOs Filing Protest at 28.

[66] Joint Protestors Protest at 29; Consumer Advocates PJM TOs Filing Protest at 16-17.

[67] United Protest at 8; Consumer Advocates PJM Filings Protest at 13; Consumer Advocates PJM TOs Filing Protest at 3-4, 15-17; Harvard ELI Protest at 40; LS Power PJM Filings Protest at 16.

Docket Nos. ER24-2336-000, et al.                                    - 15 -

to dispute resolution under the CTOA, and the final filing decision would be made by an arbiter, not the Commission, which conflicts with the Commission's findings in *Duquesne v. PJM*.[68] LS Power also asserts that proposed CTOA section 7.9 is broadly written and appears to prohibit PJM, under the described circumstances, from making any FPA section 205 filing to the Tariff or any other agreement, including the OA.[69] Harvard ELI asserts that PJM has previously opposed similar restrictions on its FPA section 205 filing authority as impractical, unworkable, and a barrier to its independence.[70] Harvard ELI also argues that the Commission has previously rejected proposed restrictions on RTO filing authority for the same reasons.[71] Harvard ELI contends that proposed section 7.9 invites abuse by empowering PJM TOs to protest any potential PJM FPA section 205 filing on the belief that it contravenes the CTOA, put pressure on PJM, and invoke the dispute resolution procedures, all while using the confidentiality provisions to keep the Commission wholly unaware of whether or how any settlement agreements affect PJM's administration of the Tariff and OA.[72]

33.    In their response to protests, PJM TOs argue that proposed section 7.9 enforces the basic principle that a contractual party should not violate its contract.[73] PJM TOs defend their proposal by arguing that the proposed dispute resolution process is virtually identical to the one approved in the Atlantic City Settlement Order.[74] PJM TOs contend that the provision is consistent with the Commission's policy favoring settlements and with procedural regulations requiring complaining parties to describe alternate means for resolving disputes.[75]

---

[68] LS Power PJM Filings Protest at 16 (citing *Duquesne Light Co. v. PJM Interconnection, L.L.C.*, 176 FERC ¶ 61,052, at PP 26-27 (2021) (*Duquesne v. PJM*)).

[69] *Id*. at 29.

[70] Harvard ELI Protest at 41-42.

[71] *Id.* at 42-43 (citing *Midwest Indep. Transmission Sys. Operator*, 103 FERC ¶ 61,169, at P 41 (2003); *Midwest Indep. Sys. Operator*, 84 FERC ¶ 61,231, at 62,151 (1998); *Avista Corp.*, 100 FERC ¶ 61,274, at PP 42, 47 (2002)).

[72] *Id.* at 43-44.

[73] PJM TOs August 15 Answer at 24.

[74] PJM TOs September 16 Answer at 6-7.

[75] *Id.* at 7 (citing 18 C.F.R. § 385.206(B)(9) (2024)).

34.     In response to protests, PJM argues that proposed section 7.9 does not give PJM TOs the ability to block changes proposed by PJM because, even if PJM does not prevail in the dispute resolution process, PJM could still file proposed revisions to the RTEP Protocol under FPA section 206; furthermore, Attachment B is clear that the neutral party's decision will not limit the Commission's ability to decide whether a proposal contravenes the CTOA.[76]  PJM further contends that proposed section 7.9 applies only when there is a nexus with Articles 2, 4, 5, 6, or 7 or Attachment B, and that absent this nexus, section 9.2(b) of the Tariff prevents PJM TOs from vetoing or delaying PJM's FPA section 205 filings to amend the Tariff.[77]  PJM states that section 7.9 is important to prevent the Members Committee from forcing PJM to submit FPA section 205 filings that PJM believes violates the contractual rights and commitments under the CTOA. PJM states that, absent this kind of extraordinary circumstance that takes direct aim at the contractual rights and commitments under the CTOA, section 7.9 has no practical impact on PJM's ability to amend the RTEP Protocol.[78]

35.     PJM TOs Deficiency Letter asked PJM TOs to explain whether proposed section 7.9 would inhibit PJM's right to make FPA section 205 filings regarding the OA or the entirety of the Tariff.  In response, PJM TOs state that proposed section 7.9 applies only to disputes arising under the listed provisions of the CTOA and does not inhibit PJM's rights to make a valid FPA section 205 filing consistent with the CTOA.[79]  PJM TOs state that, because the PJM TOs have voluntarily ceded certain rights to PJM and agreed to undertake certain obligations, the parties have also voluntarily agreed to a procedure designed to resolve any disputes that may arise as to what rights have or have not been ceded.[80]  PJM TOs state that proposed section 7.9 would not have any effect on a proposed FPA section 205 filing of PJM to change the OA or the entirety of the Tariff, so long as the proposed filing is not determined by the neutral party to contravene Articles 2, 4, 5, 6, 7, or Attachment B in the CTOA (Protected Provisions), which set forth the negotiated rights and commitments of PJM TOs and PJM, or seek to modify the terms of those provisions.  PJM TOs further state that, even if a neutral party determines that a proposed filing would violate the Protected Provisions, PJM can still present the issue to the Commission under FPA section 206.

---

[76] PJM August 16 Answer at 30.

[77] PJM September 26 Answer at 7-8.

[78] *Id.* at 10.

[79] PJM TOs Deficiency Letter Response at 14-15.

[80] *Id.* at 13.

36.    In their protest to PJM TOs Deficiency Letter Response, Consumer Advocates argue that PJM TOs' influence over PJM's FPA section 205 filing rights would include not only restrictions on filings that contravene the CTOA, but any filing that would simply modify one of the Protected Provisions.[81]  Consumer Advocates, Public Advocates, and Joint Protestors raise concerns about the expansive scope of section 7.9. Consumer Advocates state that the scope of the Protected Provisions over which PJM TOs claim the ability to restrict PJM's FPA section 205 filings is expansive because the CTOA is being made into a foundational planning document and many of the Protected Provisions define or limit the rights of parties other than PJM and PJM TOs with respect to transmission planning.[82]  Public Advocates similarly argue that proposed section 7.9 applies to a broad swath of vaguely worded terms that could allow a single PJM TO to influence a vast array of PJM activities.[83]  Joint Protestors argue that section 7.9 addresses important PJM-administered functions, such as PJM's operation of transmission facilities and transmission system planning.[84]  Consumer Advocates further point out that, on one hand, PJM argues that its independence is compromised if it is forced to make an FPA section 206 filing to amend the RTEP Protocol, but on the other hand, PJM TOs assert that it is just and reasonable if PJM TOs have the ability to block a PJM filing and likewise force PJM to make an FPA section 206 filing as recourse.[85]

37.    In response to protests of PJM TOs Deficiency Letter Response, PJM TOs reiterate their arguments that proposed section 7.9 does not allow PJM TOs to block or indefinitely delay PJM from making an FPA section 205 filing.[86]

### (b)    RTEP Planning Provisions

38.    Protestors raise concerns about the proposed RTEP Planning Provisions that require PJM to prepare the RTEP or amend the RTEP Protocol in accordance with the CTOA.  Protestors argue that, by making the RTEP and RTEP Protocol subject to the CTOA, PJM TOs could use their filing rights over the CTOA to develop provisions

---

[81] Consumer Advocates Protest to PJM TOs Deficiency Letter Response at 7.

[82] *Id.* at 8.

[83] Public Advocates Protest to PJM TOs Deficiency Letter Response at 12.

[84] Joint Protestors Protest to PJM TOs Deficiency Letter Response at 7.

[85] *Id.* at 6.

[86] PJM TOs Deficiency Letter Response Answer at 7-9.

setting out transmission planning criteria.[87]  They argue that this runs counter to the stated goal of giving PJM exclusive filing rights over the RTEP Protocol and violates Order No. 2000's independence and transmission planning requirements.

39.    Protestors assert that the proposed RTEP Planning Provisions make the CTOA a transmission planning document, giving PJM TOs greater control over transmission planning and the ability to bypass Tariff processes and violating PJM's independence.[88] Harvard ELI argues that the RTEP Planning Provisions allow PJM TOs to impose their own constraints or objectives on PJM's regional transmission planning by requiring that PJM's transmission planning criteria, objectives, and rules be consistent with the CTOA, which PJM TOs lack authority to do.[89]  Consumer Advocates state that the proposed revisions would elevate PJM TOs above other market participants who are not parties to the CTOA, but no single stakeholder group should have this much influence over PJM's transmission planning processes, especially the PJM TOs given their financial interest in the transmission planning process.[90]  Consumer Advocates argue that these provisions add transmission planning criteria to the CTOA, and neither PJM nor PJM TOs have explained the role of these criteria with respect to future RTEP filings.[91]  Harvard ELI asserts that these provisions are inconsistent with PJM TOs' position that the CTOA Amendments give PJM exclusive filing rights over the RTEP Protocol that will be housed exclusively in the Tariff.[92]

40.    In response to protests, PJM TOs dispute assertions that they are able to unilaterally amend the CTOA to constrain PJM's transmission planning rights, arguing that PJM and PJM TOs must both agree prior to amending the CTOA, and that the CTOA Amendments are designed to expand, not restrict, PJM's independence.[93]

---

[87] Consumer Advocates PJM Filings Protest at 13-14; CEBA Protest at 6-9; Harvard ELI Protest at 25-30.

[88] Consumer Advocates PJM Filings Protest at 14; CEBA Protest at 6-9; Harvard ELI Protest at 26-27.

[89] Harvard ELI Protest at 25-30.

[90] Consumer Advocates PJM TOs Filing Protest at 13-14.

[91] Consumer Advocates PJM Filings Protest at 14.

[92] Harvard ELI Protest at 27 n.84.

[93] PJM TOs August 15 Answer at 42-43.

### (c)     RTO Status Provision

41.     Protestors also assert that proposed section 6.3.5, which requires PJM to maintain its status as an RTO "consistent with its obligations under [the CTOA]," violates the Commission's independence requirement by requiring PJM to follow the CTOA over Commission regulations.[94]  Joint Protestors argue that this provision is at least ambiguous and creates uncertainty in a situation where the CTOA and Commission regulations conflict.[95]  Harvard ELI argues that this provision provides PJM TOs with undue control over PJM's future because PJM TOs wrote and filed the CTOA Amendments.[96]  Consumer Advocates argue that the language in proposed sections 6.3.5 and 3.5 could together be read to bind PJM to its obligations in the CTOA regardless of its status as an RTO.[97]

42.     PJM TOs respond that this amendment assures that, if the Commission changes the requirements to be an RTO, PJM shall continue to have authority under the CTOA to perform its responsibilities, avoiding all possibility of a break in transmission services or emergency filings (which is not the case under the existing CTOA).[98]

### iii.     Commission Determination

43.     As discussed below, we reject the CTOA Amendments because we find that certain CTOA Amendments, contravene Order No. 2000's requirement that RTOs be independent of control by any market participant or class of participants in both reality and perception.[99]

44.     Specifically, we find that proposed Article 7,[100] section 7.9, violates the independence principles of Order No. 2000.  Proposed section 7.9 provides a mechanism for PJM TOs to restrict PJM's FPA section 205 filing rights by providing PJM TOs with

---

[94] OPSI Protest at 23; Harvard ELI Protest at 39.

[95] Joint Protestors Protest at 50-51.

[96] Harvard ELI Protest at 39.

[97] Consumer Advocates PJM TOs Filing Protest at 24.

[98] PJM TOs August 15 Answer at 27-28.

[99] *See* Order No. 2000, FERC Stats & Regs. ¶ 31,089 at 31,061.

[100] PJM, Rate Schedules, ARTICLE 7, TOA-42 Article 7 – Changes to Rate Design and Tariff Terms (1.0.0), § 7.9.

an exclusive opportunity to affect what FPA section 205 filings PJM submits.  As noted above, the Commission's independence principle requires that each RTO have "a decision making process that is independent of control by any market participant or class of participants."[101]  Proposed section 7.9 does not comport with this requirement.

45.    The Commission has previously rejected provisions that would have provided transmission owners with exclusive influence or control over RTO FPA section 205 filings, finding that such provisions run counter to RTO independence.  In the order on Midcontinent Independent System Operator, Inc.'s (MISO's) Order No. 2000 compliance filing, the Commission concluded that transmission owners could not have a veto over MISO's filings that affect pricing, and subsequently rejected a condition "that [MISO] not make any filings which 'adversely impact' the revenues to be received by the TOs."[102]  In the Commission's order conditionally authorizing the establishment of MISO, the Commission also rejected, as contrary to ISO independence, a provision that would have allowed the ISO Board to be unseated if it "enacts Bylaws contrary to the ISO Agreement" because such a provision would give "the Owners' Committee control over all changes to the ISO Bylaws."[103]  The Commission explained that "the ISO Bylaws will be part of a rate schedule on file, and any changes to the Bylaws will require a Section 205 filing.  Any ISO Member or other interested party may intervene in the Section 205 proceeding to raise concerns."[104]  While proposed section 7.9 does not establish an explicit veto privilege for PJM TOs, it does provide PJM TOs with inappropriate influence or control over PJM's FPA section 205 filings by providing PJM TOs with the ability to delay and potentially influence PJM FPA section 205 filings before they are submitted to the Commission.

46.    Furthermore, we note that section 7.9 has far-reaching effects on PJM's FPA section 205 rights.  Proposed section 7.9 would restrict PJM's ability to submit "any filing under Section 205"—including changes to the PJM Tariff, OA, Reliability Assurance Agreement Among Load Serving Entities in the PJM Region, or any document containing PJM's rates and charges, or rules and regulations affecting or pertaining to such rates and charges.  While the basis of a dispute may be limited to disagreements over contractual obligations, the language of proposed section 7.9 would allow PJM TOs to dispute *any* FPA section 205 filing, not just a filing related to

---

[101] Order No. 2000, FERC Stats & Regs. ¶ 31,089 at ¶ 31,061 (codified at 18 C.F.R. § 35.34(j)(1)(ii)); *see also PJM Interconnection, L.L.C.*, 96 FERC ¶ 61,061.

[102] *Midwest Indep. Sys. Operator, Inc.*, 97 FERC ¶ 61,326, at 62,205 (2001), *order on reh'g, Midwest Indep. Sys. Operator, Inc.*, 103 FERC ¶ 61,169, at P 41.

[103] *Midwest Indep. Sys. Operator, Inc.*, 84 FERC at 62,151.

[104] *Id.*

Docket Nos. ER24-2336-000, et al.                                   - 21 -

transmission planning, as long as PJM TOs contend that the FPA section 205 filing could contravene Articles 2, 4, 5, 6, 7, of Attachment B of the CTOA. We find that this is an overly broad encroachment on PJM's FPA section 205 filing rights because the breadth of proposed section 7.9 would allow PJM TOs to potentially affect filings wholly unrelated to the purposes and objectives of the CTOA which concern filing rights related to PJM TOs' rates and transmission planning along with division of responsibilities for the operation of transmission facilities.[105]

47.     Additionally, we find that RTEP Planning Provisions, which require the RTEP to be planned in accordance with the CTOA, and section 6.3.5, which requires PJM to maintain its status as an RTO "consistent with its obligations to the CTOA," do not comport with the requirement that RTOs be independent in both reality and perception. We agree with OPSI and Harvard ELI that this provision is not just and reasonable because it would elevate PJM's obligations to the CTOA above Commission rules and regulations.[106] We are concerned that these provisions violate the Commission's independence requirement by providing a single stakeholder group, specifically, the PJM TOs, with undue influence over transmission planning and expansion, and thereby reducing PJM's independent governance. In Order No. 2000, beyond requiring independence, the Commission required that an RTO should "have ultimate responsibility for both transmission planning and expansion within its region."[107] The Commission also reaffirmed that "independent governance of the RTO is a necessary condition for nondiscriminatory and efficient transmission planning and expansion" and explained that "such expansion may not be achieved if an RTO operates under a faulty governance system (e.g., a governance system that allows market participants to block expansions that will harm their commercial interests)."[108] While PJM TOs could not unilaterally (i.e., without PJM's consent) amend the CTOA to include new transmission planning constraints or new substantive provisions that PJM must follow over Commission regulations, such that they encumber PJM's ability to maintain its status as an RTO, these provisions may provide a unique and exclusive opportunity in reality or in perception to unduly influence how PJM operates. We find that it is inappropriate for PJM TOs to have a process for making potentially binding challenges to PJM's FPA section 205 filings that have not yet been filed with the Commission.

---

[105] *See* PJM, Rate Schedules, Article 2, TOA-42 Article 2 -Purposes and Objectives of This Agreement (0.0.0).

[106] OPSI Protest at 22-23; Harvard ELI Protest at 39.

[107] Order No. 2000, FERC Stats. & Regs. ¶ 31,089 at 31,164.

[108] *Id.* at 31,165.

48.     We also find that section 6.3.5 is impermissibly vague.[109]  While PJM TOs assert that this provision is intended only to ensure that PJM continues to maintain the safe and reliable operation of the system in the event that the Commission changes the rules or de-certifies PJM as an RTO,[110] the filed language of the CTOA is not specific to this particular responsibility under the agreement and therefore does not "provide a sufficient degree of specificity and clarity regarding the circumstances in which [it] appl[ies]."[111] Instead, the CTOA language states broadly that PJM must maintain its RTO status, "consistent with its obligations under this Agreement,"[112] without defining which obligations.  The proposed language does not align with the stated justification and instead could refer to any obligation currently in the CTOA or that might be added in the future, which could change the meaning.  As such, the proposed language does not make clear how this provision could be applied, specifically, when PJM would be in violation of this provision.

### b.     Local Projects

49.     Several CTOA Amendments relate to the intersection of PJM's regional transmission planning process with the local transmission planning conducted by individual PJM TOs.  As relevant here, RTEP Projects are PJM-planned projects that are required for compliance with certain PJM criteria pertaining to reliability, operational performance, or economic efficiency pursuant to a determination by PJM.[113]  RTEP

---

[109] FPA sections 205(c) and (d), and Commission regulations, provide the Commission with authority to prescribe the rules and regulations regarding the tariffs and rate schedules filed by public utilities and require such tariffs to "stat[e] plainly" and "clearly and specifically specify[]" all rates and charges and terms and conditions of service.  16 U.S.C. § 824d (d); 18 C.F.R. § 35.1(a) (2024).  The Commission has previously rejected tariff provisions when it concludes that they are too vague and do not appropriately define the meaning of the provision.  *See, e.g.*, *Cal. Indep. Sys. Operator Corp.*, 123 FERC ¶ 61,283, at P 79 (2008); *see also Cal. Indep. Sys. Operator Corp.*, 108 FERC ¶ 61,022, at P 45 (2004) (finding a tariff revision to be vague and requesting further definition of the proposal).

[110] PJM TOs Transmittal at 24.

[111] *See PJM Interconnection, L.L.C.*, 162 FERC ¶ 61,086, at P 88 (2018).

[112] PJM, Rate Schedules, Article 6, TOA TOA-42 Article 6 – PJM's Rights and Commitments (1.0.0), § 6.3.5.

[113] RTEP Projects are comprised of "Regional RTEP Projects" (those rated at or above 230 kV) and "Subregional RTEP Projects" (those rated below 230 kV).  PJM,

Projects are approved by the PJM Board for inclusion in the RTEP for purposes of cost allocation. Another category of projects is Attachment M-3 Projects, which are not required for compliance with the above-referenced criteria, but rather are planned by PJM TOs to meet local reliability or economic criteria based on their own respective transmission systems. Within the category of Attachment M-3 Projects, Supplemental Projects are "transmission expansions or enhancements" that are not required for compliance with the above-referenced PJM criteria.[114]

50.      Attachment M-3 of the Tariff contains the local transmission planning process and has been accepted by the Commission as just and reasonable and compliant with Order No. 890.[115] Under the Attachment M-3 process, the Subregional RTEP Committees are responsible for reviewing any Attachment M-3 Projects, which includes scheduling and facilitating an Assumptions and Methodology meeting, a System Needs meeting, and a Potential Solutions meeting. During these meetings, PJM stakeholders review and comment on the criteria, assumptions, and models that PJM TOs will use, any criteria violations and resulting system needs that may drive the need for an Attachment M-3 Project, and potential solutions for identified criteria violations and any additional alternatives. Subsequently, PJM TOs are required to submit to PJM their Attachment M-3 Projects for inclusion in the Local Plan,[116] and stakeholders will have an opportunity to comment on the Local Plan before it is integrated into the RTEP.[117] Prior to integrating a Supplemental Project into the RTEP, PJM conducts only a "do no harm"

---

Intra-PJM Tariffs, OA, Definitions Q-R (17.0.1); PJM, Intra- PJM Tariffs, OA, Definitions, S-T (27.0.0).

[114] A Supplemental Project is a "transmission expansion or enhancement that is not required for compliance with the following PJM criteria: system reliability, operational performance or economic criteria, pursuant to a determination by PJM, and is not a state public policy project." PJM, Intra-PJM Tariffs, OA, Definitions S-T (27.0.0).

[115] *Monongahela Power Co.*, 162 FERC ¶ 61,129, *order on reh'g*, 164 FERC ¶ 61,217 (2018).

[116] The Local Plan "shall include Supplemental Projects as identified by the Transmission Owners within their zone and Subregional RTEP projects developed to comply with all applicable reliability criteria, including Transmission Owners' planning criteria or based on market efficiency analysis and in consideration of Public Policy Requirements." PJM, Intra-PJM Tariffs, Operating Agreement, § 1, Definitions I-L (20.0.0).

[117] PJM, Intra-PJM Tariffs, OATT attach. M-3 (1.0.0) § (c)(1)-(5).

Docket Nos. ER24-2336-000, et al.                                      - 24 -

test to ensure that local transmission facilities do not adversely impact the reliability of the transmission system.[118]

## i.     PJM TOs Filing

51.    PJM TOs state that the CTOA Amendments include several provisions that facilitate the PJM planning process by supporting communications and coordination. PJM TOs state that proposed sections 4.1.4(b)(ii) and 6.3.4(b)(ii) (Overlap Provisions) codify existing processes to coordinate any potential overlap between an RTEP Project and a transmission-owner-planned project.[119]  PJM TOs explain that an overlap occurs when a transmission project that PJM has identified in the RTEP process has the potential to resolve a local need identified by a PJM TO.[120]

52.    The Overlap Provisions address situations where a PJM TO has identified a local transmission project that would overlap with a regional transmission project identified by PJM in the RTEP that would more efficiently or cost-effectively address the need for the local transmission project identified by the PJM TO.[121]  In such a situation, the Overlap Provisions require the PJM TO and PJM to consult to determine if the need for the local transmission project would be addressed by the regional transmission project; but, if the PJM TO determines that the regional project will not address the need, then the PJM TO

---

[118] PJM Interconnection, L.L.C., *PJM Manual 14B:  PJM Regional Transmission Planning Process*, § 1.1 (July 2023), https://www.pjm.com/directory/manuals/m14b/index.html#Sections/11%20Planning%20Process%20Work%20Flow.html.

[119] PJM TOs Filing at 22.

[120] *Id.* at 22 n.82.

[121] PJM, Rate Schedules Article 4, TOA-42 Article 4 – Parties Commitments (1.0.0), § 4.1.4(b)(ii); PJM, Rate Schedules, Article 6, TOA-42 Article 6 -PJM Rights and Commitments (1.0.0), § 6.3.4(b)(ii) ("Where Transmission Facilities planned by a Party may overlap with Transmission Facilities proposed to be included in the Regional Transmission Expansion Plan such that the Transmission Facilities proposed to be included in the Regional Transmission Expansion Plan would more efficiently or cost effectively address the need for which the Party's Transmission Facilities are planned, PJM shall consult with the Party to determine if the need for which the Party's Transmission Facilities are planned will be addressed.  If the Party determines that such need will not be addressed and that it must continue to plan the Party's Transmission Facilities, it shall document to PJM and the relevant PJM transmission planning committee the rationale supporting its determination.").

may continue to plan its local transmission project.  The PJM TO must document to PJM and the relevant PJM transmission planning committee its rationale.

53.     PJM TOs explain that the Overlap Provisions are intended to ensure adequate coordination when PJM identifies that a RTEP Project may also address a local need.[122] PJM TOs argue that the Overlap Provisions do not impair PJM's ability to proceed with an RTEP Project.  PJM TOs argue that this coordination process would efficiently ensure that a PJM TO has sufficient information to determine whether a proposed project is necessary.  PJM TOs state that these proposed revisions do not replace existing processes under Attachment M-3 or PJM Manual 14B[123] or other PJM processes and do not preclude PJM from implementing further PJM Manual procedures; rather the proposed revisions will facilitate a coordinated transmission planning process as the RTEP Protocol and other Tariff provisions change over time.

## ii.     **Responsive Pleadings**

54.     Protestors argue that it is not appropriate to include substantive transmission planning rules in the CTOA because these provisions impact PJM's regional transmission planning and so should be subject to stakeholder and Commission review.[124]  Harvard ELI further argues that the Commission has previously rejected proposals to include substantive transmission planning provisions in transmission owner agreements because such provisions are more appropriately included in a single place in the tariff that is subject to stakeholder participation; that the need for coordination between PJM and PJM TOs does not support inclusion of these provisions in the CTOA; and that these provisions give PJM TOs undue control over transmission planning rules because PJM TOs hold filing rights over the CTOA.[125]  OPSI likewise argues that these provisions establish substantive transmission planning procedures that address the interaction of local and regional transmission planning.[126]

---

[122] PJM TOs Filing at 36.

[123] PJM Manual 14B establishes the business practices associated with the RTEP Protocol.  *See* PJM, *PJM Manual 14B:  PJM Region Transmission Process (Rev. 56)*, (June 27, 2024), https://www.pjm.com/-/media/documents/manuals/m14b.ashx (PJM Manual 14B).

[124] Harvard ELI Protest at 16-17; LS Power PJM TOs Filing Protest at 36-37.

[125] Harvard ELI Protest at 17-19.

[126] OPSI Protest at 25-30; OPSI Deficiency Letter Response Protest at 5-6.

Docket Nos. ER24-2336-000, et al.                                    - 26 -

### iii.      **Commission Determination**

55.     We reject the Overlap Provisions because we find that it is not just and reasonable to include substantive transmission planning procedures in the CTOA.  The Commission has previously distinguished provisions that "affect only (or predominantly) the rights and responsibilities" of the RTO and transmission owners, which may appropriately be included in transmission owner agreements, and substantive interconnection and transmission procedures that are more appropriately housed in other governing documents.[127]  We find that the Overlap Provisions do not predominately affect PJM TOs' rights and responsibilities; rather they set out substantive transmission planning procedures related to the interaction between RTEP Projects and individually planned PJM TO projects, including when and how PJM and PJM TOs must consult regarding whether regional transmission solutions could more efficiently or cost-effectively address local transmission needs.

56.     Because the Overlap Provisions address a substantive aspect of transmission planning in the PJM region and affect PJM's regional transmission planning process, they should not be included in the CTOA.  First, we find that it is "unnecessary and potentially confusing" to include substantive local transmission planning procedures in the CTOA, rather than having them "spelled out only in one place"—specifically, Attachment M-3.[128]  Second, we also find that, because the Overlap Provisions affect all market participants and not just signatories to the CTOA, these provisions should not be included in the CTOA.  The CTOA is intended to contain those provisions that affect the rights and responsibilities of transmission owners and RTOs.  While the Overlap Provisions relate to PJM TOs' right to plan for local transmission needs, this right is already clearly established in other provisions of the CTOA.  In addition, unlike these other provisions of the CTOA that establish PJM TOs' right to plan for local transmission needs, the Overlap Provisions instead predominantly affect the substantive local

---

[127] *ISO New England Inc.*, 106 FERC ¶ 61,280, at P 213 (2004) (finding that certain planning guidelines "do[] not belong in the TOA, given the effect that the provisions . . . may have on market participants as a whole"); *see also PJM Interconnection, L.L.C.*, 114 FERC ¶ 61,283, at P 11 (2006) (CTOA Consolidation Order) (rejecting arguments that provisions addressing an interconnection customer's option to build may be included in the CTOA because they are intended to clarify the transmission owner's rights).

[128] *Cf.* CTOA Consolidation Order, 114 FERC ¶ 61,283 at P 11.  Attachment M-3 deals with the process for planning local projects under Order No. 890; the PJM TOs have exclusive filing rights with respect to Attachment M-3 of the PJM Tariff.  *See Monongahela Power Co.*, 164 FERC ¶ 61,217 (establishing Attachment M-3 for local planning).

transmission planning process, particularly in relation to how it might interact with PJM's regional transmission planning process. Although we recognize that the filing rights for Attachment M-3 are held by the PJM TOs, we find that it is not just and reasonable for the Overlap Provisions to be maintained in the CTOA. We also note that the process set out in the Overlap Provisions may impact PJM's regional transmission planning process,[129] and all stakeholders have an interest in ensuring that PJM has a process that leads to selection and development of more efficient or cost-effective transmission facilities, such that it is unjust and unreasonable for the Overlap Provisions to be maintained in the CTOA.

### c.   *Mobile-Sierra*

57.     The *Mobile-Sierra* "public interest" presumption applies to an agreement only if the agreement has certain characteristics that justify the presumption. In ruling on whether the characteristics necessary to justify a *Mobile-Sierra* presumption are present, the Commission must determine whether the agreement at issue embodies either: (1) individualized rates, terms, or conditions that apply only to sophisticated parties who negotiated them freely at arm's length; or (2) rates, terms, or conditions that are generally applicable or that arose in circumstances that do not provide the assurance of justness and reasonableness associated with arm's-length negotiations. Unlike the latter, the former constitute contract rates, terms, or conditions that qualify for a *Mobile-Sierra* presumption. With respect to the latter, the Commission may exercise its discretion to apply the heightened *Mobile-Sierra* standard of review on future changes to agreements that fall within the second category described above.[130]

58.     As discussed below, we find that proposed CTOA section 9.16.3 has not been shown to be just and reasonable because it extends *Mobile-Sierra* protection to provisions that do not qualify for such protection either as a matter of law or through the exercise of the Commission's discretion.

### i.   **PJM TOs' Filing**

59.     PJM TOs state that proposed section 9.16.3 of the CTOA Amendments "embody the intent" of PJM TOs and PJM to ensure a "limited set of key provisions"—CTOA Articles 2, 4, 5, 6 and 7 and Attachment B (Protected Provisions)—may be amended only if PJM TOs and PJM both consent, or if such a provision is shown to harm the public

---

[129] OPSI Protest at 25-30; OPSI Deficiency Letter Response Protest at 5-6.

[130] *See New England Power Generators Ass'n, Inc. v. FERC*, 707 F.3d 364, 371 (D.C. Cir. 2013) (*NEPGA*).

interest under the *Mobile-Sierra* application of the just and reasonable standard.[131]  PJM TOs argue that the Protected Provisions "undergird the contractual basis" on which PJM TOs have given PJM control of their assets and PJM accepted responsibility to preserve an affordable and reliable grid.[132]  PJM TOs argue that *Mobile-Sierra* protection is necessary to provide stability to the CTOA, and that this protection is particularly important here because vesting PJM with FPA section 205 rights is vital to ensuring PJM's independence, and that transfer of rights must be protected.

### (a)     *Atlantic City* Settlement

60.     PJM TOs state that, in approving the Atlantic City Settlement Agreement, the Commission has already recognized the importance of *Mobile-Sierra* protection against "revisions to the parties' voluntary agreement" as to the allocation of filing rights between PJM TOs and PJM and related provisions.[133]  PJM TOs also state that the "logic of the Atlantic City Settlement Order controls the question of *Mobile-Sierra* protection for these amendments, just as it did for the CTOA to begin with."[134]  PJM TOs state that failing to apply such *Mobile-Sierra* protection to the Protected Provisions would deviate from this prior precedent.

### (b)     Matter of Law

61.     PJM TOs argue that, even apart from the Atlantic City Settlement Order precedent, the Protected Provisions qualify for *Mobile-Sierra* protection as a matter of law.[135]  PJM TOs state that *Mobile-Sierra* protects contract provisions resulting from arm's-length negotiations, and the Protected Provisions fall within that category.[136]  PJM TOs argue that the Protected Provisions are individualized terms unique to PJM, and they constitute an exercise of PJM TOs' solely held rights and the decision to assign certain of those rights to PJM.  PJM TOs argue that the Protected Provisions are not take-it-or-leave-it terms set unilaterally by the Tariff and generally applicable to a broad set of customers, and instead were bilaterally negotiated individualized terms between

---

[131] PJM TOs Transmittal at 41-42.

[132] *Id.* at 41.

[133] *Id.* at 43 (citing Atlantic City Settlement Order, 105 FERC ¶ 61,294 at P 33).

[134] *Id.* at 43-44.

[135] *Id.* at 44-45.

[136] *Id.* at 44 (citing *Morgan Stanley Cap. Grp. Inc.*, 554 U.S. at 554; *NRG Power Mktg.*, 558 U.S. at 174-75.).

PJM and PJM TOs alone.[137]  PJM TOs argue that the Protected Provisions resulted from arm's-length negotiations between PJM and PJM TOs, and PJM is a sophisticated and experienced counterparty that exercised its independent judgment.  PJM TOs state that PJM operates independently of its members, and the CTOA Amendments were the subject of a PJM Board vote.  PJM TOs argue that the Protected Provisions do not embody coordinated action based on a common, non-adversarial interest to exclude competitors.

62.     PJM TOs also contend that *Mobile-Sierra* protection is consistent with the Commission's decisions approving PJM and PJM TOs' compliance with Order No. 1000.[138]  PJM TOs state that, in the Order No. 1000 proceeding, the Commission found that the right of first refusal (ROFR) provisions were provisions of general applicability because they applied to and restricted potential competitors, and that the provisions resulted not from arm's-length bargaining, but from common interests in protection from competition.[139]  PJM TOs argue that the Commission's findings on the ROFR provisions do not apply to the Protected Provisions and that the Commission recognized that "provisions of the CTOA not at issue in [that] proceeding may have those characteristics"—i.e., may be contract rates entitled to *Mobile-Sierra* protection.[140]

### (c)     Matter of Discretion

63.     PJM TOs further state that the Commission could instead apply *Mobile-Sierra* as a matter of discretion.[141]  PJM TOs state that, in *Devon Power, LLC*, the Commission exercised its discretion to apply *Mobile-Sierra* to the settlement agreement establishing ISO New England Inc.'s (ISO-NE) forward capacity market because it would "provide appropriate signals to investors when new infrastructure resources are necessary with sufficient lead time to allow that infrastructure to be put into place before reliability is

---

[137] *Id.* at 44-45.

[138] *Id.* at 46-47 (citing *PJM Interconnection, L.L.C.*, 142 FERC ¶ 61,214, at P 30 (2013) (PJM Order No. 1000 Compliance Order)).

[139] *Id.* at 46-47 (citing PJM Order No. 1000 Compliance Order, 142 FERC ¶ 61,214 at P 186).

[140] *Id.* (quoting PJM Order No. 1000 Compliance Order, 142 FERC ¶ 61,214 at PP 185-86).

[141] *Id.* at 47-48.

sacrificed."[142]  PJM TOs contend that this reasoning applies equally here because *Mobile-Sierra* protection will secure PJM's ability to engage in long-term transmission planning and create a more favorable climate for the increased investment necessary to meet critical challenges.  PJM TOs also contend that, as a matter of public policy, *Mobile-Sierra* protection reflects Congress' and the Commission's objectives of promoting RTO membership and reforming long-term regional transmission planning.

### ii.    **Responsive Pleadings**

#### (a)    *Atlantic City* Settlement

64.    Joint Protestors argue that the Atlantic City Settlement Order only addressed a settlement related to FPA section 205 rights; it did not address *Mobile-Sierra* protection for the CTOA itself.[143]  LS Power states that, to the extent the Commission's determination in the Atlantic City Settlement Order is relevant to whether provisions of the CTOA warrant *Mobile-Sierra* protection, it is relevant to the division of FPA section 205 filing rights over the Tariff that were at issue in that settlement agreement.[144] Moreover, Joint Protestors state that there is no basis to extend the logic of the Atlantic City Settlement Order to the Protected Provisions, particularly as that order predated recent *Mobile-Sierra* precedent from the U.S. Supreme Court and the Commission.[145]  Joint Protestors also state that, in the Atlantic City Settlement Order, the Commission made clear that the overarching goal is to protect "the interests of market participants," which is a broader group than just PJM and PJM TOs.[146]  Harvard ELI further argues that the Commission's acceptance of application of *Mobile-Sierra* to the Atlantic City Settlement Order has no bearing on this proceeding because, while the Commission found that PJM and PJM TOs were adversarial parties at that time, the CTOA Amendments do not modify the *Atlantic City* Settlement Agreement's allocation of filing rights.[147]

---

[142] *Id.* (citing *Devon Power LLC*, 134 FERC ¶ 61,208, at PP 33, 37-38 (2011) (*Devon Power*), *aff'd sub nom. NEPGA*, 707 F.3d 364).

[143] Joint Protestors Protest at 40.

[144] LS Power Protest at 42 n.139.

[145] Joint Protestors Protest at 40 (citing *NRG Power Mktg.*, 558 U.S. 165; *Morgan Stanley Cap. Grp. Inc.*, 554 U.S. 527).

[146] *Id.* (referring to Atlantic City Settlement Order, 105 FERC ¶ 61,294 at P 32).

[147] Harvard ELI Protest at 55-56.

65.     In response to protests, PJM TOs state that they are simply requesting that the Commission carry forward its application of *Mobile-Sierra* protection to the division of filing rights to the allocation of rights and commitments.[148]  In response to PJM TOs' answer, Public Advocates assert that PJM TOs' argument ignores the very broad provisions over which PJM TOs are seeking *Mobile-Sierra* protection and that granting *Mobile-Sierra* protection over the local transmission planning provisions in the CTOA Amendments would represent a major regulatory change that would impair customers' ability to challenge unjust and unreasonable rates.[149]

66.     The PJM TOs Deficiency Letter asked PJM TOs to identify and explain the specific findings of the Atlantic City Settlement Order and the 2006 CTOA Order that they contend control the *Mobile-Sierra* question in the instant case.[150]  In response, PJM TOs state that the Atlantic City Settlement made clear the parties' intent that *Mobile-Sierra* protection should apply to the settlement agreement itself and conforming changes to the PJM Tariff and TOA required by the agreement.[151]  PJM TOs further state that, in the Atlantic City Settlement Order, the Commission found that the Atlantic City Settlement "constitutes a voluntary, compromise agreement of the sort found permissible by the court" and confirmed that it "accept[s] the proposed *Mobile-Sierra* 'public interest' clause governing revisions to the parties' voluntary agreement (as to the division between, essentially, rate-related filings and terms and conditions-related filings – with the [PJM TOs] filing the former and PJM the latter)."[152]  PJM TOs state that, in 2006, PJM TOs and PJM consolidated the outstanding TOAs into a CTOA, and thus the *Mobile-Sierra* protection regarding the allocation of rights and responsibilities between PJM and PJM TOs carried forward to the CTOA.[153]  PJM TOs assert that proposed section 9.13.3 of the CTOA Amendments recognizes this unbroken link between the Commission's approval of the Atlantic City Settlement and the CTOA and recognizes that the same *Mobile-Sierra* protection should apply to CTOA Amendments that address the allocation of filing rights.[154]

---

[148] PJM TOs August 15 Answer at 47.

[149] Public Advocates Answer at 6-7.

[150] PJM TOs Deficiency Letter at 7.

[151] PJM TOs Deficiency Letter Response at 18.

[152] *Id.* (citing Atlantic City Settlement Order, 105 FERC ¶ 61,294 at PP 32-33).

[153] *Id.* at 19 (citing CTOA Consolidation Order, 114 FERC ¶ 61,283 at P 10).

[154] *Id.* at 19.

67.     In response to PJM TOs Deficiency Letter Response, Public Advocates and Joint Protestors argue that the terms for which PJM TOs now seek *Mobile-Sierra* protection are far broader than the mere division of filing rights that currently is subject to the *Mobile-Sierra* doctrine, and PJM TOs fail to identify any specific findings that can plausibly be read to control the question of whether to expand the application of the *Mobile-Sierra* doctrine.[155]  OPSI similarly argues that the CTOA Amendments before the Commission now are not part of the original settlement agreement or conforming changes to PJM's governing documents, and any *Mobile-Sierra* protection should not be carried forward to this proceeding.[156]  OPSI also states that the Overlap Provisions, which are covered by *Mobile-Sierra* protection, do not relate to the foundational allocation of filing rights; rather, they describe a process for coordination between local and regional planning.  In its answer to protests regarding PJM TOs Deficiency Letter Response, PJM TOs argue that the Atlantic City Settlement should reflect the broader principle that the allocation of rights and responsibilities between the Transmission Owners and PJM is entitled to *Mobile-Sierra* protection.[157]  PJM TOs further argue that *Mobile-Sierra* protection preserves PJM's independence by protecting it from future efforts by PJM TOs to limit PJM's planning or other responsibilities.  PJM similarly states that the *Mobile-Sierra* protections are a safeguard to PJM's own independence from unilateral action by the PJM TOs.[158]

### (b)     Matter of Law

68.     Protestors argue that *Mobile-Sierra* does not apply as a matter of law because the Protected Provisions purport to define or limit the rights of third parties or are generally applicable, with impacts on other stakeholders, consumers, and the markets.[159]  Protestors

---

[155] Public Advocates Protest to PJM TOs Deficiency Letter Response at 7-9; Joint Protestors Protest to PJM TOs Deficiency Letter Response at 4-5.

[156] OPSI Protest to PJM TOs Deficiency Letter Response at 8.

[157] PJM TOs Answer to Protest of PJM TOs DL Response at 9.

[158] PJM Answer to Protests on Deficiency Letter Response at 3.

[159] Consumer Advocates PJM TOs Filing Protest at 25-26; Public Advocates Protest at 22; LS Power PJM TOs Filing Protest at 44; Joint Protestors Protest at 36-38; OPSI Protest at 34-35; Public Advocates Protest at 19-20; Harvard ELI Protest at 58.

Document Accession #: 20241206-3052        Filed Date: 12/06/2024

also argue that the Protected Provisions bind future signatories to the CTOA, who have limited room for negotiation in signing the CTOA.[160]

69.    In response to protests regarding whether the Protected Provisions constitute generally applicable terms, PJM TOs argue that Protected Provisions are individualized terms that require PJM's approval and are not "take-it-or-leave-it" terms set unilaterally by the PJM Tariff.  PJM TOs also state that membership in PJM is voluntary, and each PJM TO makes an independent decision as to whether to assign certain filing rights to PJM under the terms of the CTOA.[161]  In response to PJM TOs, Consumer Advocates state that the Commission has already found that the CTOA is generally applicable and therefore not eligible for *Mobile-Sierra* protection.[162]

70.    Protestors further contend that the Protected Provisions did not result from an arm's-length negotiation between adversarial parties.[163]  Protestors note that the Commission previously found that the CTOA is not the result of an adversarial negotiation.[164]  Protestors argue that PJM is not an appropriate counterparty given that PJM is existentially dependent on its PJM TO members, lacks equal bargaining power because the PJM TOs could withdraw as members, and does not seek to further its own economic interests.[165]  Protestors also argue that the CTOA Amendments were written by cooperating utilities with a common interest in protecting their investments.[166]

---

[160] LS Power PJM TOs Filing Protest at 44; Joint Protestors Protest at 36-38; OPSI Protest at 34-35; Consumer Advocates PJM TOs Filing Protest at 20.

[161] PJM TOs August 15 Answer at 47.

[162] Public Advocates Answer at 7-8 (citing PJM Order No. 1000 Compliance Order, 142 FERC ¶ 61,214 at PP 186-87).

[163] Consumer Advocates PJM TOs Filing Protest at 25-26; Harvard ELI Protest at 56-57; LS Power PJM TOs Filing Protest at 41-43; Joint Protestors Protest at 35-36; OPSI at 35-36.

[164] Harvard ELI Protest at 57 (citing *PJM Interconnection, L.L.C.*, 147 FERC ¶ 61,128, at PP 102, 107 (2014) (PJM Order No. 1000 Compliance Rehearing Order)); LS Power PJM TOs Filing Protest at 41-44.

[165] Joint Protestors Protest at 35; LS Power PJM TOs Filing Protest at 43; Harvard ELI Protest at 57.

[166] Harvard ELI Protest at 56; LS Power PJM TOs Filing Protest at 41-42.

71.     In response to protests regarding whether the Protected Provisions resulted from an arm's-length negotiation between adversarial parties, PJM TOs state that the Protected Provisions were negotiated with PJM senior staff and approved by the PJM Board, and that the PJM Board is required by the OA to act independently.[167]  PJM TOs further state that, while the Commission found that the ROFR provisions in the CTOA "lack[ed] the characteristics that justify the *Mobile-Sierra* presumption," it specifically recognized that other provisions in the CTOA, not at issue in the ROFR proceeding, "may have those characteristics."[168]  PJM TOs also disagree with assertions that no portion of the CTOA is entitled to *Mobile-Sierra* protection because PJM is existentially dependent on the PJM TOs.[169]  PJM TOs argue that the right to withdraw is essential to the voluntary agreement reflected in the CTOA.  PJM TOs contend that, as in any other agreement, the PJM TOs give up only what they agree to give up, and Atlantic City confirms the Commission cannot force them to give up more.  PJM TOs argue that a pipeline is dependent on sales agreements with its customers, yet those are squarely within *Mobile-Sierra* protection.[170]

### (c)     Matter of Discretion

72.     Protestors argue that the Commission should not provide the Protected Provisions with *Mobile-Sierra* protection as a matter of discretion.[171]  Protestors argue that, contrary to PJM TOs' assertion, *Mobile-Sierra* protection is not needed to ensure stability, protect PJM TOs' investments, or create a climate for investment, noting that there has been significant transmission investment in recent years and PJM TOs do not provide examples of how the lack of such a provision has harmed PJM TOs or PJM.[172]  Protestors also assert that PJM TOs have raised only generic arguments regarding *Mobile-Sierra* protection, rather than providing a provision-by-provision analysis, as required by the Commission.[173]  Protestors argue that *Mobile-Sierra* is intended to protect consumer

---

[167] PJM TOs August 15 Answer at 44-45.

[168] *Id.* (citing PJM Order No. 1000 Compliance Order, 142 FERC ¶ 61,214 at P 185).

[169] PJM TOs September 16 Answer at 8.

[170] *Id.* at 8 (citing *United Gas Co. v. Mobile Gas Corp.*, 350 U.S. 332).

[171] Public Advocates Protest at 21; LS Power PJM TOs Filing Protest at 44-46; Joint Protestors Protest at 38-40; OPSI Protest at 36-37; Public Advocates Protest at 21-29.

[172] Joint Protestors Protest at 38; LS Power PJM TOs Filing Protest at 44.

[173] Joint Protestors Protest at 34; Harvard ELI Protest at 57.

interests, not private economic interests, but that PJM TOs' arguments focus exclusively on how the protection will benefit their economic interests.[174]  Public Advocates assert that the CTOA Amendments reflect the exact opposite of protecting consumer interests, as applying *Mobile-Sierra* here would limit the Commission's review of the local transmission planning process and whether resulting costs are just and reasonable.[175]

73.    In response to protests, PJM TOs argue that granting *Mobile-Sierra* protection will provide stability to transmission investment, creating a favorable climate for needed investment, and will encourage RTO membership.[176]  Public Advocates dispute PJM TOs' suggestion that the Commission should extend *Mobile-Sierra* protection over the CTOA to encourage RTO membership, arguing that the Commission has not previously used that as a reason to extend *Mobile-Sierra* protection, and that doing so would be an abuse of discretion, given that the Commission already encourages RTO membership through other incentives.[177]

### iii.    Commission Determination

74.    We find that proposed CTOA section 9.16.3 has not been shown to be just and reasonable because it extends *Mobile-Sierra* protection to provisions that do not qualify for such protection as a matter of law, and we find that the instant proceeding lacks the compelling circumstances that warrant the Commission applying *Mobile-Sierra* to the Protected Provisions as a matter of discretion.

75.    We first address PJM TOs' assertion that, in approving the Atlantic City Settlement Agreement, the Commission already determined that the allocation of rights and responsibilities between PJM and PJM TOs is entitled to *Mobile-Sierra* protection. We disagree with PJM TOs' reading of the Atlantic City Settlement Order.  The Atlantic City Settlement Agreement resolved specific issues—namely, "to resolve with finality the [FPA] section 205 filing rights issue and 203 issues decided by the U.S. Court of Appeals for the D.C. Circuit."[178]  While the terms of the Atlantic City Settlement were memorialized in CTOA section 7 and Tariff section 9, the proposed amendments in the

---

[174] LS Power PJM TOs Filing Protest at 44-47; OPSI Protest at 36-37; Public Advocates Protest at 21-29.

[175] Public Advocates Protest at 28.

[176] PJM TOs August 15 Answer at 49.

[177] Public Advocates Answer at 8.

[178] PJM Transmission Owners, Docket Nos. OA97-21-006 et al., Atlantic City Settlement Agreement, § 2.7 (filed Oct. 2, 2003) (Atlantic City Settlement Agreement).

instant case would apply *Mobile-Sierra* protection to a much broader range of CTOA terms and conditions—namely, Articles 2, 4, 5, 6, and 7 and Attachment B.  Moreover, the Atlantic City Settlement Agreement expressly states that "[t]his Settlement Agreement applies only in this case, and the Commission's approval of it does not establish any policy or precedent for other cases."[179]  The Commission has also disagreed with the notion that the CTOA can be classified in its entirety as containing contract rates for which *Mobile-Sierra* applies.[180]  For these reasons, we are not persuaded that the Atlantic City Settlement Order controls the *Mobile-Sierra* question in the instant case.

76.     We next address whether *Mobile-Sierra* protection applies to the Protected Provisions as a matter of law.  As discussed below, we find that the Protected Provisions lack the characteristics that justify the *Mobile-Sierra* presumption as a matter of law.

77.     We agree with protestors that the Protected Provisions are prescriptions of general applicability rather than individualized rates, terms, or conditions that apply only to sophisticated parties who negotiated them.  Any new PJM TO must execute the CTOA and accept these provisions as they are, with limited room for negotiation.[181]  Amending the CTOA requires action by a two-thirds majority of current PJM TOs or by more than five percent of the weighted votes cast.[182]  As a result, any new PJM TO is placed in a position that differs fundamentally from that of parties who are able to negotiate freely like buyers and sellers entering into a typical power sales contract that would be entitled to a *Mobile-Sierra* presumption.[183]  We also disagree with PJM TOs' assertion that the Protected Provisions are individualized terms because they constitute an exercise of PJM TOs' decision to assign its solely held rights to PJM.  As noted above, the Protected

---

[179] Atlantic City Settlement Agreement, Joint Explanatory Statement at 6.

[180] PJM Order No. 1000 Compliance Order, 142 FERC ¶ 61,214 at P 185.

[181] PJM Tariff, Intra-PJM Tariffs, OATT – T – U – V (21.0.0) ("Transmission Owner shall mean a Member that owns or leases with rights equivalent to ownership Transmission Facilities and is a signatory to the PJM Transmission Owners Agreement.").

[182] PJM, Rate Schedules, Article 8 TOA-42 Article 8 -The Administrative Committee (1.0.0), § 8.5.1 (Action by Two-thirds Majority).

[183] *See Wabash Valley Power Ass'n, Inc. v. FERC*, 45 F.4th 115, 121 (D.C. Cir. 2022) (concluding that "the small bargaining power of any individual member relative to the cooperative plus the highly standardized nature of the governing contracts supports FERC's conclusion that the contracts impose a unilateral tariff rate as opposed to a freely negotiated bilateral contract rate").

Provisions encompass a broad range of terms and conditions that extend beyond the assignment of rights to PJM, including new substantive transmission planning rules.[184]

78.     PJM TOs state that, even if the Commission finds that the Protected Provisions are not entitled to *Mobile-Sierra* protection as a matter of law, the Commission should afford *Mobile-Sierra* protection as a matter of discretion.[185]  In *Devon Power*, the Commission recognized that it "has discretion to consider and decide whether future challenges to rates should be evaluated under a more rigorous application of the statutory 'just and reasonable' standard of review;"[186] however, absent compelling circumstances, the Commission will not exercise its discretion to approve the application of the public interest standard of review outside the context of contract rates.[187]  Based on the record here, we find that the instant proceeding lacks the compelling circumstances required for us to apply the public interest standard of review on a discretionary basis.

79.     In *Devon Power*, the Commission accepted a settlement governing the restructuring of the ISO-NE capacity market, which included a provision specifying that the public interest standard would apply to certain future challenges of the auction results and transition payments.  In exercising the Commission's "considerable discretion," the Commission found that the forward capacity auctions "share with freely-negotiated contracts certain market-based features that tend to assure just and reasonable rates."[188]

---

[184] For example, as OPSI notes, the Overlap Provisions do not concern the foundational allocation of filing rights.  OPSI Protest to PJM TOs Deficiency Letter at 8.

[185] PJM TOs Transmittal at 47.

[186] *Devon Power*, 134 FERC ¶ 61,208 at P 2 ("The statutory requirement that rates be 'just and reasonable' is obviously incapable of precise judicial definition, and we afford great deference to the Commission in its rate decisions.") (quoting *Morgan Stanley Cap. Grp. Inc.*, 554 U.S. at 532)).

[187] *PJM Interconnection, L.L.C.*, 184 FERC ¶ 61,077, at P 16 (2023) ("[A]bsent compelling circumstances, the Commission will not exercise its discretion to approve the application of the public interest standard of review outside the context of contract rates."); *see also High Island Offshore Sys.*, LLC, 135 FERC ¶ 61,105, at P 25 (2011).

[188] *Devon Power*, 134 FERC ¶ 61,208 at P 19.  Specifically, the Commission explained that those market-based features included mechanisms to appropriately value capacity resources based on their location, the forward-looking nature of the market which provides signals to investors, and the locational component of the market that ensures addition of new infrastructure is targeted to where reliability problems are most imminent.  Accordingly, the Commission found that it could presume that the forward capacity auctions would result in just and reasonable rates.

In addition to those auction design features, the Commission found that it was particularly important to have rate stability to remedy the unstable nature of capacity revenues and the effect that that instability was having on generating units, particularly those critical to maintaining reliability.  Moreover, the settlement accepted in *Devon Power* was a product of "extensive negotiations" among market participants to develop a "necessary solution to serious deficiencies . . . that were impairing critical infrastructure development and threatening reliability," and the Commission recognized that the settlement may not have been reached without inclusion of the public interest standard.[189]

80.     The instant case does not present similarly compelling circumstances to those the Commission found to exist in *Devon Power*.  As discussed below in addressing the PJM Complaint, we are not persuaded that the current allocation of filing rights is unjust and unreasonable in the first instance.  Therefore, regardless of whether introducing the proposed alternative allocation of filing rights may be beneficial, it does not present circumstances comparable to those that led the Commission to exercise this discretion in the context of *Devon Power*.

81.     PJM TOs also assert that the Commission should exercise its discretion in favor of *Mobile-Sierra* protection because doing so would best reflect Congress' and the Commission's objective of promoting RTO membership and the Commission's objective of reforming long-term regional transmission planning.[190]  The Commission has recognized the consumer and reliability benefits of RTOs/ISOs and has encouraged membership.[191]  In addition, the Commission has taken efforts to reform long-term regional transmission planning.  While the application of *Mobile-Sierra* protection to the Protected Provisions might support such Commission objectives, such potential alignment, in and of itself, does not indicate the type of compelling circumstances similar to *Devon Power* that warrant *Mobile-Sierra* protection in the present case.

---

[189] *Id.* P 23.

[190] *Id.* at 48 (citing FPA Section 219(c), 16 U.S.C. § 824s(c) (requiring Commission to issue rule incentivizing transmission organization membership); Order No. 2000, FERC Stats. & Regs. ¶ 31,089; *Bld'g for the Future Through Elec. Reg'l Transmission Plan. & Cost Allocation*, Order No. 1920, 187 FERC ¶ 61,068, at PP 85-89 (2024)).

[191] *See, e.g.*, Order No. 2000, FERC Stats. & Regs. ¶ 31,089 at 31,024.

## 2.    The Complaint and PJM Transfer Filing

### a.    PJM Filings

82.    In the PJM Complaint, PJM contends that the location of the RTEP Protocol in the OA is unjust, unreasonable, unduly discriminatory and preferential.  In support of its complaint, PJM argues that the location of the RTEP Protocol in the OA: (1) unreasonably hampers PJM's ability to meet its transmission planning responsibilities; (2) unduly discriminates against PJM; and (3) limits the Commission's ability to ensure comparability in its consideration of planning proposals from various RTOs.[192]  In the PJM Transfer Filing, PJM explains that it is submitting revisions to the Tariff pursuant to FPA section 205 in order to implement its proposed changes set forth in the PJM Complaint to effectuate the move of the RTEP Protocol from the OA to the Tariff.[193]

### i.    Unreasonably Hampers

83.    PJM explains that, due to the location of the RTEP Protocol in the OA, it cannot propose any changes to its transmission planning rules under FPA section 205 without first obtaining prior approval of the Members Committee.[194]  PJM states that, without such approval, PJM may only propose a change to its transmission planning rules using FPA section 206.

84.    PJM argues that this paradigm hampers PJM's ability to meet its transmission service obligations by inhibiting PJM's ability to exercise its independent perspective, judgment, and expertise in proposing transmission planning solutions and preventing PJM from receiving a timely reaction from the Commission on proposed revisions to the RTEP Protocol through the FPA section 205 process.[195]  PJM contends that this structure delays the discussion and evaluation of alternative proposals; the rehearing, clarification, and appeals process for intervenors; and the budgeting and preparation required to implement a proposal.  PJM argues that this prevents PJM from fulfilling its legal

---

[192] PJM Filings Transmittal at 3.

[193] PJM Filings Transmittal at 28.

[194] *Id.* at 2 (citing PJM, Intra-PJM Tariffs, OA 18.6 Amendment (1.0.0), § 18.6 (a)).

[195] *Id.* at 19-20.

requirement to provide efficient, reliable, and non-discriminatory open access transmission service for all customers.[196]

85.      Further, PJM states that major changes in the resource mix and load growth in the PJM region are currently challenging PJM's ability to meet its legal requirements for transmission planning and that this challenge is expected to significantly accelerate in coming years.[197]  PJM argues that these trends, as well as other developments in long-term transmission planning, such as Order No. 1920, support a reconsideration of how the RTEP Protocol functions to allow PJM to meet its obligations.[198]  PJM also argues that the location of the RTEP Protocol in the OA is counter to the location's purported purpose, which was to prevent individual stakeholders or stakeholder groups from controlling PJM's functioning.[199]

## ii.      Unduly Discriminates

86.      PJM argues that the current paradigm unduly discriminates against PJM by requiring PJM to meet a higher legal standard (FPA section 206) than all other RTOs when it proposes independent transmission planning rule changes.[200]  PJM states that the Commission's regulations require all RTOs to be able to make independent FPA section 205 filings related to the rates, terms, and conditions of transmission service.  PJM argues the same standard should apply to transmission planning because they are intimately linked.  PJM argues that it is similarly situated to ISO-NE, MISO, and South West Power Pool, Inc. (SPP) because it is an RTO subject to the same regulations regarding system planning and filing rights over transmission service but, despite being similarly situated, PJM must meet the higher FPA section 206 standard.[201]  PJM argues that there is no legal justification, nor practical benefit, to treating PJM differently, given that they are all large, multi-state RTOs with active, diverse and robust stakeholder communities.

---

[196] PJM states that the link between transmission planning and transmission service is integral and essential, and that this link has long been memorialized in Order Nos. 888, 890, 1000, 2000, and 1920.  *Id.* at 12-14.

[197] *Id.* at 14-18.

[198] *Id.* at 18-21.

[199] *Id.* at 19 (citing June 1997 Proposal at 3).

[200] *Id.* at 22-27.

[201] *Id.* at 25 (referring to 18 C.F.R. § 35.34(k)(7), (j)(1)(iii)).

87.     Further, PJM argues that FPA section 206 was never intended to be used as the statutory vehicle by which a public utility makes changes to its *own rates*—that is the purpose of FPA section 205.[202]  PJM argues that FPA section 206 filings are designed to be used by an entity *other than* the public utility making a change to its rates, and that forcing PJM to make FPA section 206 filings to amend its rates in effect requires it to make the case against itself to dismantle the statutory protection that FPA section 206 provides to public utilities prior to filing independent proposed revisions to its RTEP Protocol with the Commission.

### iii.    Limits Comparability

88.     PJM argues that the current paradigm limits the Commission's ability to ensure comparability in its consideration of transmission planning proposals from various RTOs and transmission planners because PJM proposals are subject to a higher burden.[203]  PJM argues that this limits the Commission's ability to analyze such proposals consistently across the nation.

### b.    Responsive Pleadings

### i.    Unreasonably Hampers

89.     Several protestors argue that PJM has not met its burden under FPA section 206 to demonstrate that the RTEP Protocol's location in the OA is unjust, unreasonable, or unduly discriminatory or preferential.[204]  Protestors state that PJM fails to provide a single concrete example of how PJM has been, or is likely to be, unreasonably hampered in its transmission planning role under the current framework, and state that the evidence that PJM does present is speculative and unsupported.[205]

90.     Several protestors dispute PJM's claim that the current voting structure prevents regional transmission planning issues from being addressed by the Commission in a

---

[202] *Id.* at 26.

[203] *Id.* at 27-28.

[204] Public Advocates Protest at 29; Joint Protestors Protest at 2-3, 17; Constellation Protest at 3-6, 12; Consumer Advocates PJM TOs Filing Protest at 2-3, 27; Consumer Advocates PJM Filings Protest at 10, 24; OPSI Protest at 5; LS Power PJM TOs Filing Protest at 9.

[205] Consumer Advocates PJM Filings Protest at 4, 8, 20; Public Advocates Protest at 33-34; LS Power PJM Filings Protest at 9; Constellation Protest at 5-6, 12; Joint Protestors Protest at 4, 17-18.

timely manner, arguing that there is no reason to believe that the Commission will not act quickly on FPA section 206 filings that require prompt action, and that the Commission can nonetheless delay action on FPA section 205 filings by setting them for hearing.[206]

91.     Protestors contend that the current voting structure leads to consensus, and that there are numerous examples of stakeholders approving PJM-sponsored regional transmission planning reforms, after which PJM has recounted the value of its stakeholder process,[207] that the Members Committee approves the majority of PJM proposals,[208] and that the stakeholder process includes abbreviated and expedited processes that allow PJM and the Members Committee to move quickly on urgent and extraordinary issues.[209]

92.     Moreover, Joint Protestors argue that the RTEP Protocol was included in the OA in 1997 as a way to help promote PJM's independence from any particular market participant.[210]  Constellation states the courts have found that FPA section 206 rights provide sufficient recourse to parties that do not have FPA section 205 filing rights and argues that an attack on FPA section 206 is not evidence of unjust and unreasonable rates.[211]

93.     In response to protests, PJM disagrees with protestors' assertions that the evidence PJM presents is speculative, arguing that a lack of historical evidence does not preclude potential future harm, and asserts that the Commission accepted a prior PJM complaint that was based on the potential for future harm.[212]  PJM asserts that, in the Regulation market performance clearing price (RMPCP) Credit Order, the Commission accepted PJM's FPA section 206 filing to resolve a future problem in the regulation market in which the denominator in the mileage ratio had the potential to be zero, which would have resulted in an undefined value that could have made the RMPCP credit

---

[206] Joint Protestors Protest at 4-5, 19; OCC Protest at 6.

[207] LS Power PJM Filings Protest at 8-10.

[208] Consumer Advocates PJM Filings Protest at 9.

[209] LS Power PJM TOs Filing Protest at 22-24.

[210] Joint Protestors Protest at 14.

[211] Constellation Protest at 7-8 (citing *Sacramento Mun. Util. Dist. v. FERC*, 616 F.3d 520, 542 (D.C. Cir. 2010)).

[212] PJM August 16 Answer at 8-11 (citing *PJM Interconnection, L.L.C.*, 183 FERC ¶ 61,006 (2023) (RMPCP Credit Order)).

indeterminate.  PJM also asserts that PJM is not required to identify and articulate specific future instances in which the location of the RTEP Protocol in the OA will hamper PJM in meeting its legal responsibilities because PJM avers that FPA section 206 empowers the Commission to address a mere threat of unjust and unreasonable rates.[213] PJM states that identification in the present of the exact future planning proposals that will be needed to address future challenges is not required for the Commission to reasonably conclude that the existing framework in PJM will inhibit the submission of those future proposals.[214]

94.     In their answer, PJM TOs state that the location of the RTEP Protocol in the OA no longer fulfills the original function to prevent one industry segment from blocking PJM's functions.[215]  PJM TOs also state that the current arrangement was designed when it was expected that relatively few matters would come before the Members Committee, which is no longer the case.

95.     In response to PJM's answer, protestors argue that PJM's reliance on the RMPCP Credit Order, in which the Commission granted a FPA section 206 complaint to prevent future harm, is dissimilar from the circumstances here, as that example addressed a concrete and well-defined problem, which is not the case here.[216]  Public Advocates argue that Order Nos. 1920 and 2023 already address the concern of ensuring reliability in the face of changing market conditions.[217]  Public Advocates further argue that PJM's arguments lack any limiting principle because, if the Commission were to find that general changes in energy markets are enough to prove that sector-weighted voting is unjust and unreasonable in the transmission planning context, then all requirements for sector-weighted voting would be vulnerable to similar challenges.[218]

### ii.     Unduly Discriminates

96.     Protestors argue that there is no merit to PJM's argument that the current framework unduly discriminates against PJM because the FPA protects consumers against undue discrimination by public utilities, and PJM is not a consumer, and PJM

---

[213] *Id.* at 12.

[214] *Id.* at 13.

[215] PJM TOs August 15 Answer at 16-18.

[216] Public Advocates Answer at 10-11; Consumer Advocates Answer at 6-7.

[217] Public Advocates Answer at 9.

[218] *Id.* at 12.

does not allege that the location of the RTEP Protocol in the OA discriminates against any consumers.[219]  Protestors state that, while the FPA generally grants public utilities, including RTOs, FPA section 205 filing rights, public utilities are entitled to voluntarily enter into contracts that limit these rights, as PJM has done here.[220]  Protestors contend that PJM is seeking a prospective rate change to remove the limitations it has agreed to under the OA by alleging undue discrimination to ensure PJM has the same filing rights as other RTOs, but those RTOs did not agree to the same limitations.[221]

97.     Protestors also argue that the FPA does not require the Commission to treat all RTOs/ISOs the same, that the Commission permits regional variation among RTOs/ISOs, including in their governance,[222] and that the Commission has made it abundantly clear when it wants a standardized process without any regional variation.[223]  Further, protestors state that PJM ignores the differences in RTO FPA section 205 filing rights, and that PJM TOs' proposal to include the ability for PJM TOs to preemptively challenge PJM's FPA section 205 filings is unlike what is allowed in other RTOs.[224]  Protestors argue that PJM is not similarly situated to other RTOs, each of which has unique governance approaches which balance the rights and obligations of stakeholders and

---

[219] Joint Protestors Protest at 4, 19-20; Consumer Advocates PJM Filings Protest at 5, 16; Public Advocates Protest at 34-35.

[220] Joint Protestors Protest at 22.

[221] Constellation Protest at 9; Consumer Advocates PJM Filings Protest at 17.

[222] Joint Protestors Protest at 4, 19-20; Consumer Advocates PJM Filings Protest at 2-4, 18-19; LS Power PJM Filings Protest at 18-20, 22-23; Public Advocates Protest at 35-37; Constellation Protest at 9.

[223] Consumer Advocates PJM Filings Protest at 2-4, 18-19 (citing Request for Rehearing and Clarification of PJM Interconnection L.L.C., Docket No. RM21-17-001, at 6 (filed June 12, 2024) (PJM Order No. 1920 Rehearing Request); LS Power PJM Filings Protest at 19-20 (citing *Standardization of Generator Interconnection Agreements & Procs.*, Order No. 2003, 104 FERC ¶ 61,103, at P 824 (2003)).

[224] Consumer Advocates PJM Filings Protest at 5.

states.[225]  In addition, protestors state that PJM's size and diversity make it especially important that all stakeholders have a say in transmission planning rules.[226]

98.     In its answer, PJM disputes protestors' argument that Commission precedent focuses on undue discrimination specifically of a public utility against customers.[227]  PJM asserts that nothing in the statute contains this restriction, and that the Commission has not limited itself when making findings of discrimination in the past.  PJM argues that protestors are attempting to have it both ways by arguing that PJM should be treated as a customer in that it must institute FPA section 206 filings against itself instead of making FPA section 205 filings to amend the RTEP Protocol, but also should not be able to claim undue discrimination because PJM is not a customer.

99.     PJM also disagrees with protestors' argument that PJM is precluded from claiming that it is similarly situated to other RTOs because PJM has previously sought independent entity variations.[228]  Rather, PJM states that, while independent entity variations apply in the context of the substance of its transmission planning rules and compliance approaches to rulemakings, PJM's argument here is that it is subject to the same RTO-specific regulations as other RTOs as they pertain to the legal standard that PJM is required to meet when making independent transmission planning proposals.  PJM states that it is not just and reasonable that it is the only RTO that can be prevented from submitting its own independent transmission planning proposals due to this heightened legal standard.  In answers to PJM, protestors state that utilities are free to voluntarily condition their FPA section 205 filing rights, and that PJM's decision to do so does not make PJM's governance framework unjust and unreasonable.[229]

100.    In its second answer, PJM states that the scope of the PJM Complaint and PJM Transfer Filing is exclusively and narrowly focused on the specific statutory form, i.e., FPA section 206, under which PJM's independent planning proposals must be submitted

---

[225] Public Advocates Protest at 38; Joint Protestors Protest at 4, 20; Constellation Protest at 10-11; Consumer Advocates PJM Filings Protest at 17-18; LS Power PJM Filings Protest at 20; Theresa Ann Ghiorzi Second Protest at 3-4; OPSI Protest at 13.

[226] Theresa Ann Ghiorzi Second Protest at 3-4.

[227] PJM August 16 Answer at 13-14.

[228] *Id.* at 15-16.

[229] Consumer Advocates Answer at 7-8, Joint Protestors September 4 Answer at 7-8.

when PJM fails to obtain the requisite votes from the Members Committee.[230]  PJM further states that the potential harm caused by a failure to address the planning challenges identified by PJM is significantly greater and more dynamic than has historically been the case, and directly impacts PJM's ability to meet its requirements to plan its system to facilitate efficient, reliable, and non-discriminatory open access transmission service for all customers.[231]

### iii.    **Limits Comparability**

101.    Protestors contend that PJM does not provide any persuasive reason to conclude that the RTEP Protocol's location in the OA will interfere with the Commission's ability to ensure comparability in consideration of transmission planning proposals from RTOs.[232]  Moreover, protestors state that many of the Commission's generally applicable transmission planning requirements are adopted based on a Commission FPA section 206 finding, which displaces a need for PJM to make an independent showing or obtain the Members Committee's vote, and note that the Commission has found PJM to be compliant with major transmission planning orders.[233]  Consumer Advocates argue that PJM's hypothetical examples are not problematic, and would be true any time two utilities propose revisions to their protocols but only one utility has entered a contract restricting its filing rights.[234]

102.    In its answer, PJM argues that protestors' argument that the Commission's ability to use FPA section 206 to ensure comparability across regions negates the need for PJM to be able to submit independent proposals under FPA section 205 ignores the examples that PJM put forth of a simultaneous independent proposals from PJM and another RTO that are not the result of compliance proceedings.[235]  PJM argues that this is not a hypothetical example, and that section 17.2 of the Joint Operating Agreement (JOA) between PJM and MISO requires both PJM and MISO to make a good faith effort to make FPA section 205 filings to their respective transmission planning documents to implement the terms of the JOA.  PJM asserts that, in such a situation, PJM may be

---

[230] PJM September 26 Answer at 3.

[231] *Id.* at 4-5.

[232] Joint Protestors Protest at 4, 23; Constellation Protest at 11-12; Consumer Advocates PJM Filings Protest at 19-20; Public Advocates Protest at 30, 36.

[233] OPSI Protest at 11; Joint Protestors Protest at 23.

[234] Consumer Advocates PJM Filings Protest at 20.

[235] PJM August 16 Answer at 16-18.

forced to submit the revisions using FPA section 206 that MISO would be able to submit under FPA section 205.  Further, PJM argues that it is unjust and unreasonable that it has FPA section 205 filing rights over interregional transmission planning in the JOA, but not over regional transmission planning in the OA.

103.    In their answers to PJM, protestors state that PJM has not shown how its hypothetical example would adversely impact the Commission's ability to regulate,[236] and inaccurately assumes that stakeholders would not support a necessary change to the RTEP Protocol.[237]

### c.    <u>Commission Determination</u>

104.    We deny the PJM Complaint because PJM has not met its burden under FPA section 206 to show that the location of the RTEP Protocol in the OA is unjust and unreasonable or unduly discriminatory or preferential.

105.    We agree with protestors that PJM has not adequately demonstrated why the RTEP Protocol's location in the OA is no longer just and reasonable because it hampers PJM in meeting its legal responsibilities to plan the transmission system.  In support of the PJM Complaint, PJM points to "macro-trends," such as load growth and a changing resource mix, and PJM's compliance obligations with respect to Order No. 1920.[238]  PJM also explains that PJM has over 1,100 members with divergent interests.  But PJM fails to connect these facts to its conclusion that the RTEP Protocol's location in the OA unreasonably hinders PJM's ability to continue performing its responsibilities to plan the transmission system.  PJM offers no examples of how PJM has been, or would be, inhibited or hampered in performing such responsibilities.  These general, unsubstantiated assertions are insufficient to support an FPA section 206 complaint.[239]  Moreover, the extent to which PJM may be able to more efficiently or effectively propose changes to transmission planning rules under some alternative structure governing the circumstances under which PJM can make FPA section 205 filings does not satisfy

---

[236] Consumer Advocates Answer at 9-10.

[237] Joint Protestors September 4 Answer at 9.

[238] PJM Filings Transmittal at 14-18.

[239] *See, e.g.*, *Cent. Hudson Gas & Elec. Corp. v. N.Y. Indep. Sys. Operator Inc.*, 176 FERC ¶ 61,149, at P 58 (2021), *order on reh'g*, 178 FERC ¶ 61,194 (2022).

Docket Nos. ER24-2336-000, et al.                                                                          - 48 -

PJM's burden under FPA section 206—that is, to provide a sufficient evidentiary record showing the filed rate to be unjust, unreasonable or unduly discriminatory.[240]

106.    PJM also contends that the RTEP Protocol's location in the OA is unjust and unreasonable because of the statutory timing requirements of FPA sections 205 and 206.[241]  PJM states that, to the extent that PJM proposes changes under FPA section 206, such filings do not require Commission action within 60 days.  PJM states that this structure results in delays that unreasonably hamper PJM's ability to react quickly to plan its system going forward.  We disagree.  In addition to PJM failing to provide any evidence or examples of those timing concerns impeding its transmission planning responsibilities, the fact that PJM may benefit from what it views as a more timely and efficient process under FPA section 205 compared to FPA section 206 does not render the RTEP Protocol's existing location in the OA to be unjust and unreasonable.

107.    In response to protestors' claims that the PJM Complaint is speculative, PJM analogizes the instant case to the Commission's decision regarding the RMPCP.  PJM states that, in the RMPCP Credit Order, the Commission granted PJM's complaint and adopted PJM's proposed solution notwithstanding that the potential harm—an inability to settle the regulation market—had not occurred to date.  PJM states that the same potential for harm exists in the present case.  We disagree.  Unlike the RMPCP Credit Order, where the potential harm was specific and concrete[242]—an error in the RMPCP credit formula that could have resulted in a zero-value denominator—the potential harm here is vague and speculative.

108.    We also find that PJM has failed to demonstrate that the RTEP Protocol's location in the OA is unduly discriminatory against PJM.  The Commission has long recognized regional differences in each of the RTOs/ISOs and has specifically allowed for regional differences in RTOs' governance structure.[243]  In the present case, the rights afforded to

---

[240] *Monterey MA, LLC v. PJM Interconnection, L.L.C.*, 165 FERC ¶ 61,201, at P 54 (2018) (stating that "potential alternatives alone do not render existing rates and terms unjust and unreasonable").

[241] PJM Filings Transmittal at 19-20.

[242] RMPCP Credit Order, 183 FERC ¶ 61,006 at PP 29-30 (finding that, in certain limited circumstances, the value in the denominator of the mileage ratio would be zero, which would produce an undefined number, which would result in making the RMPCP credit value indeterminate, and that "this specific aspect of PJM's RMPCP credits formula is therefore unjust and unreasonable").

[243] Order No. 2000, FERC Stats. & Regs. ¶ 31,089 at 30,994 ("Industry participants, however, retain flexibility in structuring RTOs that satisfy the minimum characteristics and functions."), 31,025 ("We are allowing significant flexibility with

PJM members to vote before PJM may submit an FPA section 205 proposal to amend the RTEP Protocol were established in a settlement that was accepted by the Commission.[244] Consistent with Order Nos. 1000 and 2000, other RTOs/ISOs have different governance structures that were arrived at through negotiations and tradeoffs that balance the rights and obligations of diverse stakeholders.[245]   We find that the existence of these governance differences is insufficient to find that the RTEP Protocol's location in the OA is unduly discriminatory.

109.    We disagree with PJM's argument that the current paradigm is unjust and unreasonable because it hinders the Commission's ability to ensure comparability in consideration of planning proposals from various RTOs.  We find these claims to be speculative and unsupported.  Moreover, in Order No. 1000, the Commission stated that it will not prescribe the exact manner in which public utility transmission providers must

---

respect to how and, in some cases, when the minimum characteristics and functions are satisfied."), 31,034 ("[W]e want to allow involved participants the flexibility to develop mutually agreeable regional arrangements with respect to RTO formation and coordination."); 31,037 ("Because of the differing conditions facing various regions, we offer flexibility in form of organization."), 31,064 ("[I]t is important that we provide current transmission owners with flexibility in deciding how they will relinquish ownership or control of their transmission facilities to an RTO."), 31,091 ("We will leave it to the discretion of the region to decide on the combination of direct and functional control that works best for its circumstances."); *see also Transmission Plan. & Cost Allocation by Transmission Owning & Operating Pub. Utils.*, Order No. 1000, 136 FERC ¶ 61,051, at P 61 (2011) ("The Commission recognizes that each transmission planning region has unique characteristics and, therefore, this Final Rule accords transmission planning regions significant flexibility to tailor regional transmission planning and cost allocation processes to accommodate these regional differences.").

[244] *See* PJM ISO Order, 81 FERC ¶ 61,257; PJM ISO Rehearing Order, 92 FERC ¶ 61,282; *Atlantic City*, 295 F.3d 1.

[245] For example, NYISO must have the approval of the NYISO Management Committee prior to making a FPA section 205 filing to amend its transmission planning protocols, except under certain circumstances.  New York Independent System Operator, Inc., NYISO Agreements, Foundation Agreements, ISO-TO Agreement (0.0.0).  While SPP and ISO-NE have independent filing rights, SPP shares filing rights with the state regulators regarding cost allocation and certain aspects of transmission planning, *see* SPP Bylaws, § 7.2, and ISO-NE is required to file alternative proposals from NEPOOL, if the proposal relates to a market rule where a certain voting threshold is met, *see*  ISO New England Inc., ISO New England Inc. Agreements and Contracts, § 11 – (Changes) (1.0.0).

Docket Nos. ER24-2336-000, et al.                                    - 50 -

fulfill the requirements of complying with regional transmission planning principles.[246]
Rather, the Commission explained that it will allow public utility transmission providers
developing the regional transmission planning processes to craft, in consultation with
stakeholders, requirements that work for their transmission planning region.  The extent
to which moving the RTEP Protocol to the Tariff may, in PJM's view, provide a more
rational or consistent regulatory structure than the current paradigm is not dispositive of
whether the RTEP Protocol's current location in the OA is unjust and unreasonable.

110.    In addition, because we deny the PJM Complaint, we also reject PJM's proposed
replacement rate, as set forth in the PJM Transfer Filing.[247]

The Commission orders:

    (A)    The CTOA Amendments are hereby rejected, as discussed in the body of
this order.

    (B)    The PJM Complaint is hereby denied, as discussed in the body of this
order.

---

[246] Order No. 1000, 136 FERC ¶ 61,051, at P 157 (2011), *order on reh'g*, Order
No. 1000-A, 139 FERC ¶ 61,132, *order on reh'g & clarification*, Order No. 1000-B,
141 FERC ¶ 61,044 (2012), *aff'd sub nom. S.C. Pub. Serv. Auth. v. FERC*, 762 F.3d 41
(D.C. Cir. 2014).

[247] *See* PJM Filings Transmittal at 1 n.5 ("PJM is separately submitting in a
parallel filing proposed revisions to the Tariff implementing [the Complaint] pursuant to
FPA section 205."); PJM Filings Transmittal at 4 ("PJM requests that the
Commission. . . adopt as the just and reasonable replacement rate new Tariff
Schedules 19, 19-A, and 19-B and several conforming revisions described [in the PJM
Transfer Filing].").

     (C)    The PJM Transfer Filing is hereby dismissed, as discussed in the body of this order.

By the Commission.  Commissioner Christie is concurring in part and concurring in the result in part with a statement attached.
Commissioner See is not participating.

( S E A L )

Carlos D. Clay,
Acting Deputy Secretary.

## V.     Appendix

### List of Intervenors

### Docket No. ER24-2336-000

Advanced Energy United
American Clean Power Association
American Electric Power Service Corporation
American Municipal Power, Inc.
Americans for a Clean Energy Grid
Blue Ridge Power Agency
Buckeye Power, Inc.
Calpine Corporation
Clean Energy Buyers Association
Constellation Energy Generation, LLC
DC Energy, LLC
Delaware Division of the Public Advocate
Dominion Energy Services, Inc.
Duke Energy Corporation et. al.
East Kentucky Power Cooperative, Inc.
Exelon Corporation
FirstEnergy Service Company et. al.
Illinois Attorney General's Office
Illinois Citizens Utility Board
Illinois Commerce Commission
Independent Market Monitor for PJM
Indiana Office of Utility Consumer Counselor
LS Power Development, LLC, et al.
Maryland Office of People's Counsel
Maryland Public Service Commission
Michigan Public Service Commission
Natural Resource Defense Council, et al.
NextEra Energy Transmission MidAtlantic, Inc.
New Jersey Division of Rate Counsel
North Carolina Electric Membership Corporation
Office of the Ohio Consumers' Counsel
Ohio Federal Energy Advocate
Old Dominion Electric Cooperative
Organization of PJM States, Inc.
Pennsylvania Public Utility Commission
PJM Industrial Customer Coalition
PJM Interconnection, L.L.C.

PJM Power Providers Group
PPL Electric Utilities Corporation
Public Citizen, Inc
Public Service Electric and Gas Company
Rockland Electric Company
Sierra Club
Silver Run Electric, LLC
Solar Energy Industries Association
Southern Maryland Electric Cooperative, Inc.
The Dayton Power and Light Company
The Office of the People's Counsel for the District of Columbia

**Docket No. ER24-2338-000**

Advanced Energy United
American Clean Power Association
American Electric Power Service Corporation
American Municipal Power, Inc.
Americans for a Clean Energy Grid
Blue Ridge Power Agency
Buckeye Power, Inc.
Calpine Corporation
Clean Energy Buyers Association
Constellation Energy Generation, LLC
DC Energy, LLC
Delaware Division of the Public Advocate
Dominion Energy Services, Inc.
Duke Energy Corporation et. al.
Duquesne Light Company
East Kentucky Power Cooperative, Inc.
Exelon Corporation
FirstEnergy Service Company et. al.
Illinois Attorney General's Office
Illinois Citizens Utility Board
Illinois Commerce Commission
Independent Market Monitor for PJM
Indiana Office of Utility Consumer Counselor
Kentucky Attorney General
LS Power Development, LLC, et al.
Maryland Office of People's Counsel
Maryland Public Service Commission
Michigan Public Service Commission
Natural Resource Defense Council, et al.

New Jersey Division of Rate Counsel
NextEra Energy Transmission MidAtlantic, Inc.
North Carolina Electric Membership Corporation
Office of the Ohio Consumers' Counsel
Ohio Federal Energy Advocate
Old Dominion Electric Cooperative
Organization of PJM States, Inc.
Pennsylvania Public Utility Commission
PJM Industrial Customer Coalition
PJM Power Providers Group
PPL Electric Utilities Corporation
Public Citizen, Inc
Public Service Electric and Gas Company
Rockland Electric Company
Sierra Club
Silver Run Electric, LLC
Solar Energy Industries Association
Southern Maryland Electric Cooperative, Inc.
The Dayton Power and Light Company
The Office of the People's Counsel for the District of Columbia

## Docket No. EL24-119-000

Advanced Energy United
American Clean Power Association
American Electric Power Service Corporation
American Municipal Power, Inc.
Americans for a Clean Energy Grid
Blue Ridge Power Agency
Buckeye Power, Inc.
Calpine Corporation
Clean Energy Buyers Association
Constellation Energy Generation, LLC
DC Energy, LLC
Delaware Division of the Public Advocate
Dominion Energy Services, Inc.
Duke Energy Corporation et. al.
Duquesne Light Company
East Kentucky Power Cooperative, Inc.
Exelon Corporation
FirstEnergy Service Company et. al.
Illinois Attorney General's Office
Illinois Citizens Utility Board

Illinois Commerce Commission
Independent Market Monitor for PJM
Indiana Office of Utility Consumer Counselor
Kentucky Attorney General
LS Power Development, LLC, et al.
Maryland Office of People's Counsel
Maryland Public Service Commission
Michigan Public Service Commission
Natural Resource Defense Council, et al.
New Jersey Division of Rate Counsel
NextEra Energy Transmission MidAtlantic, Inc.
North Carolina Electric Membership Corporation
Office of the Ohio Consumers' Counsel
Ohio Federal Energy Advocate
Old Dominion Electric Cooperative
Organization of PJM States, Inc.
Pennsylvania Public Utility Commission
PJM Industrial Customer Coalition
PJM Power Providers Group
PPL Electric Utilities Corporation
Public Citizen, Inc
Public Service Electric and Gas Company
Rockland Electric Company
Sierra Club
Silver Run Electric, LLC
Solar Energy Industries Association
Southern Maryland Electric Cooperative, Inc.
The Dayton Power and Light Company
The Office of the People's Counsel for the District of Columbia

UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

| | | |
|---|---|---|
| Duquesne Light Company | Docket Nos. | ER24-2336-000 |
| PJM Interconnection, L.L.C. | | ER24-2336-001 |
| | | |
| PJM Interconnection, L.L.C. | | ER24-2338-000 |
| | | ER24-2338-001 |
| | | EL24-119-000 |

(Issued December 6, 2024)

CHRISTIE, Commissioner, *concurring in part and concurring in the result in part:*

1.      I concur in the Order's rejection of the two section 205 filings,[1] one filed by the PJM Transmission Owners (PJM TOs) to amend the Consolidated Transmission Owners' Agreement (CTOA) and one filed by PJM largely consistent with the CTOA Amendments proposed in the PJM TOs' filing and made to effectuate a move of the Regional Transmission Expansion Planning (RTEP) Protocol to the Open Access Transmission Tariff (OATT).

2.      With regard to PJM's section 206 complaint seeking to move the PJM RTEP Protocol from the Operating Agreement (OA) to the OATT,[2] I concur only in the *result* of the Order, which is to reject the complaint.  I do not join the Order's rationale for the rejection, and I emphasize that my concurrence in the result is without prejudice to a future filing seeking to move the RTEP Protocol from the OA to the OATT.

3.      On the broad issue of moving the RTEP Protocol to the OATT, I agree with the Organization of PJM States, Inc. (OPSI), which commented:

> OPSI agrees with PJM and the [PJM] TOs that PJM should
> have unilateral authority to amend its regional transmission
> planning rules commensurate with its responsibility to ensure
> the reliability of the grid . . . .  However . . . PJM has chosen
> to tie its FPA § 206 Complaint to an unjust and unreasonable
> FPA § 205 filing from the [PJM] TOs to amend the CTOA.
> Several proposed amendments to the CTOA are unjust and

---

[1] The section 205 filings are found in docket numbers ER24-2336 and ER24-2338.

[2] This section 206 filing can be found in docket number EL24-119.

unreasonable and require the Commission to reject that filing outright.[3]

## *__Moving the RTEP Protocol from the OA to the OATT__*

4.      The practical effect of moving the RTEP Protocol from the OA to the OATT is to transfer the authority over the RTEP's development from the Members of PJM to the PJM Board of Managers.  There is nothing intrinsically wrong in doing so; on the contrary, I agree in principle with OPSI that it should be done.  The details of this move, however, are critically important, as I discuss below.

5.      As a state commissioner in PJM for 17 years, I am more than a little familiar with the sector-weighted Membership voting processes in PJM and whether this governance structure serves the public interest.  Before going further, we should define our terms.  "Members" and "stakeholders" are often used interchangeably, but are very different.  "Members" are entities that satisfy the requirements set forth in PJM OA Section 11.6.  A Member is either (i) a Transmission Owner, (ii) Generation Owner, (iii) Other Supplier, (iv) Electricity Distributor, or (v) End-Use customer.  These are the Members with voting rights.  Votes are weighted by sector, and voting outcomes are subject to arcane supermajority requirements.[4]  Currently there are *more than one thousand* Members of PJM, including voting members, *ex officio* voting members, affiliate members, associate members and special members.[5]

---

[3] OPSI Limited Protest and Motion to Lodge at 4 (footnotes omitted) (filed July 22, 2024) (Limited Protest).  OPSI also noted that "if the Commission agrees the location of the RTEP Protocol is unjust and unreasonable, the Commission should establish paper hearing procedures to further develop the record to determine the just and reasonable and not unduly discriminatory or preferential set of replacement rules.  This is necessary because by linking its replacement to the [PJM] TOs' CTOA filing it has proposed an unjust and unreasonable replacement rate, and some of the amendments to the CTOA are unnecessary to give PJM the filing rights it needs."  *See, e.g.*, *id.* at 5.  As today's Order recognizes, however, PJM and the PJM TOs have noted that each of the three filings are interrelated such that, given these facts and circumstances, following that bifurcated path may not be effective given the procedural posture and status of the multiple proceedings.  *See, e.g.*, Order at P 22 & n.47.  If the filings had not been interrelated in this way, I may have supported OPSI's suggestion in this regard.

[4] *See, e.g.*, https://learn.pjm.com/pjm-structure/member-org/committees-groups-faqs/sector-weighted-voting.aspx.

[5] *See, e.g.*, https://www.pjm.com/about-pjm/member-services/member-list.

6.      "Stakeholders" is an even broader term that does not necessarily include Members with voting rights.[6]  States and their utility regulators, by the way, are not Members and, I would argue, not "stakeholders" either.  States are sovereign entities with the duty to serve the *public* interest in their states.  No other entity, including special interests who label themselves "public interest organizations," has the duty or the authority under federal or state constitutions and laws to protect the public interest.[7]

7.      So the fatal flaw in allowing this unwieldy assemblage of various interests to vote on one of PJM's most important functions – the development of the RTEP Protocol which informs the RTEP – is obvious.  Virtually all of the voting Members have their own monetary interests in the regulatory outcomes of the process.  Not to be indelicate, but they are clearly rent-seeking interests.  That is not a moral judgment; it is simply economic reality.  To believe that a process in which rent-seeking *special* interests get to vote to affect regulatory outcomes will somehow serve the *public* interest is naïve in the extreme.  Not in this universe.

8.      This unwieldy process of special-interest voting apparently reflected a belief during the "Founding Era" of RTOs that multi-state RTOs such as PJM would be essentially regional governments – quasi-governments – for setting electricity grid policy.  These regional governments would operate high above state authority and be subject only to the Commission's authority.  In PJM in particular, the states were given no governance authority whatsoever, in contrast to the states in MISO and SPP, which at least had some section 205 rights related to cost allocation.[8]  As regional quasi-governmental bodies for the grid, RTOs therefore needed their own quasi-parliaments and parliamentary procedures, as well as various guarantees of "transparency," "inclusiveness," *etc.*, to make the whole structure look more, well, *governmental*.[9]

---

[6] *See, e.g.*, PJM Manual 34, Section 2 (Definitions) ("Stakeholders – PJM Members, OPSI and its members, state consumer advocates who are not PJM Members, Independent Market Monitor, PJM staff, and PJM's Board.").

[7] Some states have established consumer advocates' offices that specifically represent residential consumers and do a good job, as Virginia's does, but are not always tasked, as state utility commissions typically are, with protecting the overall public interest.  In any event, consumer advocates are just that – advocates serving as parties in cases where allowed – while state utility commissions are decisional authorities.

[8] OPSI accurately notes this history in its Limited Protest at 13.

[9] *See, e.g.*, *Reg'l Transmission Orgs.*, Order No. 2000, FERC Stats. & Regs. ¶ 31,089 (1999) (cross-referenced at 89 FERC ¶ 61,285), *order on reh'g*, Order No. 2000-A, FERC Stats. & Regs. ¶ 31,092 (2000) (cross-referenced at 90 FERC ¶ 61,201),

9.      Yet there have always been fatal flaws in this belief in RTOs as regional quasi-governments for the power grid.  First, nowhere in the Constitution of the United States is there an article entitled "Regional Transmission Organizations" that institutes RTOs as regional governments for grid policy, governed by "Members" who get to vote to affect regulatory outcomes.  James Madison, who famously identified the threat to the *public* interest from what he termed "factions" in *The Federalist No. 10*,[10] would label the voting Members of PJM as exactly the "factions" he warned against.

10.      Importantly, it is highly unlikely this quasi-governmental RTO structure can be made more feasible or more likely to serve the public interest by fiddling with details, such as giving additional special interest groups more influence in the decision-making.[11] The fundamental problem has always been in treating RTOs as regional quasi-governments.  They are public utilities, not regional governmental bodies, and should be regulated as such by federal regulators, with a far more robust role for state regulators, and not by rent-seeking special interests.

11.      So I see nothing inherently unjust and unreasonable in moving the RTEP Protocol from this unwieldy and special-interest driven process under the OA to the OATT, where the PJM Board can and should take full responsibility for development of the RTEP. PJM would be free to provide for – and certainly should provide – ample opportunity for its Members, as well as stakeholders and other interests, to *comment* on proposed amendments to the RTEP Protocol, but it should be the *exclusive* responsibility of PJM to

---

*aff'd sub nom. Pub. Util. Dist. No. 1 of Snohomish Cty. v. FERC*, 272 F.3d 607 (D.C. Cir. 2001); *Wholesale Competition in Regions with Organized Elec. Mkts.*, Order No. 719, 125 FERC ¶ 61,071, at PP 7, 477 (2008) (setting forth four principles of RTO "responsiveness" as "(1) inclusiveness, (2) fairness in balancing diverse interests, (3) representation of minority positions, and (4) ongoing responsiveness."), *order on reh'g*, Order No. 719-A, 128 FERC ¶ 61,059, *order on reh'g*, Order No. 719-B, 129 FERC ¶ 61,252 (2009).

[10] Madison described a "faction" as "a number of citizens, . . . who are united and actuated by some common impulse of passion, *or of interest*, adverse to the rights of other citizens*, or to the permanent and aggregate interests of the community*." THE FEDERALIST NO. 10 (James Madison) (emphases added).

[11] For an excellent and informative article discussing the history of RTO governance *see also* Ari Peskoe, *Replacing the Utility Transmission Syndicate's Control*, Energy Law Journal, Vol. 44.3 547 (2023). The author makes a very good suggestion for change:  giving states in RTOs such as PJM Section 205 filing rights, which he argues – persuasively – would not infringe at all on the PJM TOs' rights under the *Atlantic City* case.  *Id.* at 614-615; *see also infra* P 15.

develop and approve any changes to the rules by which the RTEP is developed and approved for submission to the Commission.[12]

### *Getting the Replacement Rate Right is Critically Important*

12.      I also agree with OPSI that it is absolutely essential to get the "replacement rate" right.[13]  The section 206 filing herein fails to get the second prong right and ties itself to the section 205 filings, which is why I concur in the *result* of rejecting PJM's section 206 filing without prejudice to a future filing that would move the RTEP Protocol from the OA to the OATT but gets the all-important replacement rate right.  OPSI's Limited Protest argues persuasively and in substantial detail that many of the PJM TOs' proposed CTOA Amendments could have the effect of limiting PJM's authority to plan and select regional transmission projects that could be more cost effective than local projects in achieving the same or similar purposes.[14]  As OPSI points out, since several states within PJM do not have adequate authority to conduct their own need and prudency reviews of transmission projects[15] – an issue I have raised repeatedly in other contexts[16] – the result could be the construction of *both* regional and local projects that serve essentially the same purpose, but will burden consumers with billions of dollars of unnecessary costs.

13.      Any future section 206 filing to move the RTEP Protocol from the OA to the OATT should include sufficient information that provides answers to several relevant and

---

[12] This is essentially the process used in the California Independent System Operator Corporation (CAISO) to develop its transmission plan.

[13] *See, e.g.*, OPSI Limited Protest at 1-2, 5, 13-15.  Should a future proposal to move the RTEP Protocol from the OA to the OATT come as a section 205 filing, the same considerations and principles would apply in determining whether the proposal was just and reasonable.

[14] *Id.* at 14-15, 23-30.

[15] *Id.* at 29-30.

[16] *See, e.g.*, *The Potomac Edison Co.*, 189 FERC ¶ 61,161 (2024) (Christie, Comm'r, dissenting at PP 2-3, 12-14), https://cms.ferc.gov/news-events/news/commissioner-christies-dissent-potomac-edisons-abandoned-plant-incentive-er25-19; *PSEG Renewable Transmission LLC*, 188 FERC ¶ 61,142 (2024) (Christie, Comm'r, dissenting in part at PP 2-3, 12-14), https://www.ferc.gov/news-events/news/commissioner-christies-partial-dissent-award-incentives-pseg-renewable; *Transmission Planning and Cost Management*, Technical Conference, Docket No. AD22-8-000, Tr. 16:4-20:11 (Comm'r Mark Christie) (Oct. 6, 2022), https://www.ferc.gov/media/transcript-docket-no-ad22-8-000.

compelling questions.  As I noted, OPSI has raised several important issues that must be addressed in any future filing proposing a replacement rate, especially with regard to the need to avoid duplication of both local and regional projects and PJM's authority to select the most efficient project.

14.     I will note a few more issues, all related to what I regard as essential state authority over transmission planning and cost allocation, that I similarly believe should be explored in any future section 206 filing.  In my Concurrence in Part to Order No. 1920-A,[17] I listed in the Appendix the specific provisions which I supported and to which I concurred.[18]  These provisions are all related, directly or indirectly, to a greatly expanded scope of authority for the state regulatory agencies in the long-term transmission planning and, most importantly, cost allocation processes under Order No. 1920-A.  The full scope of expanded authority set forth for the state agencies in the Appendix to my Order No. 1920-A Concurrence in Part is critically important in determining whether Order No. 1920-A ultimately is adequate to protect consumers and serve the public interest in each state.  Indeed, the scope of state authority set forth in Order No. 1920-A may need to be expanded further – in PJM specifically – to include similar section 205 filing rights related to cost allocation historically enjoyed by state agencies in MISO, SPP, and ISO-NE.  Since each one of these filings herein was made well before the Commission issued Order No. 1920-A, it would have been impossible for these filings to reflect that new and expanded scope of authority given to the states in Order No. 1920-A, including of course the states in PJM.  So should PJM seek to refile to move the RTEP Protocol from the OA to the OATT, it would be essential to include information in that filing describing how the expanded scope of authorities given to the PJM states in Order No. 1920-A, specifically described in the Appendix to my Order No. 1920-A Concurrence in Part, would not in any way be limited or barred by a move of the RTEP Protocol from the OA to the OATT.

15.     Further, any filing should include information regarding whether the PJM TOs and PJM acknowledge that the expanded scope of state authority set forth in Order No. 1920-

---

[17] *See, e.g.*, *Bldg. for the Future Through Elec. Reg'l Transmission Plan. & Cost Allocation & Generator Interconnection*, Order No. 1920-A, 189 FERC ¶ 61,126 (2024) (Christie, Comm'r, concurring in part) (Order No. 1920-A Concurrence in Part), https://www.ferc.gov/news-events/news/e-1-commissioner-christies-concurrence-part-order-no-1920-rm21-17-001.

[18] *Id.* P 2 & n.3.  I voted in favor of only those provisions described in my Order No. 1920-A Concurrence in Part and listed in the Appendix and not to any other part of Order No. 1920-A.  *Id.* at App.

A for transmission planning and, most importantly, cost allocation, does not in any way conflict with TO rights under *Atlantic City*[19] or any other court ruling.

16.    Information should also be included as to whether both PJM and the PJM TOs acknowledge that, consistent with Order No. 1000,[20] the selection of a transmission project for the RTEP does *not* pre-empt a *situs* state's authority to conduct its own proceeding under its own state laws to determine the need and/or prudence of that project and to approve or disapprove the construction of that project in accordance with its state laws.[21]

17.    For these reasons, I respectfully concur in the Order's rejection of the two section 205 filings.  I concur only in the result of the Order's rejection of PJM's section 206

---

[19] *Atl. City Elec. Co. v. FERC*, 295 F.3d 1, 9 (D.C. Cir. 2002) (*Atlantic City*); *see also supra* n.11.

[20] *Transmission Plan. & Cost Allocation by Transmission Owning & Operating Pub. Utils.*, Order No. 1000, 136 FERC ¶ 61,051 (2011), *order on reh'g*, Order No. 1000-A, 139 FERC ¶ 61,132, *order on reh'g & clarification*, Order No. 1000-B, 141 FERC ¶ 61,044 (2012), *aff'd sub nom. S.C. Pub. Serv. Auth. v. FERC*, 762 F.3d 41 (D.C. Cir. 2014).

[21] Order No. 1000 made this clear, *id.* PP 227, 253 n.231, 287, and it is *contra* to the ruling in the U.S. District Court of Pennsylvania in *Transource v. Defrank*, which was wrongly decided.  *See Transource Pennsylvania, LLC v. DeFrank*, No. 1:21-CV-01101, 2023 WL 8457071 at *6-*7, *17 (M.D. Pa. Dec. 6, 2023) (finding, *inter alia*, that by rescinding Transource's provisional certificate of public convenience after engaging in its state analysis and finding insufficient evidence to establish "need" under Pennsylvania law for the project, the Pennsylvania Public Utility Commission (PUC) is "attempting to supplant the role of the RTO and expand its state authority into the regulatory territory occupied by the federal government. . . .  Because the PUC's decision presents an obstacle to achieving federal objectives, it is conflict preempted and violates the Supremacy Clause.").

Document Accession #: 20241206-3052      Filed Date: 12/06/2024

complaint.  I emphasize again that my concurrence in the result to the rejection of the PJM section 206 complaint is without prejudice to a future filing seeking the same relief: moving the RTEP Protocol from the OA to the OATT.


      For these reasons, I respectfully concur in part and concur in the result in part.


_____
Mark C. Christie
Commissioner

Document Content(s)

ER24-2336-000.docx..................................................1

# ATTACHMENT B

190 FERC ¶ 62,075
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

| | |
|---|---|
| Duquesne Light Company | Docket Nos. ER24-2336-002 |
| PJM Interconnection, L.L.C. | |
| | ER24-2338-002 |
| PJM Interconnection, L.L.C. | EL24-119-001 |

NOTICE OF DENIAL OF REHEARING BY OPERATION OF LAW AND
PROVIDING FOR FURTHER CONSIDERATION

(February 6, 2025)

Rehearing has been timely requested of the Commission's order issued on December 6, 2024, in this proceeding. *Duquesne Light Co.,* 189 FERC ¶ 61,181 (2024). In the absence of Commission action on a request for rehearing within 30 days from the date it is filed, the request for rehearing may be deemed to have been denied. 16 U.S.C. § 825*l*(a); 18 C.F.R. § 385.713 (2024); *Allegheny Def. Project v. FERC*, 964 F.3d 1 (D.C. Cir. 2020) (en banc).

As provided in 16 U.S.C. § 825*l*(a), the requests for rehearing of the above-cited order filed in this proceeding will be addressed in a future order to be issued consistent with the requirements of such section. As also provided in 16 U.S.C. § 825*l*(a), the Commission may modify or set aside its above-cited order, in whole or in part, in such manner as it shall deem proper.

Debbie-Anne A. Reese,
Secretary.

Document Content(s)

ER24-2336-002.docx.......................................................1

# ATTACHMENT C

# FERC Online - Web Applications of the Federal Energy Regulatory Commission



FERC Online Home
About FERC Online

Log Out

Edit Registration
Company Registration

eFiling
eSubscription
eComment

Query Mailing
List/Recipients by State
Query Service List
My Service List
My Filing List
eLibrary
eTariff Viewer

Help

## Service List for ER24-2336-000 Duquesne Light Company

Contacts marked ** must be postal served

| Party | Primary Person or Counsel of Record to be Served | Other Contact to be Served |
|---|---|---|
| Advanced Energy United | Michael Haugh<br>Policy Director<br>Advanced Energy United<br>1010 VERMONT AVE NW<br>WASHINGTON, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>mhaugh@advancedenergyunited.org | Jonathan Gordon<br>Policy Director<br>Advanced Energy United<br>26 Maple Ave<br>Essex, CONNECTICUT 06426<br>jgordon@advancedenergyunited.org |
| American Clean Power Association | Gabriel Tabak<br>Counsel<br>American Clean Power Association<br>1501 M St NW<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>gtabak@cleanpower.org | |
| American Electric Power Service Corporation | Jessica Cano<br>Senior Counsel<br>AEP Service Corporation<br>1 Riverside Plaza<br>COLUMBUS, OHIO 43215<br>UNITED STATES<br>jacano@aep.com | Stacey Burbure<br>American Electric Power Company<br>801 Pennsylvania Avenue, NW<br>Washington DC, DISTRICT OF COLUMBI<br>slburbure@aep.com |
| American Electric Power Service Corporation | | Takis Laios<br>Director, Transmission Asset S<br>1 Riverside Plaza<br>Columbus, OHIO 43215<br>tlaios@aep.com |
| American Electric Power Service Corporation | | LaChon Turner<br>AEP COMPANIES<br>801 PENNSYLVANIA AVE NW STE 735<br>WASHINGTON, DISTRICT OF COLUMBIA<br>lturner@aep.com |
| American Municipal Power, Inc. | John McCaffrey<br>Partner<br>Stinson LLP<br>1775 PENNSYLVANIA AVE NW STE 800<br>WASHINGTON, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>john.mccaffrey@stinson.com | Lisa G McAlister<br>Deputy General Counsel - FERC/<br>American Municipal Power, Inc.<br>1111 Schrock Road<br>Suite 100<br>Columbus, OHIO 43229<br>lmcalister@amppartners.org |
| American Municipal Power, Inc. | | Gerit F. Hull<br>Deputy General Counsel - Regul<br>American Municipal Power, Inc.<br>1111 SCHROCK RD STE 100<br>COLUMBUS, OHIO 43229<br>ghull@amppartners.org |
| American Transmission Systems, Incorporated | Evan Dean<br>Senior Corporate Counsel<br>FirstEnergy<br>76 S MAIN ST # A-GO-15<br>AKRON, OHIO 44308<br>UNITED STATES<br>edean@firstenergycorp.com | |
| American Transmission Systems, Incorporated | Amanda Parker<br>Attorney<br>FirstEnergy Service Company<br>76 South Main Street<br>Akron, OHIO 44308<br>UNITED STATES<br>aparker@firstenergycorp.com | |
| Americans for a Clean Energy Grid | Christina Hayes<br>Executive Director, ACEG<br>Americans for a Clean Energy Grid<br>10 G ST NE STE 440<br>WASHINGTON, DISTRICT OF COLUMBIA 20002 | Anjali G Patel<br>Vice President for Clean Energ<br>Americans for a Clean Energy Grid<br>3100 CLARENDON BLVD STE 800 |

| | | |
|---|---|---|
| | UNITED STATES<br>christina.hayes@cleanenergygrid.org | ARLINGTON, VIRGINIA 22201<br>anjali@dgardiner.com |
| BLUE RIDGE<br>POWER AGENCY | Allen ONeil<br>Partner<br>McCarter & English, LLP<br>McCarter & English<br>1301 K Street N.W., Suite 1000 West<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>aoneil@mccarter.com | |
| Buckeye Power,<br>Inc. | Lija Kaleps-Clark<br>Buckeye Power, Inc.<br>6677 Busch Blvd<br>Columbus, OHIO 43229<br>UNITED STATES<br>lkaleps@ohioec.org | Kurt Helfrich<br>Buckeye Power, Inc.<br>6677 Busch Boulevard<br>Columbus, OHIO 43229<br>khelfrich@ohioec.org |
| Calpine<br>Corporation | Sarah Novosel<br>Senior VP, Assoc. Gen. Counsel<br>Calpine Corporation<br>717 TEXAS ST STE 1000<br>HOUSTON, TEXAS 77002<br>UNITED STATES<br>snovosel@calpine.com | |
| Calpine<br>Corporation | Rachael Marsh<br>V.P. and Managing Counsel<br>PO Box NA<br>Houston,TEXAS 77002<br>UNITED STATES<br>rachael.marsh@calpine.com | |
| Calpine<br>Corporation | David Scarpignato<br>Calpine Corporation<br>717 Texas Avenue<br>Suite 1000<br>Houston, TEXAS 77002<br>UNITED STATES<br>david.scarpignato@calpine.com | |
| Central<br>Transmission, LLC | Michael Engleman<br>Engleman Fallon, PLLC<br>1717 K Street NW<br>Suite 900<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>mengleman@efenergylaw.com | Sharon Segner<br>Vice President<br>LS Power Associates LP<br>1001 19th Street North<br>Suite 1200<br>Arlington, VIRGINIA 22209<br>ssegner@lspower.com |
| Clean Energy<br>Buyers<br>Association | Kyle Davis<br>Clean Energy Buyers Association<br>1425 K ST NW STE 1110<br>WASHINGTON, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>kdavis@cebuyers.org | Joseph B Nelson<br>Member<br>Van Ness Feldman, LLP<br>2000 PENNSYLVANIA AVE NW<br>WASHINGTON, DISTRICT OF COLUMBIA<br>jbn@vnf.com |
| Constellation<br>Energy<br>Generation, LLC | Christopher Wilson<br>Director, Federal Regulatory A<br>Constellation Energy Generation, LLC<br>101 Constitution Ave, NW<br>Suite 400E<br>Washington, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>FERCe-filings1@Constellation.com | Adrien Ford<br>Constellation Energy Commodities Group<br>344 HOMESTEAD RD<br>WAYNE, PENNSYLVANIA 19087<br>adrien.ford@constellation.com |
| Constellation<br>Energy<br>Generation, LLC | Carrie Allen<br>SVP & Deputy General Counsel<br>CONSTELLATION ENERGY CORPORATION<br>101 Constitution Ave. NW Suite 400 East<br>Washington, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>carrie.allen@constellation.com | |
| Constellation<br>Energy<br>Generation, LLC | Seth Lucia<br>Assistant General Counsel<br>Constellation Energy Generation, LLC<br>250 Massachusetts Avenue, NW<br>Suite 760<br>WASHINGTON, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>Seth.Lucia@constellation.com | |
| Dayton Power<br>and Light<br>Company, The | William Rappolt<br>Assistant Gen. Counsel, FERC<br>AES Corporation | John W Horstmann<br>Sr. Director RTO Affairs<br>Dayton Power and Light Company, The |

| | | |
|---|---|---|
| | 4300 WILSON BLVD<br>ARLINGTON, VIRGINIA 22203<br>UNITED STATES<br>william.rappolt@aes.com | 315 Buckwalter Rd<br>Phoenixville, PENNSYLVANIA 19460<br>john.horstmann@aes.com |
| DC Energy, LLC | Joelle Ogg<br>General Counsel<br>DC Energy<br>1600 Tysons Blvd<br>Fifth Floor<br>McLean, VIRGINIA 22102<br>UNITED STATES<br>ogg@dc-energy.com | Justin R Cockrell<br>Counsel<br>DC Energy<br>1600 TYSONS BLVD FL 5<br>MC LEAN, VIRGINIA 22102<br>cockrell@dc-energy.com |
| Delaware Division of the Public Advocate | Regina Iorii<br>Deputy Attorney General<br>Delaware Department of Justice<br>Delaware Department of Justice<br>820 N. French Street, 4th Floor<br>Wilmington, DELAWARE 19801<br>UNITED STATES<br>regina.iorii@delaware.gov | Ruth A Price<br>Delaware Deputy Public Advocat<br>State of Delaware<br>820 N. French Street<br>Carvel State Office Building<br>Wilmington, DELAWARE 19801<br>ruth.price@delaware.gov |
| Delaware Division of the Public Advocate | | Samantha B Kayne<br>Public Utility Analyst<br>Delaware Division of the Public Advocate<br>501 N DUPONT HWY<br>THOMAS COLLINS BUILDING SUITE 3B<br>DOVER, DELAWARE 19901<br>samantha.kayne@delaware.gov |
| Dominion Energy Services, Inc. | Cheri Yochelson<br>Assistant General Counsel<br>Dominion Energy Services, Inc.<br>120 Tredegar Street, RS-5<br>Richmond, VIRGINIA 23219<br>UNITED STATES<br>cheri.m.yochelson@dominionenergy.com | Jacqulynn B Hugee<br>DEPUTY GENERAL COUNSEL<br>Dominion Energy Services, Inc.<br>120 TREDEGAR ST<br>RICHMOND, VIRGINIA 23219<br>jacqulynn.b.hugee@dominionenergy.cor |
| Duke Energy Carolinas, LLC and Duke Energy Progress, LLC | Molly Suda<br>Associate General Counsel<br>Duke Energy Corporation<br>1301 PENNSYLVANIA AVE NW STE 200<br>WASHINGTON, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>molly.suda@duke-energy.com | |
| Duke Energy Corporation | Molly Suda<br>Associate General Counsel<br>Duke Energy Corporation<br>1301 PENNSYLVANIA AVE NW STE 200<br>WASHINGTON, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>molly.suda@duke-energy.com | |
| Duke Energy Indiana, LLC | Molly Suda<br>Associate General Counsel<br>Duke Energy Corporation<br>1301 PENNSYLVANIA AVE NW STE 200<br>WASHINGTON, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>molly.suda@duke-energy.com | |
| Duke Energy Kentucky, Inc. and Duke Energy Ohio, Inc. | Molly Suda<br>Associate General Counsel<br>Duke Energy Corporation<br>1301 PENNSYLVANIA AVE NW STE 200<br>WASHINGTON, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>molly.suda@duke-energy.com | |
| Duquesne Light Company | Donald Kaplan<br>K&L Gates LLP<br>1601 K Street, NW<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>don.kaplan@klgates.com | Tishekia E Williams<br>Director of External Affairs a<br>Duquesne Light Company<br>411 Seventh Avenue<br>15th Floor<br>Pittsburgh, PENNSYLVANIA 15219<br>twilliams@duqlight.com |
| Duquesne Light Company | | Karen Bruni<br>Steptoe LLP<br>1330 CONNECTICUT AVE NW<br>WASHINGTON, DISTRICT OF COLUMBIA<br>kbruni@steptoe.com |

| | | |
|---|---|---|
| Duquesne Light Company | | Megan McDowell<br>Steptoe LLP<br>1330 Connecticut Ave NW<br>Washington, DISTRICT OF COLUMBIA 2(<br>mmcdowell@steptoe.com |
| East Kentucky Power Cooperative, Inc. | Daniel Frank<br>Partner<br>Eversheds Sutherland (US) LLP<br>700 Sixth Street, N.W.<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 20001-3980<br>UNITED STATES<br>DanielFrank@eversheds-sutherland.com | Denise R Foster Cronin<br>Vice President, Federal and RT<br>East Kentucky Power Cooperative, Inc.<br>4775 LEXINGTON ROAD 40391<br>LEXINGTON, KENTUCKY 40392<br>denise.cronin@ekpc.coop |
| East Kentucky Power Cooperative, Inc. | Allison Salvia<br>Eversheds Sutherland (US) LLP<br>700 Sixth Street, NW<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>AllisonSalvia@eversheds-sutherland.com | |
| Exelon Corporation | Lisa Luftig<br>Assistant General Counsel<br>Exelon BSC-Legal Regulatory<br>701 Ninth Street, NW<br>Washington, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>lisa.luftig@exeloncorp.com | Jordan Kwok<br>Director, Federal Regulatory A<br>Exelon Business Services<br>701 9TH ST NW<br>WASHINGTON, DISTRICT OF COLUMBIA<br>jordan.kwok@exeloncorp.com |
| Exelon Corporation | Alejandro Bautista<br>Assistant General Counsel<br>Exelon Business Services Company, LLC<br>2301 Market Street<br>Philadelphia, PENNSYLVANIA 19101<br>UNITED STATES<br>alejandro.bautista@exeloncorp.com | |
| FirstEnergy Service Company | Evan Dean<br>Senior Corporate Counsel<br>FirstEnergy<br>76 S MAIN ST # A-GO-15<br>AKRON, OHIO 44308<br>UNITED STATES<br>edean@firstenergycorp.com | |
| FirstEnergy Service Company | Amanda Parker<br>Attorney<br>FirstEnergy Service Company<br>76 South Main Street<br>Akron, OHIO 44308<br>UNITED STATES<br>aparker@firstenergycorp.com | |
| Illinois Attorney General's Office | Kimberly Janas<br>Illinois Attorney General's Office<br>115 S LA SALLE ST<br>CHICAGO, ILLINOIS 60603<br>UNITED STATES<br>kimberly.janas@ilag.gov | Scott Metzger<br>Office of the Illinois Attorney General<br>115 S LA SALLE ST<br>25TH FLOOR<br>CHICAGO, ILLINOIS 60603<br>scott.metzger@ilag.gov |
| Illinois Attorney General's Office | | Samuel C Lukens<br>Assistant Attorney General, Pu<br>Office of Illinois Attorney General<br>115 S LA SALLE ST FL 16<br>CHICAGO, ILLINOIS 60603<br>samuel.lukens@ilag.gov |
| Illinois Citizens Utility Board | Eric DeBellis<br>Illinois Citizens Utility Board<br>309 W WASHINGTON ST STE 800<br>CHICAGO, ILLINOIS 60606<br>UNITED STATES<br>edebellis@citizensutilityboard.org | |
| Illinois Commerce Commission | Christine Ericson<br>Special Assistant Attorney Gen<br>Illinois Commerce Commission<br>160 N. LaSalle St.<br>Suite C-800<br>Chicago, ILLINOIS 60601<br>UNITED STATES<br>Christine.Ericson@illinois.gov | William VanderLaan<br>527 E CAPITOL AVE<br>SPRINGFIELD, ILLINOIS 62701<br>bill.vanderlaan@illinois.gov |

| | | |
|---|---|---|
| Illinois Commerce Commission | | Zachary Callen<br>160 N LaSalle<br>Illinois Commerce Commission<br>Ste 801<br>Chicago, ILLINOIS 60601<br>zachary.callen@illinois.gov |
| Indiana Office of Utility Consumer Counselor | Arthur Iler<br>Deputy Consumer Counsel - Fede<br>Indiana Office of Utility Consumer Counselor<br>115 W Washington St<br>Ste 1500 South<br>Indianapolis, INDIANA 46204<br>UNITED STATES<br>ailer@oucc.in.gov | Scott Jones<br>Indiana Office of the Utility<br>Indiana Office of Utility Consumer Couns<br>115 West Washington St. Ste.1500 Sout<br>Indianapolis, INDIANA 46204<br>sjones1@oucc.in.gov |
| Jersey Central Power & Light Company | Evan Dean<br>Senior Corporate Counsel<br>FirstEnergy<br>76 S MAIN ST # A-GO-15<br>AKRON, OHIO 44308<br>UNITED STATES<br>edean@firstenergycorp.com | |
| Jersey Central Power & Light Company | Amanda Parker<br>Attorney<br>FirstEnergy Service Company<br>76 South Main Street<br>Akron, OHIO 44308<br>UNITED STATES<br>aparker@firstenergycorp.com | |
| Keystone Appalachian Transmission Company | Evan Dean<br>Senior Corporate Counsel<br>FirstEnergy<br>76 S MAIN ST # A-GO-15<br>AKRON, OHIO 44308<br>UNITED STATES<br>edean@firstenergycorp.com | |
| Keystone Appalachian Transmission Company | Amanda Parker<br>Attorney<br>FirstEnergy Service Company<br>76 South Main Street<br>Akron, OHIO 44308<br>UNITED STATES<br>aparker@firstenergycorp.com | |
| LS Power Development, LLC | Michael Engleman<br>Engleman Fallon, PLLC<br>1717 K Street NW<br>Suite 900<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>mengleman@efenergylaw.com | Christina R. Switzer<br>Engleman Fallon, PLLC<br>823 Congress Ave<br>Suite 300-67<br>Austin, TEXAS 78701<br>cswitzer@efenergylaw.com |
| LS Power Development, LLC | | Sharon Segner<br>Vice President<br>LS Power Associates LP<br>1001 19th Street North<br>Suite 1200<br>Arlington, VIRGINIA 22209<br>ssegner@lspower.com |
| Maryland Office of People's Counsel | Peter Hopkins<br>Spiegel & McDiarmid LLP<br>1818 N Street, NW<br>8th Floor<br>WASHINGTON, DISTRICT OF COLUMBIA 20036<br>UNITED STATES<br>peter.hopkins@spiegelmcd.com | Scott H. Strauss, ESQ<br>Spiegel & McDiarmid LLP<br>1818 N Street, NW<br>8th Floor<br>WASHINGTON, DISTRICT OF COLUMBIA<br>Scott.Strauss@spiegelmcd.com |
| Maryland Office of People's Counsel | Amanda Drennen<br>Attorney<br>Spiegel & McDiarmid LLP<br>1818 N Street, NW<br>8th Floor<br>WASHINGTON, DISTRICT OF COLUMBIA 20036<br>UNITED STATES<br>amanda.drennen@spiegelmcd.com | Jeffrey A Schwarz<br>Spiegel & McDiarmid LLP<br>1818 N Street, NW<br>8th Floor<br>WASHINGTON, DISTRICT OF COLUMBIA<br>jeffrey.schwarz@spiegelmcd.com |
| Maryland Office of People's Counsel | Michael Sammartino<br>Assistant People's Counsel<br>Maryland Office of People's Counsel<br>6 SAINT PAUL ST STE 2102 | William F. Fields<br>Deputy People's Counsel<br>6 SAINT PAUL ST STE 2102 |

| | | |
|---|---|---|
| | BALTIMORE, MARYLAND 21202<br>UNITED STATES<br>michael.sammartino@maryland.gov | BALTIMORE, MARYLAND 21202<br>william.fields@maryland.gov |
| Maryland Public Service Commission | Christina Ochoa<br>Associate General Counsel<br>Maryland Public Service Commission<br>6 St. Paul Street<br>16th Floor<br>BALTIMORE, MARYLAND 21202<br>UNITED STATES<br>christina.ochoa1@maryland.gov | Ransom E Davis, ESQ<br>Associate General Counsel<br>Maryland Public Service Commission<br>6 St. Paul Street<br>16th Floor<br>BALTIMORE, MARYLAND 21202<br>Ransom.Davis@Maryland.gov |
| Maryland Public Service Commission | | Miles H Mitchell<br>General Counsel<br>Maryland Public Service Commission<br>6 St. Paul Street<br>16th Floor, William Donald Schaefer Tow<br>Baltimore, MARYLAND 21202<br>miles.mitchell@maryland.gov |
| Michigan Public Service Commission | Alena Clark<br>Assistant Attorney General, St<br>State of Michigan<br>7109 W SAGINAW HWY<br>LANSING, MICHIGAN 48917<br>UNITED STATES<br>ClarkA55@michigan.gov | Steven D Hughey<br>Assistant Attorney General<br>Department of Attorney General<br>7109 W SAGINAW HWY FL 3<br>LANSING, MICHIGAN 48917<br>hugheys@michigan.gov |
| Mid-Atlantic Interstate Transmission LLC | Evan Dean<br>Senior Corporate Counsel<br>FirstEnergy<br>76 S MAIN ST # A-GO-15<br>AKRON, OHIO 44308<br>UNITED STATES<br>edean@firstenergycorp.com | |
| Mid-Atlantic Interstate Transmission LLC | Amanda Parker<br>Attorney<br>FirstEnergy Service Company<br>76 South Main Street<br>Akron, OHIO 44308<br>UNITED STATES<br>aparker@firstenergycorp.com | |
| Monitoring Analytics, LLC | Jeffrey Mayes<br>General Counsel<br>Monitoring Analytics, LLC<br>2621 Van Buren Avenue, Suite 160<br>Valley Forge Corporate Center<br>Eagleville, PENNSYLVANIA 19403<br>UNITED STATES<br>jeffrey.mayes@monitoringanalytics.com | Suzette N Krausen<br>Executive Assistant<br>Monitoring Analytics, LLC<br>2621 Van Buren Ave Ste 160<br>Norristown, PENNSYLVANIA 19403<br>Suzette.Krausen@monitoringanalytics.cc |
| Monitoring Analytics, LLC | | Joseph Bowring<br>Monitoring Analytics, LLC<br>2621 Van Buren Avenue, Suite 160<br>Norristown, PENNSYLVANIA 19403<br>Joseph.Bowring@monitoringanalytics.cc |
| Monongahela Power Company | Evan Dean<br>Senior Corporate Counsel<br>FirstEnergy<br>76 S MAIN ST # A-GO-15<br>AKRON, OHIO 44308<br>UNITED STATES<br>edean@firstenergycorp.com | |
| Monongahela Power Company | Amanda Parker<br>Attorney<br>FirstEnergy Service Company<br>76 South Main Street<br>Akron, OHIO 44308<br>UNITED STATES<br>aparker@firstenergycorp.com | |
| Natural Resource Defense Council | Tom Rutigliano<br>Sr. Advocate<br>NRDC/FERC Project<br>1124 15th St. NW<br>Suite 300<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>trutigliano@nrdc.org | |

| | | |
|---|---|---|
| New Jersey Division of Rate Counsel | Robert Glover<br>New Jersey Division of Rate Counsel<br>PO Box 003<br>Trenton,NEW JERSEY 08625<br>UNITED STATES<br>rglover@rpa.nj.gov | Brian O Lipman<br>Acting Director<br>New Jersey Division of Rate Counsel<br>140 East Front Street<br>4th Floor<br>Trenton, NEW JERSEY 08625<br>blipman@rpa.nj.gov |
| New Jersey Division of Rate Counsel | | T. David Wand<br>Division of Rate Counsel<br>New Jersey Division of Rate Counsel<br>140 E. Front St.<br>4th Flr.<br>Trenton, NEW JERSEY 08625<br>dwand@rpa.nj.gov |
| New Jersey Division of Rate Counsel | | Debora Layugan<br>New Jersey Division of Rate Counsel<br>PO Box 003<br>Trenton, 08625<br>dlayugan@rpa.nj.gov |
| New Jersey Division of Rate Counsel | Peter Hopkins<br>Spiegel & McDiarmid LLP<br>1818 N Street, NW<br>8th Floor<br>WASHINGTON, DISTRICT OF COLUMBIA 20036<br>UNITED STATES<br>peter.hopkins@spiegelmcd.com | Scott H. Strauss, ESQ<br>Spiegel & McDiarmid LLP<br>1818 N Street, NW<br>8th Floor<br>WASHINGTON, DISTRICT OF COLUMBIA<br>Scott.Strauss@spiegelmcd.com |
| New Jersey Division of Rate Counsel | Amanda Drennen<br>Attorney<br>Spiegel & McDiarmid LLP<br>1818 N Street, NW<br>8th Floor<br>WASHINGTON, DISTRICT OF COLUMBIA 20036<br>UNITED STATES<br>amanda.drennen@spiegelmcd.com | Jeffrey A Schwarz<br>Spiegel & McDiarmid LLP<br>1818 N Street, NW<br>8th Floor<br>WASHINGTON, DISTRICT OF COLUMBIA<br>jeffrey.schwarz@spiegelmcd.com |
| NextEra Energy Transmission MidAtlantic, Inc. | Katherine O'Konski<br>Senior Attorney<br>NextEra Energy, Inc.<br>801 PENNSYLVANIA AVE NW STE 220<br>WASHINGTON, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>katherine.o'konski@nexteraenergy.com | |
| North Carolina Electric Membership Corporation | Randolph Elliott<br>McCarter & English, LLP<br>1301 K Street, NW<br>Suite 1000 West<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>relliott@mccarter.com | Michael D Youth<br>Associate General Counsel<br>NCEMC<br>3400 SUMNER BLVD<br>RALEIGH, NORTH CAROLINA 27616<br>michael.youth@ncemcs.com |
| North Carolina Electric Membership Corporation | Sean Beeny<br>McCarter & English, LLP<br>1301 K Street, NW<br>Suite 1000 West<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>sbeeny@mccarter.com | Charles Bayless<br>General Counsel<br>North Carolina Electric Membership Corp<br>3400 SUMNER BLVD<br>RALEIGH, NORTH CAROLINA 27616<br>charlie.bayless@ncemcs.com |
| North Carolina Electric Membership Corporation | F. Alvin Taylor<br>Attorney<br>McCarter & English, LLP<br>1301 K Street, NW<br>Suite 1000 West<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>ataylor@mccarter.com | |
| Office of the Ohio Consumers' Counsel | Denise Goulet<br>Partner<br>McCarter & English, LLP<br>1301 K ST NW<br>SUITE 1000 WEST<br>WASHINGTON, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>dgoulet@mccarter.com | |
| Office of the Ohio Consumers' Counsel | Angela O'Brien<br>Deputy Consumers' Counsel<br>Office of the Ohio Consumers' Counsel<br>65 E STATE ST STE 700 | |

| | | |
|---|---|---|
| | OFFICE OF THE OHIO CONSUMERS' COUNSEL<br>COLUMBUS, OHIO 43215<br>UNITED STATES<br>angela.obrien@occ.ohio.gov | |
| Office of the People's Counsel for the District of Columbia | Scott Strauss<br>Spiegel & McDiarmid LLP<br>1818 N Street, NW<br>8th Floor<br>WASHINGTON, DISTRICT OF COLUMBIA 20036<br>UNITED STATES<br>Scott.Strauss@spiegelmcd.com | E Service<br>Spiegel & McDiarmid LLP<br>1875 Eye St, NW<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 2(<br>eService@spiegelmcd.com |
| Office of the People's Counsel for the District of Columbia | | Ade Adeniyi<br>aadeniyi@opc-dc.gov |
| Ohio Federal Energy Advocate | Thomas Lindgren<br>Assistant Attorney General<br>Public Utilities Commission of Ohio<br>30 East Broad Street<br>16th Floor<br>Columbus, OHIO 43215-3793<br>UNITED STATES<br>thomas.lindgren@ohioattorneygeneral.gov | Sarah Parrot<br>Federal Energy Advocate<br>Public Utilities Commission of Ohio<br>180 E BROAD ST<br>COLUMBUS, OHIO 43215<br>sarah.parrot@puco.ohio.gov |
| Old Dominion Electric Cooperative | Adrienne Clair<br>Attorney<br>Thompson Coburn LLP<br>1909 K Street NW<br>Suite 600<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>aclair@thompsoncoburn.com | Jecoliah R. Williams<br>Thompson Coburn LLP<br>1909 K Street N.W.<br>Suite 600<br>WASHINGTON, DISTRICT OF COLUMBIA<br>jwilliams@thompsoncoburn.com |
| Organization of PJM States, Inc. | Gregory Carmean<br>Executive Director<br>Organization of PJM States, Inc.<br>700 Barksdale Road<br>Suite 1<br>Newark, DELAWARE 19711<br>UNITED STATES<br>greg@opsi.us | |
| Pennsylvania Public Utility Commission | Elizabeth Barnes<br>Deputy Chief Counsel<br>Pennsylvania Public Utility Commission<br>PO BOX 3265<br>HARRISBURG, PENNSYLVANIA 17105<br>UNITED STATES<br>ebarnes@pa.gov | Kriss E. Brown, ESQ<br>Deputy Chief Counsel<br>Pennsylvania Public Utility Commission<br>P.O. Box 3265<br>Harrisburg, PENNSYLVANIA 17105-3265<br>kribrown@pa.gov |
| PJM Industrial Customer Coalition | Robert Weishaar<br>McNees Wallace & Nurick LLC<br>1200 G Street, NW<br>Suite 800<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>bweishaar@mcneeslaw.com | |
| PJM Interconnection, L.L.C. | Jessica Lynch<br>Assistant General Counsel<br>PJM Interconnection, L.L.C.<br>2750 Monroe Blvd.<br>Audubon, PENNSYLVANIA 19403<br>UNITED STATES<br>jessica.lynch@pjm.com | |
| PJM Interconnection, L.L.C. | Thomas DeVita<br>PJM Interconnection, L.L.C.<br>2750 Monroe Blvd.<br>Audubon, PENNSYLVANIA 19403<br>UNITED STATES<br>thomas.devita@pjm.com | |
| PJM Interconnection, L.L.C. | Thomas DeVita<br>PJM Interconnection, L.L.C.<br>2750 Monroe Blvd.<br>Audubon, PENNSYLVANIA 19403<br>UNITED STATES<br>thomas.devita@pjm.com | Jessica M. Lynch<br>Assistant General Counsel<br>PJM Interconnection, L.L.C.<br>2750 Monroe Blvd.<br>Audubon, PENNSYLVANIA 19403<br>jessica.lynch@pjm.com |
| PJM Interconnection, L.L.C. | | Craig Glazer<br>V.P., Federal Gov't Policy<br>PJM Interconnection, L.L.C. |

| Party | Contact 1 | Contact 2 |
|---|---|---|
| | | 1200 G Street, N.W.<br>Suite 600<br>Washington, DISTRICT OF COLUMBIA 2(<br>craig.glazer@pjm.com |
| PJM Power Providers Group | Glen Thomas<br>101 Lindenwood Drive<br>Suite 225<br>Malvern, PENNSYLVANIA 19355<br>UNITED STATES<br>gthomas@gtpowergroup.com | Diane L Slifer<br>101 LINDENWOOD DR STE 225<br>MALVERN, PENNSYLVANIA 19355<br>dslifer@gtpowergroup.com |
| PJM Power Providers Group | | Laura Chappelle<br>6688 FOREST BEACH DR<br>HOLLAND, MICHIGAN 49423<br>laurac@chappelleconsulting.net |
| PPL Electric Utilities Corporation | Steven Nadel<br>PPL Services Corporation<br>2 North 9th St<br>Allentown, PENNSYLVANIA 18101<br>UNITED STATES<br>SMNadel@pplweb.com | Donald A Kaplan<br>K&L Gates LLP<br>1601 K Street, NW<br>Washington, DISTRICT OF COLUMBIA 2(<br>don.kaplan@klgates.com |
| PPL Electric Utilities Corporation | | Kimberly B Frank<br>Counsel<br>K&L Gates LLP<br>1601 K Street NW<br>Washington, DISTRICT OF COLUMBIA 2(<br>kimberly.frank@klgates.com |
| PPL Electric Utilities Corporation | | John Longstreth<br>K&L Gates LLP<br>1601 K Street, NW<br>Washington, DISTRICT OF COLUMBIA 2(<br>john.longstreth@klgates.com |
| PPL Electric Utilities Corporation | | Chimera N Thompson<br>K&L Gates LLP<br>1601 K ST NW<br>WASHINGTON, DISTRICT OF COLUMBIA<br>chimera.thompson@klgates.com |
| PPL Electric Utilities Corporation | | William Keyser, III<br>Steptoe LLP<br>1330 Connecticut Avenue, NW<br>Washington, DISTRICT OF COLUMBIA 2(<br>wkeyser@steptoe.com |
| PPL Electric Utilities Corporation | | Karen Bruni<br>Steptoe LLP<br>1330 CONNECTICUT AVE NW<br>WASHINGTON, DISTRICT OF COLUMBIA<br>kbruni@steptoe.com |
| PPL Electric Utilities Corporation | | Megan McDowell<br>Steptoe LLP<br>1330 Connecticut Ave NW<br>Washington, DISTRICT OF COLUMBIA 2(<br>mmcdowell@steptoe.com |
| PUBLIC CITIZEN, INC | Tyson Slocum<br>Energy Program Director<br>PUBLIC CITIZEN, INC<br>215 PENNSYLVANIA AVE SE<br>PUBLIC CITIZEN, INC.<br>WASHINGTON, DISTRICT OF COLUMBIA 20003<br>UNITED STATES<br>tslocum@citizen.org | |
| Public Service Electric and Gas Company | Ana Murteira<br>Associate Regulatory Counsel<br>PSEG Services Corporation<br>80 PARK PLZ # T10<br>NEWARK, NEW JERSEY 07102<br>UNITED STATES<br>ana.murteira@pseg.com | Robert E. Gardinor<br>Paralegal<br>PSEG Services Corporation<br>80 Park Plaza, T5<br>Newark, NEW JERSEY 07102<br>Robert.Gardinor@pseg.com |
| Rockland Electric Company | Paul Savage<br>Consolidated Edison Development, Inc.<br>4 Irving Place<br>New York, NEW YORK 10003<br>UNITED STATES<br>savagep@coned.com | Dana Lazarus<br>Director<br>Con Edison Company of New York<br>4 Irving Place<br>New York, NEW YORK 10003<br>lazarusd@coned.com |
| Rockland Electric Company | | Kacie Rettig<br>Con Ed<br>Con Edison Company of New York |

| | | |
|---|---|---|
| | | 4 IRVING PL<br>NEW YORK, NEW YORK 10003<br>rettigk@coned.com |
| Rolling Hills Generating L.L.C. | Michael Engleman<br>Engleman Fallon, PLLC<br>1717 K Street NW<br>Suite 900<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>mengleman@efenergylaw.com | Marjorie R Philips<br>VP, Wholesale Market Policy<br>LS Power Associates, L.P.<br>1700 Broadway, 38th Floor<br>New York, NEW YORK 10019<br>mphilips@lspower.com |
| Sierra Club | Justin Vickers<br>Senior Attorney<br>Sierra Club<br>Environmental Law Program<br>1229 W. Glenlake Ave.<br>Chicago, ILLINOIS 60660<br>UNITED STATES<br>justin.vickers@sierraclub.org | |
| Silver Run Electric, LLC | Michael Engleman<br>Engleman Fallon, PLLC<br>1717 K Street NW<br>Suite 900<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>mengleman@efenergylaw.com | Christina R. Switzer<br>Engleman Fallon, PLLC<br>823 Congress Ave<br>Suite 300-67<br>Austin, TEXAS 78701<br>cswitzer@efenergylaw.com |
| Silver Run Electric, LLC | | Sharon Segner<br>Vice President<br>LS Power Associates LP<br>1001 19th Street North<br>Suite 1200<br>Arlington, VIRGINIA 22209<br>ssegner@lspower.com |
| Solar Energy Industries Association | Melissa Alfano<br>Manager of Regulatory Affairs<br>Solar Energy Industries Association<br>1425 K Street, N.W., Suite 1000<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>malfano@seia.org | Ben Norris<br>Manager of Federal Regulatory<br>Solar Energy Industries Association<br>1425 K St NW<br>Washington, DISTRICT OF COLUMBIA 20(<br>bnorris@seia.org |
| Southern Maryland Electric Cooperative, Inc. | John Rohrbach<br>ED Regulatory<br>ACES POWER MARKETING<br>4140 W 99TH ST<br>CARMEL, INDIANA 46032<br>UNITED STATES<br>JRohrbach@acespower.com | Mark MacDougall<br>Senior Vice President and Gene<br>Southern Maryland Electric Cooperative,<br>PO Box 1937<br>Hughesville, INDIANA 20637-1937<br>mark.macdougall@smeco.coop |
| Southern Maryland Electric Cooperative, Inc. | | Eugene Bradford<br>Vice President, Rates and Ener<br>SOUTHERN MARYLAND ELECTRIC COOP<br>15035 Burnt Store Rd.<br>Hughesville, MARYLAND 20637<br>Eugene.Bradford@smeco.coop |
| Southern Maryland Electric Cooperative, Inc. | | Damon Krieger<br>VP, Legal Affairs, Deputy Gen<br>Southern Maryland Electric Cooperative,<br>15035 Burnt Store Road<br>P.O. Box 1937<br>Hughesville, MARYLAND 20637-1937<br>Damon.Krieger@SMECO.coop |
| Sustainable FERC Project | Tom Rutigliano<br>Sr. Advocate<br>NRDC/FERC Project<br>1124 15th St. NW<br>Suite 300<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>trutigliano@nrdc.org | |
| The Potomac Edison Company | Evan Dean<br>Senior Corporate Counsel<br>FirstEnergy<br>76 S MAIN ST # A-GO-15<br>AKRON, OHIO 44308<br>UNITED STATES<br>edean@firstenergycorp.com | |

| | |
|---|---|
| The Potomac Edison Company | Amanda Parker<br>Attorney<br>FirstEnergy Service Company<br>76 South Main Street<br>Akron, OHIO 44308<br>UNITED STATES<br>aparker@firstenergycorp.com |
| Trans-Allegheny Interstate Line Company | Evan Dean<br>Senior Corporate Counsel<br>FirstEnergy<br>76 S MAIN ST # A-GO-15<br>AKRON, OHIO 44308<br>UNITED STATES<br>edean@firstenergycorp.com |
| Trans-Allegheny Interstate Line Company | Amanda Parker<br>Attorney<br>FirstEnergy Service Company<br>76 South Main Street<br>Akron, OHIO 44308<br>UNITED STATES<br>aparker@firstenergycorp.com |

[ Back to Query Service List ]  [ Back to FERCOnline ]

*Title 18, U.S.C. 1001 makes it a crime for any person knowingly and willingly to make to any Agency or Department of the United States fictitious or fraudulent statements as to any matter within its jurisdiction.*

*FERC Online does not require the submission of personally identifiable Information (PII) (e.g. social security numbers, birthdates, and phone num FERC will not be responsible for any PII submitted to FERC Online, including any accidental or inadvertent submissions of PII.*

*This site contains information collections that are subject to the Paperwork Reduction Act (PRA). Among other things, the PRA requires FERC to with an estimate of the average burden of completing the information collections on this site. Comments regarding the burden estimate or any oth these forms can be directed to FERC's Information Collection Branch at DataClearance@ferc.gov.*

*In addition, you are not required to respond to any collection of information unless it displays a currently valid Office of Management and Budget ( number. FERC provides the OMB Control Numbers of the information collections on this site at www.ferc.gov/information-collections.*

**For any issues regarding FERC Online, please contact FERC Online Support or call Local: 202-502-6652 | Toll-free: 866-208-3676. Pleas current mail address, telephone number, and e-mail address.**

# FERC Online - Web Applications of the Federal Energy Regulatory Commission



FERC Online Home
About FERC Online

Log Out

Edit Registration
Company Registration

eFiling
eSubscription
eComment

Query Mailing
List/Recipients by State
Query Service List
My Service List
My Filing List
eLibrary
eTariff Viewer

Help

## Service List for ER24-2338-000 PJM Interconnection, L.L.C.

Contacts marked ** must be postal served

| Party | Primary Person or Counsel of Record to be Served | Other Contact to be Served |
|---|---|---|
| Advanced Energy United | Michael Haugh<br>Policy Director<br>Advanced Energy United<br>1010 VERMONT AVE NW<br>WASHINGTON, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>mhaugh@advancedenergyunited.org | Jonathan Gordon<br>Policy Director<br>Advanced Energy United<br>26 Maple Ave<br>Essex, CONNECTICUT 06426<br>jgordon@advancedenergyunited.org |
| American Clean Power Association | Gabriel Tabak<br>Counsel<br>American Clean Power Association<br>1501 M St NW<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>gtabak@cleanpower.org | |
| American Electric Power Service Corporation | Jessica Cano<br>Senior Counsel<br>AEP Service Corporation<br>1 Riverside Plaza<br>COLUMBUS, OHIO 43215<br>UNITED STATES<br>jacano@aep.com | Stacey Burbure<br>American Electric Power Company<br>801 Pennsylvania Avenue, NW<br>Washington DC, DISTRICT OF COLUMBI<br>slburbure@aep.com |
| American Electric Power Service Corporation | | Takis Laios<br>Director, Transmission Asset S<br>1 Riverside Plaza<br>Columbus, OHIO 43215<br>tlaios@aep.com |
| American Electric Power Service Corporation | | LaChon Turner<br>AEP COMPANIES<br>801 PENNSYLVANIA AVE NW STE 735<br>WASHINGTON, DISTRICT OF COLUMBIA<br>lturner@aep.com |
| American Municipal Power, Inc. | John McCaffrey<br>Partner<br>Stinson LLP<br>1775 PENNSYLVANIA AVE NW STE 800<br>WASHINGTON, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>john.mccaffrey@stinson.com | Lisa G McAlister<br>Deputy General Counsel - FERC/<br>American Municipal Power, Inc.<br>1111 Schrock Road<br>Suite 100<br>Columbus, OHIO 43229<br>lmcalister@amppartners.org |
| American Municipal Power, Inc. | | Gerit F. Hull<br>Deputy General Counsel - Regul<br>American Municipal Power, Inc.<br>1111 SCHROCK RD STE 100<br>COLUMBUS, OHIO 43229<br>ghull@amppartners.org |
| American Transmission Systems, Incorporated | Evan Dean<br>Senior Corporate Counsel<br>FirstEnergy<br>76 S MAIN ST # A-GO-15<br>AKRON, OHIO 44308<br>UNITED STATES<br>edean@firstenergycorp.com | |
| American Transmission Systems, Incorporated | Amanda Parker<br>Attorney<br>FirstEnergy Service Company<br>76 South Main Street<br>Akron, OHIO 44308<br>UNITED STATES<br>aparker@firstenergycorp.com | |
| Americans for a Clean Energy Grid | Christina Hayes<br>Executive Director, ACEG<br>Americans for a Clean Energy Grid<br>10 G ST NE STE 440<br>WASHINGTON, DISTRICT OF COLUMBIA 20002 | Anjali G Patel<br>Vice President for Clean Energ<br>Americans for a Clean Energy Grid<br>3100 CLARENDON BLVD STE 800 |

| | | |
|---|---|---|
| | UNITED STATES<br>christina.hayes@cleanenergygrid.org | ARLINGTON, VIRGINIA 22201<br>anjali@dgardiner.com |
| BLUE RIDGE<br>POWER AGENCY | Allen ONeil<br>Partner<br>McCarter & English, LLP<br>McCarter & English<br>1301 K Street N.W., Suite 1000 West<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>aoneil@mccarter.com | |
| Buckeye Power,<br>Inc. | Lija Kaleps-Clark<br>Buckeye Power, Inc.<br>6677 Busch Blvd<br>Columbus, OHIO 43229<br>UNITED STATES<br>lkaleps@ohioec.org | Kurt Helfrich<br>Buckeye Power, Inc.<br>6677 Busch Boulevard<br>Columbus, OHIO 43229<br>khelfrich@ohioec.org |
| Calpine<br>Corporation | Sarah Novosel<br>Senior VP, Assoc. Gen. Counsel<br>Calpine Corporation<br>717 TEXAS ST STE 1000<br>HOUSTON, TEXAS 77002<br>UNITED STATES<br>snovosel@calpine.com | |
| Calpine<br>Corporation | Rachael Marsh<br>V.P. and Managing Counsel<br>PO Box NA<br>Houston,TEXAS 77002<br>UNITED STATES<br>rachael.marsh@calpine.com | |
| Calpine<br>Corporation | David Scarpignato<br>Calpine Corporation<br>717 Texas Avenue<br>Suite 1000<br>Houston, TEXAS 77002<br>UNITED STATES<br>david.scarpignato@calpine.com | |
| Central<br>Transmission, LLC | Michael Engleman<br>Engleman Fallon, PLLC<br>1717 K Street NW<br>Suite 900<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>mengleman@efenergylaw.com | Sharon Segner<br>Vice President<br>LS Power Associates LP<br>1001 19th Street North<br>Suite 1200<br>Arlington, VIRGINIA 22209<br>ssegner@lspower.com |
| Clean Energy<br>Buyers<br>Association | Kyle Davis<br>Clean Energy Buyers Association<br>1425 K ST NW STE 1110<br>WASHINGTON, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>kdavis@cebuyers.org | Joseph B Nelson<br>Member<br>Van Ness Feldman, LLP<br>2000 PENNSYLVANIA AVE NW<br>WASHINGTON, DISTRICT OF COLUMBIA<br>jbn@vnf.com |
| Constellation<br>Energy<br>Generation, LLC | Christopher Wilson<br>Director, Federal Regulatory A<br>Constellation Energy Generation, LLC<br>101 Constitution Ave, NW<br>Suite 400E<br>Washington, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>FERCe-filings1@Constellation.com | Adrien Ford<br>Constellation Energy Commodities Group<br>344 HOMESTEAD RD<br>WAYNE, PENNSYLVANIA 19087<br>adrien.ford@constellation.com |
| Constellation<br>Energy<br>Generation, LLC | Carrie Allen<br>SVP & Deputy General Counsel<br>CONSTELLATION ENERGY CORPORATION<br>101 Constitution Ave. NW Suite 400 East<br>Washington, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>carrie.allen@constellation.com | |
| Constellation<br>Energy<br>Generation, LLC | Seth Lucia<br>Assistant General Counsel<br>Constellation Energy Generation, LLC<br>250 Massachusetts Avenue, NW<br>Suite 760<br>WASHINGTON, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>Seth.Lucia@constellation.com | |
| Dayton Power<br>and Light<br>Company, The | William Rappolt<br>Assistant Gen. Counsel, FERC<br>AES Corporation | John W Horstmann<br>Sr. Director RTO Affairs<br>Dayton Power and Light Company, The |

| | | |
|---|---|---|
| | 4300 WILSON BLVD<br>ARLINGTON, VIRGINIA 22203<br>UNITED STATES<br>william.rappolt@aes.com | 315 Buckwalter Rd<br>Phoenixville, PENNSYLVANIA 19460<br>john.horstmann@aes.com |
| DC Energy, LLC | Joelle Ogg<br>General Counsel<br>DC Energy<br>1600 Tysons Blvd<br>Fifth Floor<br>McLean, VIRGINIA 22102<br>UNITED STATES<br>ogg@dc-energy.com | Justin R Cockrell<br>Counsel<br>DC Energy<br>1600 TYSONS BLVD FL 5<br>MC LEAN, VIRGINIA 22102<br>cockrell@dc-energy.com |
| Delaware Division of the Public Advocate | Regina Iorii<br>Deputy Attorney General<br>Delaware Department of Justice<br>Delaware Department of Justice<br>820 N. French Street, 4th Floor<br>Wilmington, DELAWARE 19801<br>UNITED STATES<br>regina.iorii@delaware.gov | Ruth A Price<br>Delaware Deputy Public Advocat<br>State of Delaware<br>820 N. French Street<br>Carvel State Office Building<br>Wilmington, DELAWARE 19801<br>ruth.price@delaware.gov |
| Delaware Division of the Public Advocate | | Samantha B Kayne<br>Public Utility Analyst<br>Delaware Division of the Public Advocate<br>501 N DUPONT HWY<br>THOMAS COLLINS BUILDING SUITE 3B<br>DOVER, DELAWARE 19901<br>samantha.kayne@delaware.gov |
| Dominion Energy Services, Inc. | Cheri Yochelson<br>Assistant General Counsel<br>Dominion Energy Services, Inc.<br>120 Tredegar Street, RS-5<br>Richmond, VIRGINIA 23219<br>UNITED STATES<br>cheri.m.yochelson@dominionenergy.com | Ryen Lawson<br>FERC Analyst III<br>120 Tredegar Street<br>Riverside Building, 4th Floor<br>Richmond, VIRGINIA 23219<br>ryen.n.lawson@dominionenergy.com |
| Duke Energy Carolinas, LLC and Duke Energy Progress, LLC | Molly Suda<br>Associate General Counsel<br>Duke Energy Corporation<br>1301 PENNSYLVANIA AVE NW STE 200<br>WASHINGTON, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>molly.suda@duke-energy.com | |
| Duke Energy Corporation | Molly Suda<br>Associate General Counsel<br>Duke Energy Corporation<br>1301 PENNSYLVANIA AVE NW STE 200<br>WASHINGTON, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>molly.suda@duke-energy.com | |
| Duke Energy Indiana, LLC | Molly Suda<br>Associate General Counsel<br>Duke Energy Corporation<br>1301 PENNSYLVANIA AVE NW STE 200<br>WASHINGTON, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>molly.suda@duke-energy.com | |
| Duke Energy Ohio, Inc. and Duke Energy Kentucky, Inc. | Molly Suda<br>Associate General Counsel<br>Duke Energy Corporation<br>1301 PENNSYLVANIA AVE NW STE 200<br>WASHINGTON, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>molly.suda@duke-energy.com | |
| Duquesne Light Company | Tishekia Williams<br>Director of External Affairs a<br>Duquesne Light Company<br>411 Seventh Avenue<br>15th Floor<br>Pittsburgh, PENNSYLVANIA 15219<br>UNITED STATES<br>twilliams@duqlight.com | Britt Hargenrader<br>411 7TH AVE<br>PITTSBURGH, PENNSYLVANIA 15219<br>bhargenrader@duqlight.com |
| East Kentucky Power Cooperative, Inc. | Daniel Frank<br>Partner<br>Eversheds Sutherland (US) LLP<br>700 Sixth Street, N.W.<br>Suite 700 | Denise R Foster Cronin<br>Vice President, Federal and RT<br>East Kentucky Power Cooperative, Inc.<br>4775 LEXINGTON ROAD 40391 |

| | | |
|---|---|---|
| | Washington, DISTRICT OF COLUMBIA 20001-3980<br>UNITED STATES<br>DanielFrank@eversheds-sutherland.com | LEXINGTON, KENTUCKY 40392<br>denise.cronin@ekpc.coop |
| East Kentucky Power Cooperative, Inc. | Allison Salvia<br>Eversheds Sutherland (US) LLP<br>700 Sixth Street, NW<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>AllisonSalvia@eversheds-sutherland.com | |
| Exelon Corporation | Lisa Luftig<br>Assistant General Counsel<br>Exelon BSC-Legal Regulatory<br>701 Ninth Street, NW<br>Washington, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>lisa.luftig@exeloncorp.com | Jordan Kwok<br>Director, Federal Regulatory A<br>Exelon Business Services<br>701 9TH ST NW<br>WASHINGTON, DISTRICT OF COLUMBIA<br>jordan.kwok@exeloncorp.com |
| Exelon Corporation | Alejandro Bautista<br>Assistant General Counsel<br>Exelon Business Services Company, LLC<br>2301 Market Street<br>Philadelphia, PENNSYLVANIA 19101<br>UNITED STATES<br>alejandro.bautista@exeloncorp.com | |
| FirstEnergy Service Company | Evan Dean<br>Senior Corporate Counsel<br>FirstEnergy<br>76 S MAIN ST # A-GO-15<br>AKRON, OHIO 44308<br>UNITED STATES<br>edean@firstenergycorp.com | |
| FirstEnergy Service Company | Amanda Parker<br>Attorney<br>FirstEnergy Service Company<br>76 South Main Street<br>Akron, OHIO 44308<br>UNITED STATES<br>aparker@firstenergycorp.com | |
| Illinois Attorney General's Office | Kimberly Janas<br>Illinois Attorney General's Office<br>115 S LA SALLE ST<br>CHICAGO, ILLINOIS 60603<br>UNITED STATES<br>kimberly.janas@ilag.gov | Scott Metzger<br>Office of the Illinois Attorney General<br>115 S LA SALLE ST<br>25TH FLOOR<br>CHICAGO, ILLINOIS 60603<br>scott.metzger@ilag.gov |
| Illinois Attorney General's Office | | Samuel C Lukens<br>Assistant Attorney General, Pu<br>Office of Illinois Attorney General<br>115 S LA SALLE ST FL 16<br>CHICAGO, ILLINOIS 60603<br>samuel.lukens@ilag.gov |
| Illinois Citizens Utility Board | Eric DeBellis<br>Illinois Citizens Utility Board<br>309 W WASHINGTON ST STE 800<br>CHICAGO, ILLINOIS 60606<br>UNITED STATES<br>edebellis@citizensutilityboard.org | |
| Illinois Commerce Commission | Christine Ericson<br>Special Assistant Attorney Gen<br>Illinois Commerce Commission<br>160 N. LaSalle St.<br>Suite C-800<br>Chicago, ILLINOIS 60601<br>UNITED STATES<br>Christine.Ericson@illinois.gov | William VanderLaan<br>527 E CAPITOL AVE<br>SPRINGFIELD, ILLINOIS 62701<br>bill.vanderlaan@illinois.gov |
| Illinois Commerce Commission | | Zachary Callen<br>160 N LaSalle<br>Illinois Commerce Commission<br>Ste 801<br>Chicago, ILLINOIS 60601<br>zachary.callen@illinois.gov |
| Indiana Office of Utility Consumer Counselor | Arthur Iler<br>Deputy Consumer Counsel - Fede<br>Indiana Office of Utility Consumer Counselor<br>115 W Washington St<br>Ste 1500 South | Scott Jones<br>Indiana Office of the Utility<br>Indiana Office of Utility Consumer Couns<br>115 West Washington St. Ste.1500 Sout |

| | | |
|---|---|---|
| | Indianapolis, INDIANA 46204<br>UNITED STATES<br>ailer@oucc.in.gov | Indianapolis, INDIANA 46204<br>sjones1@oucc.in.gov |
| Jersey Central Power & Light Company | Evan Dean<br>Senior Corporate Counsel<br>FirstEnergy<br>76 S MAIN ST # A-GO-15<br>AKRON, OHIO 44308<br>UNITED STATES<br>edean@firstenergycorp.com | |
| Jersey Central Power & Light Company | Amanda Parker<br>Attorney<br>FirstEnergy Service Company<br>76 South Main Street<br>Akron, OHIO 44308<br>UNITED STATES<br>aparker@firstenergycorp.com | |
| Kentucky Attorney General | Joseph West<br>Assistant Attorney General<br>Kentucky Attorney General<br>1024 Capital Center Drive<br>Suite 200<br>Frankfort, KENTUCKY 40601<br>UNITED STATES<br>michael.west@ky.gov | |
| Kentucky Attorney General | Larry Cook<br>Kentucky Attorney General<br>700 CAPITAL AVE<br>FRANKFORT, KENTUCKY 40601<br>UNITED STATES<br>larry.cook@ky.gov | |
| Keystone Appalachian Transmission Company | Evan Dean<br>Senior Corporate Counsel<br>FirstEnergy<br>76 S MAIN ST # A-GO-15<br>AKRON, OHIO 44308<br>UNITED STATES<br>edean@firstenergycorp.com | |
| Keystone Appalachian Transmission Company | Amanda Parker<br>Attorney<br>FirstEnergy Service Company<br>76 South Main Street<br>Akron, OHIO 44308<br>UNITED STATES<br>aparker@firstenergycorp.com | |
| LS Power Development, LLC | Michael Engleman<br>Engleman Fallon, PLLC<br>1717 K Street NW<br>Suite 900<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>mengleman@efenergylaw.com | Christina R. Switzer<br>Engleman Fallon, PLLC<br>823 Congress Ave<br>Suite 300-67<br>Austin, TEXAS 78701<br>cswitzer@efenergylaw.com |
| LS Power Development, LLC | | Sharon Segner<br>Vice President<br>LS Power Associates LP<br>1001 19th Street North<br>Suite 1200<br>Arlington, VIRGINIA 22209<br>ssegner@lspower.com |
| Maryland Office of People's Counsel | Peter Hopkins<br>Spiegel & McDiarmid LLP<br>1818 N Street, NW<br>8th Floor<br>WASHINGTON, DISTRICT OF COLUMBIA 20036<br>UNITED STATES<br>peter.hopkins@spiegelmcd.com | Scott H. Strauss, ESQ<br>Spiegel & McDiarmid LLP<br>1818 N Street, NW<br>8th Floor<br>WASHINGTON, DISTRICT OF COLUMBIA<br>Scott.Strauss@spiegelmcd.com |
| Maryland Office of People's Counsel | Amanda Drennen<br>Attorney<br>Spiegel & McDiarmid LLP<br>1818 N Street, NW<br>8th Floor<br>WASHINGTON, DISTRICT OF COLUMBIA 20036<br>UNITED STATES<br>amanda.drennen@spiegelmcd.com | Jeffrey A Schwarz<br>Spiegel & McDiarmid LLP<br>1818 N Street, NW<br>8th Floor<br>WASHINGTON, DISTRICT OF COLUMBIA<br>jeffrey.schwarz@spiegelmcd.com |

| | | |
|---|---|---|
| Maryland Office of People's Counsel | Michael Sammartino<br>Assistant People's Counsel<br>Maryland Office of People's Counsel<br>6 SAINT PAUL ST STE 2102<br>BALTIMORE, MARYLAND 21202<br>UNITED STATES<br>michael.sammartino@maryland.gov | William F. Fields<br>Deputy People's Counsel<br>6 SAINT PAUL ST STE 2102<br>BALTIMORE, MARYLAND 21202<br>william.fields@maryland.gov |
| Maryland Public Service Commission | Christina Ochoa<br>Associate General Counsel<br>Maryland Public Service Commission<br>6 St. Paul Street<br>16th Floor<br>BALTIMORE, MARYLAND 21202<br>UNITED STATES<br>christina.ochoa1@maryland.gov | Ransom E Davis, ESQ<br>Associate General Counsel<br>Maryland Public Service Commission<br>6 St. Paul Street<br>16th Floor<br>BALTIMORE, MARYLAND 21202<br>Ransom.Davis@Maryland.gov |
| Michigan Public Service Commission | Alena Clark<br>Assistant Attorney General, St<br>State of Michigan<br>7109 W SAGINAW HWY<br>LANSING, MICHIGAN 48917<br>UNITED STATES<br>ClarkA55@michigan.gov | Steven D Hughey<br>Assistant Attorney General<br>Department of Attorney General<br>7109 W SAGINAW HWY FL 3<br>LANSING, MICHIGAN 48917<br>hugheys@michigan.gov |
| Mid-Atlantic Interstate Transmission LLC | Evan Dean<br>Senior Corporate Counsel<br>FirstEnergy<br>76 S MAIN ST # A-GO-15<br>AKRON, OHIO 44308<br>UNITED STATES<br>edean@firstenergycorp.com | |
| Mid-Atlantic Interstate Transmission LLC | Amanda Parker<br>Attorney<br>FirstEnergy Service Company<br>76 South Main Street<br>Akron, OHIO 44308<br>UNITED STATES<br>aparker@firstenergycorp.com | |
| Monitoring Analytics, LLC | Jeffrey Mayes<br>General Counsel<br>Monitoring Analytics, LLC<br>2621 Van Buren Avenue, Suite 160<br>Valley Forge Corporate Center<br>Eagleville, PENNSYLVANIA 19403<br>UNITED STATES<br>jeffrey.mayes@monitoringanalytics.com | Suzette N Krausen<br>Executive Assistant<br>Monitoring Analytics, LLC<br>2621 Van Buren Ave Ste 160<br>Norristown, PENNSYLVANIA 19403<br>Suzette.Krausen@monitoringanalytics.c |
| Monitoring Analytics, LLC | | Joseph Bowring<br>Monitoring Analytics, LLC<br>2621 Van Buren Avenue, Suite 160<br>Norristown, PENNSYLVANIA 19403<br>Joseph.Bowring@monitoringanalytics.co |
| Monongahela Power Company | Evan Dean<br>Senior Corporate Counsel<br>FirstEnergy<br>76 S MAIN ST # A-GO-15<br>AKRON, OHIO 44308<br>UNITED STATES<br>edean@firstenergycorp.com | |
| Monongahela Power Company | Amanda Parker<br>Attorney<br>FirstEnergy Service Company<br>76 South Main Street<br>Akron, OHIO 44308<br>UNITED STATES<br>aparker@firstenergycorp.com | |
| Natural Resource Defense Council | Tom Rutigliano<br>Sr. Advocate<br>NRDC/FERC Project<br>1124 15th St. NW<br>Suite 300<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>trutigliano@nrdc.org | |
| New Jersey Division of Rate Counsel | Robert Glover<br>New Jersey Division of Rate Counsel<br>PO Box 003<br>Trenton,NEW JERSEY 08625 | Brian O Lipman<br>Acting Director<br>New Jersey Division of Rate Counsel<br>140 East Front Street |

| | | |
|---|---|---|
| | UNITED STATES<br>rglover@rpa.nj.gov | 4th Floor<br>Trenton, NEW JERSEY 08625<br>blipman@rpa.nj.gov |
| New Jersey<br>Division of Rate<br>Counsel | | T. David Wand<br>Division of Rate Counsel<br>New Jersey Division of Rate Counsel<br>140 E. Front St.<br>4th Flr.<br>Trenton, NEW JERSEY 08625<br>dwand@rpa.nj.gov |
| New Jersey<br>Division of Rate<br>Counsel | | Debora Layugan<br>New Jersey Division of Rate Counsel<br>PO Box 003<br>Trenton, 08625<br>dlayugan@rpa.nj.gov |
| New Jersey<br>Division of Rate<br>Counsel | Peter Hopkins<br>Spiegel & McDiarmid LLP<br>1818 N Street, NW<br>8th Floor<br>WASHINGTON, DISTRICT OF COLUMBIA 20036<br>UNITED STATES<br>peter.hopkins@spiegelmcd.com | Scott H. Strauss, ESQ<br>Spiegel & McDiarmid LLP<br>1818 N Street, NW<br>8th Floor<br>WASHINGTON, DISTRICT OF COLUMBIA<br>Scott.Strauss@spiegelmcd.com |
| New Jersey<br>Division of Rate<br>Counsel | Amanda Drennen<br>Attorney<br>Spiegel & McDiarmid LLP<br>1818 N Street, NW<br>8th Floor<br>WASHINGTON, DISTRICT OF COLUMBIA 20036<br>UNITED STATES<br>amanda.drennen@spiegelmcd.com | Jeffrey A Schwarz<br>Spiegel & McDiarmid LLP<br>1818 N Street, NW<br>8th Floor<br>WASHINGTON, DISTRICT OF COLUMBIA<br>jeffrey.schwarz@spiegelmcd.com |
| NextEra Energy<br>Transmission<br>MidAtlantic, Inc. | Katherine O'Konski<br>Senior Attorney<br>NextEra Energy, Inc.<br>801 PENNSYLVANIA AVE NW STE 220<br>WASHINGTON, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>katherine.o'konski@nexteraenergy.com | |
| North Carolina<br>Electric<br>Membership<br>Corporation | Randolph Elliott<br>McCarter & English, LLP<br>1301 K Street, NW<br>Suite 1000 West<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>relliott@mccarter.com | Michael D Youth<br>Associate General Counsel<br>NCEMC<br>3400 SUMNER BLVD<br>RALEIGH, NORTH CAROLINA 27616<br>michael.youth@ncemcs.com |
| North Carolina<br>Electric<br>Membership<br>Corporation | Sean Beeny<br>McCarter & English, LLP<br>1301 K Street, NW<br>Suite 1000 West<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>sbeeny@mccarter.com | Charles Bayless<br>General Counsel<br>North Carolina Electric Membership Corp<br>3400 SUMNER BLVD<br>RALEIGH, NORTH CAROLINA 27616<br>charlie.bayless@ncemcs.com |
| North Carolina<br>Electric<br>Membership<br>Corporation | F. Alvin Taylor<br>Attorney<br>McCarter & English, LLP<br>1301 K Street, NW<br>Suite 1000 West<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>ataylor@mccarter.com | |
| Office of the Ohio<br>Consumers'<br>Counsel | Denise Goulet<br>Partner<br>McCarter & English, LLP<br>1301 K ST NW<br>SUITE 1000 WEST<br>WASHINGTON, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>dgoulet@mccarter.com | |
| Office of the Ohio<br>Consumers'<br>Counsel | Angela O'Brien<br>Deputy Consumers' Counsel<br>Office of the Ohio Consumers' Counsel<br>65 E STATE ST STE 700<br>OFFICE OF THE OHIO CONSUMERS' COUNSEL<br>COLUMBUS, OHIO 43215<br>UNITED STATES<br>angela.obrien@occ.ohio.gov | |

| | | |
|---|---|---|
| Office of the People's Counsel for the District of Columbia | Scott Strauss<br>Spiegel & McDiarmid LLP<br>1818 N Street, NW<br>8th Floor<br>WASHINGTON, DISTRICT OF COLUMBIA 20036<br>UNITED STATES<br>Scott.Strauss@spiegelmcd.com | E Service<br>Spiegel & McDiarmid LLP<br>1875 Eye St, NW<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 20...<br>eService@spiegelmcd.com |
| Office of the People's Counsel for the District of Columbia | | Ade Adeniyi<br>aadeniyi@opc-dc.gov |
| Ohio Federal Energy Advocate | Thomas Lindgren<br>Assistant Attorney General<br>Public Utilities Commission of Ohio<br>30 East Broad Street<br>16th Floor<br>Columbus, OHIO 43215-3793<br>UNITED STATES<br>thomas.lindgren@ohioattorneygeneral.gov | Sarah Parrot<br>Federal Energy Advocate<br>Public Utilities Commission of Ohio<br>180 E BROAD ST<br>COLUMBUS, OHIO 43215<br>sarah.parrot@puco.ohio.gov |
| Old Dominion Electric Cooperative | Adrienne Clair<br>Attorney<br>Thompson Coburn LLP<br>1909 K Street NW<br>Suite 600<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>aclair@thompsoncoburn.com | Jecoliah R. Williams<br>Thompson Coburn LLP<br>1909 K Street N.W.<br>Suite 600<br>WASHINGTON, DISTRICT OF COLUMBIA...<br>jwilliams@thompsoncoburn.com |
| Organization of PJM States, Inc. | Gregory Carmean<br>Executive Director<br>Organization of PJM States, Inc.<br>700 Barksdale Road<br>Suite 1<br>Newark, DELAWARE 19711<br>UNITED STATES<br>greg@opsi.us | |
| Pennsylvania Public Utility Commission | Elizabeth Barnes<br>Deputy Chief Counsel<br>Pennsylvania Public Utility Commission<br>PO BOX 3265<br>HARRISBURG, PENNSYLVANIA 17105<br>UNITED STATES<br>ebarnes@pa.gov | Kriss E. Brown, ESQ<br>Deputy Chief Counsel<br>Pennsylvania Public Utility Commission<br>P.O. Box 3265<br>Harrisburg, PENNSYLVANIA 17105-3265<br>kribrown@pa.gov |
| PJM Industrial Customer Coalition | Robert Weishaar<br>McNees Wallace & Nurick LLC<br>1200 G Street, NW<br>Suite 800<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>bweishaar@mcneeslaw.com | Susan E Bruce<br>McNees Wallace & Nurick LLC<br>100 Pine St<br>Harrisburg, PENNSYLVANIA 17101<br>sbruce@mcneeslaw.com |
| PJM Industrial Customer Coalition | | Kenneth R Stark<br>McNees Wallace & Nurick LLC<br>100 PINE ST<br>HARRISBURG, PENNSYLVANIA 17101<br>kstark@mcneeslaw.com |
| PJM Industrial Customer Coalition | | Lauren Huff<br>Paralegal<br>McNees Wallace & Nurick LLC<br>100 Pine Street<br>P.O. Box 1166<br>Harrisburg, PENNSYLVANIA 17108<br>lhuff@mwn.com |
| PJM Interconnection, L.L.C. | Thomas DeVita<br>PJM Interconnection, L.L.C.<br>2750 Monroe Blvd.<br>Audubon, PENNSYLVANIA 19403<br>UNITED STATES<br>thomas.devita@pjm.com | Craig Glazer<br>V.P., Federal Gov't Policy<br>PJM Interconnection, L.L.C.<br>1200 G Street, N.W.<br>Suite 600<br>Washington, DISTRICT OF COLUMBIA 20...<br>craig.glazer@pjm.com |
| PJM Interconnection, L.L.C. | Jessica Lynch<br>Assistant General Counsel<br>PJM Interconnection, L.L.C.<br>2750 Monroe Blvd.<br>Audubon, PENNSYLVANIA 19403<br>UNITED STATES<br>jessica.lynch@pjm.com | |

| | | |
|---|---|---|
| PJM Power Providers Group | Glen Thomas<br>101 Lindenwood Drive<br>Suite 225<br>Malvern, PENNSYLVANIA 19355<br>UNITED STATES<br>gthomas@gtpowergroup.com | Diane L Slifer<br>101 LINDENWOOD DR STE 225<br>MALVERN, PENNSYLVANIA 19355<br>dslifer@gtpowergroup.com |
| PJM Power Providers Group | | Laura Chappelle<br>6688 FOREST BEACH DR<br>HOLLAND, MICHIGAN 49423<br>laurac@chappelleconsulting.net |
| PPL Electric Utilities Corporation | Steven Nadel<br>PPL Services Corporation<br>2 North 9th St<br>Allentown, PENNSYLVANIA 18101<br>UNITED STATES<br>SMNadel@pplweb.com | Donald A Kaplan<br>K&L Gates LLP<br>1601 K Street, NW<br>Washington, DISTRICT OF COLUMBIA 20<br>don.kaplan@klgates.com |
| PPL Electric Utilities Corporation | | Kimberly B Frank<br>Counsel<br>K&L Gates LLP<br>1601 K Street NW<br>Washington, DISTRICT OF COLUMBIA 20<br>kimberly.frank@klgates.com |
| PPL Electric Utilities Corporation | | John Longstreth<br>K&L Gates LLP<br>1601 K Street, NW<br>Washington, DISTRICT OF COLUMBIA 20<br>john.longstreth@klgates.com |
| PPL Electric Utilities Corporation | | Chimera N Thompson<br>K&L Gates LLP<br>1601 K ST NW<br>WASHINGTON, DISTRICT OF COLUMBIA<br>chimera.thompson@klgates.com |
| PPL Electric Utilities Corporation | | William Keyser, III<br>Steptoe LLP<br>1330 Connecticut Avenue, NW<br>Washington, DISTRICT OF COLUMBIA 20<br>wkeyser@steptoe.com |
| PPL Electric Utilities Corporation | | Karen Bruni<br>Steptoe LLP<br>1330 CONNECTICUT AVE NW<br>WASHINGTON, DISTRICT OF COLUMBIA<br>kbruni@steptoe.com |
| PPL Electric Utilities Corporation | | Megan McDowell<br>Steptoe LLP<br>1330 Connecticut Ave NW<br>Washington, DISTRICT OF COLUMBIA 20<br>mmcdowell@steptoe.com |
| PUBLIC CITIZEN, INC | Tyson Slocum<br>Energy Program Director<br>PUBLIC CITIZEN, INC<br>215 PENNSYLVANIA AVE SE<br>PUBLIC CITIZEN, INC.<br>WASHINGTON, DISTRICT OF COLUMBIA 20003<br>UNITED STATES<br>tslocum@citizen.org | |
| Public Service Electric and Gas Company | Ana Murteira<br>Associate Regulatory Counsel<br>PSEG Services Corporation<br>80 PARK PLZ # T10<br>NEWARK, NEW JERSEY 07102<br>UNITED STATES<br>ana.murteira@pseg.com | Robert E. Gardinor<br>Paralegal<br>PSEG Services Corporation<br>80 Park Plaza, T5<br>Newark, NEW JERSEY 07102<br>Robert.Gardinor@pseg.com |
| Rockland Electric Company | Paul Savage<br>Consolidated Edison Development, Inc.<br>4 Irving Place<br>New York, NEW YORK 10003<br>UNITED STATES<br>savagep@coned.com | Dana Lazarus<br>Director<br>Con Edison Company of New York<br>4 Irving Place<br>New York, NEW YORK 10003<br>lazarusd@coned.com |
| Rockland Electric Company | | Kacie Rettig<br>Con Ed<br>Con Edison Company of New York<br>4 IRVING PL<br>NEW YORK, NEW YORK 10003<br>rettigk@coned.com |

| | | |
|---|---|---|
| Rolling Hills Generating L.L.C. | Michael Engleman<br>Engleman Fallon, PLLC<br>1717 K Street NW<br>Suite 900<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>mengleman@efenergylaw.com | Marjorie R Philips<br>VP, Wholesale Market Policy<br>LS Power Associates, L.P.<br>1700 Broadway, 38th Floor<br>New York, NEW YORK 10019<br>mphilips@lspower.com |
| Sierra Club | Justin Vickers<br>Senior Attorney<br>Sierra Club<br>Environmental Law Program<br>1229 W. Glenlake Ave.<br>Chicago, ILLINOIS 60660<br>UNITED STATES<br>justin.vickers@sierraclub.org | |
| Silver Run Electric, LLC | Michael Engleman<br>Engleman Fallon, PLLC<br>1717 K Street NW<br>Suite 900<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>mengleman@efenergylaw.com | Christina R. Switzer<br>Engleman Fallon, PLLC<br>823 Congress Ave<br>Suite 300-67<br>Austin, TEXAS 78701<br>cswitzer@efenergylaw.com |
| Silver Run Electric, LLC | | Sharon Segner<br>Vice President<br>LS Power Associates LP<br>1001 19th Street North<br>Suite 1200<br>Arlington, VIRGINIA 22209<br>ssegner@lspower.com |
| Solar Energy Industries Association | Melissa Alfano<br>Manager of Regulatory Affairs<br>Solar Energy Industries Association<br>1425 K Street, N.W., Suite 1000<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>malfano@seia.org | Ben Norris<br>Manager of Federal Regulatory<br>Solar Energy Industries Association<br>1425 K St NW<br>Washington, DISTRICT OF COLUMBIA 20<br>bnorris@seia.org |
| Southern Maryland Electric Cooperative, Inc. | John Rohrbach<br>ED Regulatory<br>ACES POWER MARKETING<br>4140 W 99TH ST<br>CARMEL, INDIANA 46032<br>UNITED STATES<br>JRohrbach@acespower.com | Damon Krieger<br>VP, Legal Affairs, Deputy Gen<br>Southern Maryland Electric Cooperative,<br>15035 Burnt Store Road<br>P.O. Box 1937<br>Hughesville, MARYLAND 20637-1937<br>Damon.Krieger@SMECO.coop |
| Southern Maryland Electric Cooperative, Inc. | | Mark MacDougall<br>Senior Vice President and Gene<br>Southern Maryland Electric Cooperative,<br>PO Box 1937<br>Hughesville, 20637-1937<br>mark.macdougall@smeco.coop |
| Southern Maryland Electric Cooperative, Inc. | | Eugene Bradford<br>Vice President, Rates and Ener<br>SOUTHERN MARYLAND ELECTRIC COOP<br>15035 Burnt Store Rd.<br>Hughesville, MARYLAND 20637<br>Eugene.Bradford@smeco.coop |
| Sustainable FERC Project | Tom Rutigliano<br>Sr. Advocate<br>NRDC/FERC Project<br>1124 15th St. NW<br>Suite 300<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>trutigliano@nrdc.org | |
| The Potomac Edison Company | Evan Dean<br>Senior Corporate Counsel<br>FirstEnergy<br>76 S MAIN ST # A-GO-15<br>AKRON, OHIO 44308<br>UNITED STATES<br>edean@firstenergycorp.com | |
| The Potomac Edison Company | Amanda Parker<br>Attorney<br>FirstEnergy Service Company<br>76 South Main Street<br>Akron, OHIO 44308 | |

| | UNITED STATES<br>aparker@firstenergycorp.com |
|---|---|
| Trans-Allegheny<br>Interstate Line<br>Company | Evan Dean<br>Senior Corporate Counsel<br>FirstEnergy<br>76 S MAIN ST # A-GO-15<br>AKRON, OHIO 44308<br>UNITED STATES<br>edean@firstenergycorp.com |
| Trans-Allegheny<br>Interstate Line<br>Company | Amanda Parker<br>Attorney<br>FirstEnergy Service Company<br>76 South Main Street<br>Akron, OHIO 44308<br>UNITED STATES<br>aparker@firstenergycorp.com |

[ Back to Query Service List ]  [ Back to FERCOnline ]

*Title 18, U.S.C. 1001 makes it a crime for any person knowingly and willingly to make to any Agency or Department of the United States fictitious or fraudulent statements as to any matter within its jurisdiction.*

*FERC Online does not require the submission of personally identifiable Information (PII) (e.g. social security numbers, birthdates, and phone num FERC will not be responsible for any PII submitted to FERC Online, including any accidental or inadvertent submissions of PII.*

*This site contains information collections that are subject to the Paperwork Reduction Act (PRA). Among other things, the PRA requires FERC to p with an estimate of the average burden of completing the information collections on this site. Comments regarding the burden estimate or any oth these forms can be directed to FERC's Information Collection Branch at DataClearance@ferc.gov.*

*In addition, you are not required to respond to any collection of information unless it displays a currently valid Office of Management and Budget ( number. FERC provides the OMB Control Numbers of the information collections on this site at www.ferc.gov/information-collections.*

**For any issues regarding FERC Online, please contact FERC Online Support or call Local: 202-502-6652 | Toll-free: 866-208-3676. Pleas current mail address, telephone number, and e-mail address.**



FERC Online Home

**About FERC Online**

Log Out

Edit Registration

**Company Registration**

eFiling

eSubscription

eComment

Query Mailing
List/Recipients by State

Query Service List

My Service List

My Filing List

**eLibrary**

**eTariff Viewer**

**Help**

Service List for EL24-119-000 PJM Interconnection, L.L.C.

Contacts marked ** must be postal served

| Party | Primary Person or Counsel of Record to be Served | Other Contact to be Served |
|---|---|---|
| Advanced Energy United | Michael Haugh<br>Policy Director<br>Advanced Energy United<br>1010 VERMONT AVE NW<br>WASHINGTON, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>mhaugh@advancedenergyunited.org | Jonathan Gordon<br>Policy Director<br>Advanced Energy United<br>26 Maple Ave<br>Essex, CONNECTICUT 06426<br>jgordon@advancedenergyunited.org |
| American Clean Power Association | Gabriel Tabak<br>Counsel<br>American Clean Power Association<br>1501 M St NW<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>gtabak@cleanpower.org | |
| American Electric Power Service Corporation | Jessica Cano<br>Senior Counsel<br>AEP Service Corporation<br>1 Riverside Plaza<br>COLUMBUS, OHIO 43215<br>UNITED STATES<br>jcano@aep.com | Stacey Burbure<br>American Electric Power Company<br>801 Pennsylvania Avenue, NW<br>Washington DC, DISTRICT OF COLUMBI.<br>slburbure@aep.com |
| American Electric Power Service Corporation | | Takis Laios<br>Director, Transmission Asset S<br>1 Riverside Plaza<br>Columbus, OHIO 43215<br>tlaios@aep.com |
| American Electric Power Service Corporation | | LaChon Turner<br>AEP COMPANIES<br>801 PENNSYLVANIA AVE NW STE 735<br>WASHINGTON, DISTRICT OF COLUMBIA<br>lturner@aep.com |
| American Municipal Power, Inc. | John McCaffrey<br>Partner<br>Stinson LLP<br>1775 PENNSYLVANIA AVE NW STE 800<br>WASHINGTON, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>john.mccaffrey@stinson.com | Lisa G McAlister<br>Deputy General Counsel - FERC/<br>American Municipal Power, Inc.<br>1111 Schrock Road<br>Suite 100<br>Columbus, OHIO 43229<br>lmcalister@amppartners.org |
| American Municipal Power, Inc. | | Gerit F. Hull<br>Deputy General Counsel - Regul<br>American Municipal Power, Inc.<br>1111 SCHROCK RD STE 100<br>COLUMBUS, OHIO 43229<br>ghull@amppartners.org |
| American Transmission Systems, Incorporated | Evan Dean<br>Senior Corporate Counsel<br>FirstEnergy<br>76 S MAIN ST # A-GO-15<br>AKRON, OHIO 44308<br>UNITED STATES<br>edean@firstenergycorp.com | |
| American Transmission Systems, Incorporated | Amanda Parker<br>Attorney<br>FirstEnergy Service Company<br>76 South Main Street<br>Akron, OHIO 44308<br>UNITED STATES<br>aparker@firstenergycorp.com | |
| Americans for a Clean Energy Grid | Christina Hayes<br>Executive Director, ACEG<br>Americans for a Clean Energy Grid<br>10 G ST NE STE 440<br>WASHINGTON, DISTRICT OF COLUMBIA 20002 | Anjali G Patel<br>Vice President for Clean Energ<br>Americans for a Clean Energy Grid<br>3100 CLARENDON BLVD STE 800 |

| | | |
|---|---|---|
| | UNITED STATES<br>christina.hayes@cleanenergygrid.org | ARLINGTON, VIRGINIA 22201<br>anjali@dgardiner.com |
| BLUE RIDGE<br>POWER AGENCY | Allen ONeil<br>Partner<br>McCarter & English, LLP<br>McCarter & English<br>1301 K Street N.W., Suite 1000 West<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>aoneil@mccarter.com | |
| Buckeye Power,<br>Inc. | Lija Kaleps-Clark<br>Buckeye Power, Inc.<br>6677 Busch Blvd<br>Columbus, OHIO 43229<br>UNITED STATES<br>lkaleps@ohioec.org | Kurt Helfrich<br>Buckeye Power, Inc.<br>6677 Busch Boulevard<br>Columbus, OHIO 43229<br>khelfrich@ohioec.org |
| Calpine<br>Corporation | Sarah Novosel<br>Senior VP, Assoc. Gen. Counsel<br>Calpine Corporation<br>717 TEXAS ST STE 1000<br>HOUSTON, TEXAS 77002<br>UNITED STATES<br>snovosel@calpine.com | |
| Calpine<br>Corporation | Rachael Marsh<br>V.P. and Managing Counsel<br>PO Box NA<br>Houston,TEXAS 77002<br>UNITED STATES<br>rachael.marsh@calpine.com | |
| Calpine<br>Corporation | David Scarpignato<br>Calpine Corporation<br>717 Texas Avenue<br>Suite 1000<br>Houston, TEXAS 77002<br>UNITED STATES<br>david.scarpignato@calpine.com | |
| Central<br>Transmission, LLC | Michael Engleman<br>Engleman Fallon, PLLC<br>1717 K Street NW<br>Suite 900<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>mengleman@efenergylaw.com | Sharon Segner<br>Vice President<br>LS Power Associates LP<br>1001 19th Street North<br>Suite 1200<br>Arlington, VIRGINIA 22209<br>ssegner@lspower.com |
| Clean Energy<br>Buyers<br>Association | Kyle Davis<br>Clean Energy Buyers Association<br>1425 K ST NW STE 1110<br>WASHINGTON, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>kdavis@cebuyers.org | Joseph B Nelson<br>Member<br>Van Ness Feldman, LLP<br>2000 PENNSYLVANIA AVE NW<br>WASHINGTON, DISTRICT OF COLUMBIA<br>jbn@vnf.com |
| Constellation<br>Energy<br>Generation, LLC | Christopher Wilson<br>Director, Federal Regulatory A<br>Constellation Energy Generation, LLC<br>101 Constitution Ave, NW<br>Suite 400E<br>Washington, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>FERCe-filings1@Constellation.com | Adrien Ford<br>Constellation Energy Commodities Group<br>344 HOMESTEAD RD<br>WAYNE, PENNSYLVANIA 19087<br>adrien.ford@constellation.com |
| Constellation<br>Energy<br>Generation, LLC | Carrie Allen<br>SVP & Deputy General Counsel<br>CONSTELLATION ENERGY CORPORATION<br>101 Constitution Ave. NW Suite 400 East<br>Washington, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>carrie.allen@constellation.com | |
| Constellation<br>Energy<br>Generation, LLC | Seth Lucia<br>Assistant General Counsel<br>Constellation Energy Generation, LLC<br>250 Massachusetts Avenue, NW<br>Suite 760<br>WASHINGTON, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>Seth.Lucia@constellation.com | |
| Dayton Power<br>and Light<br>Company, The | William Rappolt<br>Assistant Gen. Counsel, FERC<br>AES Corporation | John W Horstmann<br>Sr. Director RTO Affairs<br>Dayton Power and Light Company, The |

| | | |
|---|---|---|
| | 4300 WILSON BLVD<br>ARLINGTON, VIRGINIA 22203<br>UNITED STATES<br>william.rappolt@aes.com | 315 Buckwalter Rd<br>Phoenixville, PENNSYLVANIA 19460<br>john.horstmann@aes.com |
| DC Energy, LLC | Joelle Ogg<br>General Counsel<br>DC Energy<br>1600 Tysons Blvd<br>Fifth Floor<br>McLean, VIRGINIA 22102<br>UNITED STATES<br>ogg@dc-energy.com | Justin R Cockrell<br>Counsel<br>DC Energy<br>1600 TYSONS BLVD FL 5<br>MC LEAN, VIRGINIA 22102<br>cockrell@dc-energy.com |
| Delaware Division of the Public Advocate | Regina Iorii<br>Deputy Attorney General<br>Delaware Department of Justice<br>Delaware Department of Justice<br>820 N. French Street, 4th Floor<br>Wilmington, DELAWARE 19801<br>UNITED STATES<br>regina.iorii@delaware.gov | Ruth A Price<br>Delaware Deputy Public Advocat<br>State of Delaware<br>820 N. French Street<br>Carvel State Office Building<br>Wilmington, DELAWARE 19801<br>ruth.price@delaware.gov |
| Delaware Division of the Public Advocate | | Samantha B Kayne<br>Public Utility Analyst<br>Delaware Division of the Public Advocate<br>501 N DUPONT HWY<br>THOMAS COLLINS BUILDING SUITE 3B<br>DOVER, DELAWARE 19901<br>samantha.kayne@delaware.gov |
| Dominion Energy Services, Inc. | Cheri Yochelson<br>Assistant General Counsel<br>Dominion Energy Services, Inc.<br>120 Tredegar Street, RS-5<br>Richmond, VIRGINIA 23219<br>UNITED STATES<br>cheri.m.yochelson@dominionenergy.com | Ryen Lawson<br>FERC Analyst III<br>120 Tredegar Street<br>Riverside Building, 4th Floor<br>Richmond, VIRGINIA 23219<br>ryen.n.lawson@dominionenergy.com |
| Duke Energy Carolinas, LLC and Duke Energy Progress, LLC | Molly Suda<br>Associate General Counsel<br>Duke Energy Corporation<br>1301 PENNSYLVANIA AVE NW STE 200<br>WASHINGTON, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>molly.suda@duke-energy.com | |
| Duke Energy Corporation | Molly Suda<br>Associate General Counsel<br>Duke Energy Corporation<br>1301 PENNSYLVANIA AVE NW STE 200<br>WASHINGTON, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>molly.suda@duke-energy.com | |
| Duke Energy Indiana, LLC | Molly Suda<br>Associate General Counsel<br>Duke Energy Corporation<br>1301 PENNSYLVANIA AVE NW STE 200<br>WASHINGTON, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>molly.suda@duke-energy.com | |
| Duke Energy Ohio, Inc. and Duke Energy Kentucky, Inc. | Molly Suda<br>Associate General Counsel<br>Duke Energy Corporation<br>1301 PENNSYLVANIA AVE NW STE 200<br>WASHINGTON, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>molly.suda@duke-energy.com | |
| Duquesne Light Company | Tishekia Williams<br>Director of External Affairs a<br>Duquesne Light Company<br>411 Seventh Avenue<br>15th Floor<br>Pittsburgh, PENNSYLVANIA 15219<br>UNITED STATES<br>twilliams@duqlight.com | Britt Hargenrader<br>411 7TH AVE<br>PITTSBURGH, PENNSYLVANIA 15219<br>bhargenrader@duqlight.com |
| East Kentucky Power Cooperative, Inc. | Daniel Frank<br>Partner<br>Eversheds Sutherland (US) LLP<br>700 Sixth Street, N.W.<br>Suite 700 | Denise R Foster Cronin<br>Vice President, Federal and RT<br>East Kentucky Power Cooperative, Inc.<br>4775 LEXINGTON ROAD 40391 |

| | | |
|---|---|---|
| | Washington, DISTRICT OF COLUMBIA 20001-3980<br>UNITED STATES<br>DanielFrank@eversheds-sutherland.com | LEXINGTON, KENTUCKY 40392<br>denise.cronin@ekpc.coop |
| East Kentucky Power Cooperative, Inc. | Allison Salvia<br>Eversheds Sutherland (US) LLP<br>700 Sixth Street, NW<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>AllisonSalvia@eversheds-sutherland.com | |
| Exelon Corporation | Lisa Luftig<br>Assistant General Counsel<br>Exelon BSC-Legal Regulatory<br>701 Ninth Street, NW<br>Washington, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>lisa.luftig@exeloncorp.com | Jordan Kwok<br>Director, Federal Regulatory A<br>Exelon Business Services<br>701 9TH ST NW<br>WASHINGTON, DISTRICT OF COLUMBIA<br>jordan.kwok@exeloncorp.com |
| Exelon Corporation | Alejandro Bautista<br>Assistant General Counsel<br>Exelon Business Services Company, LLC<br>2301 Market Street<br>Philadelphia, PENNSYLVANIA 19101<br>UNITED STATES<br>alejandro.bautista@exeloncorp.com | |
| FirstEnergy Service Company | Evan Dean<br>Senior Corporate Counsel<br>FirstEnergy<br>76 S MAIN ST # A-GO-15<br>AKRON, OHIO 44308<br>UNITED STATES<br>edean@firstenergycorp.com | |
| FirstEnergy Service Company | Amanda Parker<br>Attorney<br>FirstEnergy Service Company<br>76 South Main Street<br>Akron, OHIO 44308<br>UNITED STATES<br>aparker@firstenergycorp.com | |
| Illinois Attorney General's Office | Kimberly Janas<br>Illinois Attorney General's Office<br>115 S LA SALLE ST<br>CHICAGO, ILLINOIS 60603<br>UNITED STATES<br>kimberly.janas@ilag.gov | Scott Metzger<br>Office of the Illinois Attorney General<br>115 S LA SALLE ST<br>25TH FLOOR<br>CHICAGO, ILLINOIS 60603<br>scott.metzger@ilag.gov |
| Illinois Attorney General's Office | | Samuel C Lukens<br>Assistant Attorney General, Pu<br>Office of Illinois Attorney General<br>115 S LA SALLE ST FL 16<br>CHICAGO, ILLINOIS 60603<br>samuel.lukens@ilag.gov |
| Illinois Citizens Utility Board | Eric DeBellis<br>Illinois Citizens Utility Board<br>309 W WASHINGTON ST STE 800<br>CHICAGO, ILLINOIS 60606<br>UNITED STATES<br>edebellis@citizensutilityboard.org | |
| Illinois Commerce Commission | Christine Ericson<br>Special Assistant Attorney Gen<br>Illinois Commerce Commission<br>160 N. LaSalle St.<br>Suite C-800<br>Chicago, ILLINOIS 60601<br>UNITED STATES<br>Christine.Ericson@illinois.gov | William VanderLaan<br>527 E CAPITOL AVE<br>SPRINGFIELD, ILLINOIS 62701<br>bill.vanderlaan@illinois.gov |
| Illinois Commerce Commission | | Zachary Callen<br>160 N LaSalle<br>Illinois Commerce Commission<br>Ste 801<br>Chicago, ILLINOIS 60601<br>zachary.callen@illinois.gov |
| Indiana Office of Utility Consumer Counselor | Arthur Iler<br>Deputy Consumer Counsel - Fede<br>Indiana Office of Utility Consumer Counselor<br>115 W Washington St<br>Ste 1500 South | Scott Jones<br>Indiana Office of the Utility<br>Indiana Office of Utility Consumer Couns<br>115 West Washington St. Ste.1500 Sout |

| | | |
|---|---|---|
| | Indianapolis, INDIANA 46204<br>UNITED STATES<br>ailer@oucc.in.gov | Indianapolis, INDIANA 46204<br>sjones1@oucc.in.gov |
| Jersey Central Power & Light Company | Evan Dean<br>Senior Corporate Counsel<br>FirstEnergy<br>76 S MAIN ST # A-GO-15<br>AKRON, OHIO 44308<br>UNITED STATES<br>edean@firstenergycorp.com | |
| Jersey Central Power & Light Company | Amanda Parker<br>Attorney<br>FirstEnergy Service Company<br>76 South Main Street<br>Akron, OHIO 44308<br>UNITED STATES<br>aparker@firstenergycorp.com | |
| Kentucky Attorney General | Joseph West<br>Assistant Attorney General<br>Kentucky Attorney General<br>1024 Capital Center Drive<br>Suite 200<br>Frankfort, KENTUCKY 40601<br>UNITED STATES<br>michael.west@ky.gov | |
| Kentucky Attorney General | Larry Cook<br>Kentucky Attorney General<br>700 CAPITAL AVE<br>FRANKFORT, KENTUCKY 40601<br>UNITED STATES<br>larry.cook@ky.gov | |
| Keystone Appalachian Transmission Company | Evan Dean<br>Senior Corporate Counsel<br>FirstEnergy<br>76 S MAIN ST # A-GO-15<br>AKRON, OHIO 44308<br>UNITED STATES<br>edean@firstenergycorp.com | |
| Keystone Appalachian Transmission Company | Amanda Parker<br>Attorney<br>FirstEnergy Service Company<br>76 South Main Street<br>Akron, OHIO 44308<br>UNITED STATES<br>aparker@firstenergycorp.com | |
| LS Power Development, LLC | Michael Engleman<br>Engleman Fallon, PLLC<br>1717 K Street NW<br>Suite 900<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>mengleman@efenergylaw.com | Christina R. Switzer<br>Engleman Fallon, PLLC<br>823 Congress Ave<br>Suite 300-67<br>Austin, TEXAS 78701<br>cswitzer@efenergylaw.com |
| LS Power Development, LLC | | Sharon Segner<br>Vice President<br>LS Power Associates LP<br>1001 19th Street North<br>Suite 1200<br>Arlington, VIRGINIA 22209<br>ssegner@lspower.com |
| Maryland Office of People's Counsel | Peter Hopkins<br>Spiegel & McDiarmid LLP<br>1818 N Street, NW<br>8th Floor<br>WASHINGTON, DISTRICT OF COLUMBIA 20036<br>UNITED STATES<br>peter.hopkins@spiegelmcd.com | Scott H. Strauss, ESQ<br>Spiegel & McDiarmid LLP<br>1818 N Street, NW<br>8th Floor<br>WASHINGTON, DISTRICT OF COLUMBIA<br>Scott.Strauss@spiegelmcd.com |
| Maryland Office of People's Counsel | Amanda Drennen<br>Attorney<br>Spiegel & McDiarmid LLP<br>1818 N Street, NW<br>8th Floor<br>WASHINGTON, DISTRICT OF COLUMBIA 20036<br>UNITED STATES<br>amanda.drennen@spiegelmcd.com | Jeffrey A Schwarz<br>Spiegel & McDiarmid LLP<br>1818 N Street, NW<br>8th Floor<br>WASHINGTON, DISTRICT OF COLUMBIA<br>jeffrey.schwarz@spiegelmcd.com |

| | | |
|---|---|---|
| Maryland Office of People's Counsel | Michael Sammartino<br>Assistant People's Counsel<br>Maryland Office of People's Counsel<br>6 SAINT PAUL ST STE 2102<br>BALTIMORE, MARYLAND 21202<br>UNITED STATES<br>michael.sammartino@maryland.gov | William F. Fields<br>Deputy People's Counsel<br>6 SAINT PAUL ST STE 2102<br>BALTIMORE, MARYLAND 21202<br>william.fields@maryland.gov |
| Michigan Public Service Commission | Anna Stirling<br>Assistant Attorney General<br>Michigan Public Service Commission<br>7109 W SAGINAW HWY FL 3<br>LANSING, MICHIGAN 48917<br>UNITED STATES<br>stirlinga1@michigan.gov | Steven D Hughey<br>Assistant Attorney General<br>Department of Attorney General<br>7109 W SAGINAW HWY FL 3<br>LANSING, MICHIGAN 48917<br>hugheys@michigan.gov |
| Mid-Atlantic Interstate Transmission LLC | Evan Dean<br>Senior Corporate Counsel<br>FirstEnergy<br>76 S MAIN ST # A-GO-15<br>AKRON, OHIO 44308<br>UNITED STATES<br>edean@firstenergycorp.com | |
| Mid-Atlantic Interstate Transmission LLC | Amanda Parker<br>Attorney<br>FirstEnergy Service Company<br>76 South Main Street<br>Akron, OHIO 44308<br>UNITED STATES<br>aparker@firstenergycorp.com | |
| Monitoring Analytics, LLC | Jeffrey Mayes<br>General Counsel<br>Monitoring Analytics, LLC<br>2621 Van Buren Avenue, Suite 160<br>Valley Forge Corporate Center<br>Eagleville, PENNSYLVANIA 19403<br>UNITED STATES<br>jeffrey.mayes@monitoringanalytics.com | Suzette N Krausen<br>Executive Assistant<br>Monitoring Analytics, LLC<br>2621 Van Buren Ave Ste 160<br>Norristown, PENNSYLVANIA 19403<br>Suzette.Krausen@monitoringanalytics.c |
| Monitoring Analytics, LLC | | Joseph Bowring<br>Monitoring Analytics, LLC<br>2621 Van Buren Avenue, Suite 160<br>Norristown, PENNSYLVANIA 19403<br>Joseph.Bowring@monitoringanalytics.co |
| Monongahela Power Company | Evan Dean<br>Senior Corporate Counsel<br>FirstEnergy<br>76 S MAIN ST # A-GO-15<br>AKRON, OHIO 44308<br>UNITED STATES<br>edean@firstenergycorp.com | |
| Monongahela Power Company | Amanda Parker<br>Attorney<br>FirstEnergy Service Company<br>76 South Main Street<br>Akron, OHIO 44308<br>UNITED STATES<br>aparker@firstenergycorp.com | |
| Natural Resource Defense Council | Tom Rutigliano<br>Sr. Advocate<br>NRDC/FERC Project<br>1124 15th St. NW<br>Suite 300<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>trutigliano@nrdc.org | |
| New Jersey Division of Rate Counsel | Robert Glover<br>New Jersey Division of Rate Counsel<br>PO Box 003<br>Trenton,NEW JERSEY 08625<br>UNITED STATES<br>rglover@rpa.nj.gov | Debora Layugan<br>New Jersey Division of Rate Counsel<br>PO Box 003<br>Trenton,NEW JERSEY 08625<br>dlayugan@rpa.nj.gov |
| New Jersey Division of Rate Counsel | | T. David Wand<br>Division of Rate Counsel<br>New Jersey Division of Rate Counsel<br>140 E. Front St.<br>4th Flr. |

| | | |
|---|---|---|
| | | Trenton, NEW JERSEY 08625<br>dwand@rpa.nj.gov |
| New Jersey Division of Rate Counsel | | Brian O Lipman<br>Acting Director<br>New Jersey Division of Rate Counsel<br>140 East Front Street<br>4th Floor<br>Trenton, NEW JERSEY 08625<br>blipman@rpa.nj.gov |
| New Jersey Division of Rate Counsel | Peter Hopkins<br>Spiegel & McDiarmid LLP<br>1818 N Street, NW<br>8th Floor<br>WASHINGTON, DISTRICT OF COLUMBIA 20036<br>UNITED STATES<br>peter.hopkins@spiegelmcd.com | Scott H. Strauss, ESQ<br>Spiegel & McDiarmid LLP<br>1818 N Street, NW<br>8th Floor<br>WASHINGTON, DISTRICT OF COLUMBIA<br>Scott.Strauss@spiegelmcd.com |
| New Jersey Division of Rate Counsel | Amanda Drennen<br>Attorney<br>Spiegel & McDiarmid LLP<br>1818 N Street, NW<br>8th Floor<br>WASHINGTON, DISTRICT OF COLUMBIA 20036<br>UNITED STATES<br>amanda.drennen@spiegelmcd.com | Jeffrey A Schwarz<br>Spiegel & McDiarmid LLP<br>1818 N Street, NW<br>8th Floor<br>WASHINGTON, DISTRICT OF COLUMBIA<br>jeffrey.schwarz@spiegelmcd.com |
| NextEra Energy Transmission MidAtlantic, Inc. | Katherine O'Konski<br>Senior Attorney<br>NextEra Energy, Inc.<br>801 PENNSYLVANIA AVE NW STE 220<br>WASHINGTON, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>katherine.o'konski@nexteraenergy.com | |
| North Carolina Electric Membership Corporation | Randolph Elliott<br>McCarter & English, LLP<br>1301 K Street, NW<br>Suite 1000 West<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>relliott@mccarter.com | Michael D Youth<br>Associate General Counsel<br>NCEMC<br>3400 SUMNER BLVD<br>RALEIGH, NORTH CAROLINA 27616<br>michael.youth@ncemcs.com |
| North Carolina Electric Membership Corporation | Sean Beeny<br>McCarter & English, LLP<br>1301 K Street, NW<br>Suite 1000 West<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>sbeeny@mccarter.com | Charles Bayless<br>General Counsel<br>North Carolina Electric Membership Corp<br>3400 SUMNER BLVD<br>RALEIGH, NORTH CAROLINA 27616<br>charlie.bayless@ncemcs.com |
| North Carolina Electric Membership Corporation | F. Alvin Taylor<br>Attorney<br>McCarter & English, LLP<br>1301 K Street, NW<br>Suite 1000 West<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>ataylor@mccarter.com | |
| Office of the Ohio Consumers' Counsel | Denise Goulet<br>Partner<br>McCarter & English, LLP<br>1301 K ST NW<br>SUITE 1000 WEST<br>WASHINGTON, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>dgoulet@mccarter.com | |
| Office of the Ohio Consumers' Counsel | Angela O'Brien<br>Deputy Consumers' Counsel<br>Office of the Ohio Consumers' Counsel<br>65 E STATE ST STE 700<br>OFFICE OF THE OHIO CONSUMERS' COUNSEL<br>COLUMBUS, OHIO 43215<br>UNITED STATES<br>angela.obrien@occ.ohio.gov | |
| Office of the People's Counsel for the District of Columbia | Scott Strauss<br>Spiegel & McDiarmid LLP<br>1818 N Street, NW<br>8th Floor<br>WASHINGTON, DISTRICT OF COLUMBIA 20036 | E Service<br>Spiegel & McDiarmid LLP<br>1875 Eye St, NW<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 2(<br>eService@spiegelmcd.com |

| | | |
|---|---|---|
| | UNITED STATES<br>Scott.Strauss@spiegelmcd.com | |
| Office of the People's Counsel for the District of Columbia | | Ade Adeniyi<br>aadeniyi@opc-dc.gov |
| Ohio Federal Energy Advocate | Thomas Lindgren<br>Assistant Attorney General<br>Public Utilities Commission of Ohio<br>30 East Broad Street<br>16th Floor<br>Columbus, OHIO 43215-3793<br>UNITED STATES<br>thomas.lindgren@ohioattorneygeneral.gov | Sarah Parrot<br>Federal Energy Advocate<br>Public Utilities Commission of Ohio<br>180 E BROAD ST<br>COLUMBUS, OHIO 43215<br>sarah.parrot@puco.ohio.gov |
| Old Dominion Electric Cooperative | Adrienne Clair<br>Attorney<br>Thompson Coburn LLP<br>1909 K Street NW<br>Suite 600<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>aclair@thompsoncoburn.com | Jecoliah R. Williams<br>Thompson Coburn LLP<br>1909 K Street N.W.<br>Suite 600<br>WASHINGTON, DISTRICT OF COLUMBIA<br>jwilliams@thompsoncoburn.com |
| Organization of PJM States, Inc. | Gregory Carmean<br>Executive Director<br>Organization of PJM States, Inc.<br>700 Barksdale Road<br>Suite 1<br>Newark, DELAWARE 19711<br>UNITED STATES<br>greg@opsi.us | |
| Pennsylvania Public Utility Commission | Elizabeth Barnes<br>Deputy Chief Counsel<br>Pennsylvania Public Utility Commission<br>PO BOX 3265<br>HARRISBURG, PENNSYLVANIA 17105<br>UNITED STATES<br>ebarnes@pa.gov | Kriss E. Brown, ESQ<br>Deputy Chief Counsel<br>Pennsylvania Public Utility Commission<br>P.O. Box 3265<br>Harrisburg, PENNSYLVANIA 17105-3265<br>kribrown@pa.gov |
| PJM Interconnection, L.L.C. | Thomas DeVita<br>PJM Interconnection, L.L.C.<br>2750 Monroe Blvd.<br>Audubon, PENNSYLVANIA 19403<br>UNITED STATES<br>thomas.devita@pjm.com | Craig Glazer<br>V.P., Federal Gov't Policy<br>PJM Interconnection, L.L.C.<br>1200 G Street, N.W.<br>Suite 600<br>Washington, DISTRICT OF COLUMBIA 2(<br>craig.glazer@pjm.com |
| PJM Interconnection, L.L.C. | Jessica Lynch<br>Assistant General Counsel<br>PJM Interconnection, L.L.C.<br>2750 Monroe Blvd.<br>Audubon, PENNSYLVANIA 19403<br>UNITED STATES<br>jessica.lynch@pjm.com | |
| PJM Power Providers Group | Glen Thomas<br>101 Lindenwood Drive<br>Suite 225<br>Malvern, PENNSYLVANIA 19355<br>UNITED STATES<br>gthomas@gtpowergroup.com | Diane L Slifer<br>101 LINDENWOOD DR STE 225<br>MALVERN, PENNSYLVANIA 19355<br>dslifer@gtpowergroup.com |
| PJM Power Providers Group | | Laura Chappelle<br>6688 FOREST BEACH DR<br>HOLLAND, MICHIGAN 49423<br>laurac@chappelleconsulting.net |
| PPL Electric Utilities Corporation | Steven Nadel<br>PPL Services Corporation<br>2 North 9th St<br>Allentown, PENNSYLVANIA 18101<br>UNITED STATES<br>SMNadel@pplweb.com | Donald A Kaplan<br>K&L Gates LLP<br>1601 K Street, NW<br>Washington, DISTRICT OF COLUMBIA 2(<br>don.kaplan@klgates.com |
| PPL Electric Utilities Corporation | | Kimberly B Frank<br>Counsel<br>K&L Gates LLP<br>1601 K Street NW<br>Washington, DISTRICT OF COLUMBIA 2(<br>kimberly.frank@klgates.com |
| PPL Electric Utilities | | John Longstreth<br>K&L Gates LLP |

| | | |
|---|---|---|
| Corporation | | 1601 K Street, NW<br>Washington, DISTRICT OF COLUMBIA 20<br>john.longstreth@klgates.com |
| PPL Electric<br>Utilities<br>Corporation | | Chimera N Thompson<br>K&L Gates LLP<br>1601 K ST NW<br>WASHINGTON, DISTRICT OF COLUMBIA<br>chimera.thompson@klgates.com |
| PPL Electric<br>Utilities<br>Corporation | | William Keyser, III<br>Steptoe LLP<br>1330 Connecticut Avenue, NW<br>Washington, DISTRICT OF COLUMBIA 20<br>wkeyser@steptoe.com |
| PPL Electric<br>Utilities<br>Corporation | | Karen Bruni<br>Steptoe LLP<br>1330 CONNECTICUT AVE NW<br>WASHINGTON, DISTRICT OF COLUMBIA<br>kbruni@steptoe.com |
| PPL Electric<br>Utilities<br>Corporation | | Megan McDowell<br>Steptoe LLP<br>1330 Connecticut Ave NW<br>Washington, DISTRICT OF COLUMBIA 20<br>mmcdowell@steptoe.com |
| PUBLIC CITIZEN,<br>INC | Tyson Slocum<br>Energy Program Director<br>PUBLIC CITIZEN, INC<br>215 PENNSYLVANIA AVE SE<br>PUBLIC CITIZEN, INC.<br>WASHINGTON, DISTRICT OF COLUMBIA 20003<br>UNITED STATES<br>tslocum@citizen.org | |
| Public Service<br>Electric and Gas<br>Company | Ana Murteira<br>Associate Regulatory Counsel<br>PSEG Services Corporation<br>80 PARK PLZ # T10<br>NEWARK, NEW JERSEY 07102<br>UNITED STATES<br>ana.murteira@pseg.com | Robert E. Gardinor<br>Paralegal<br>PSEG Services Corporation<br>80 Park Plaza, T5<br>Newark, NEW JERSEY 07102<br>Robert.Gardinor@pseg.com |
| Rockland Electric<br>Company | Paul Savage<br>Consolidated Edison Development, Inc.<br>4 Irving Place<br>New York, NEW YORK 10003<br>UNITED STATES<br>savagep@coned.com | Dana Lazarus<br>Director<br>Con Edison Company of New York<br>4 Irving Place<br>New York, NEW YORK 10003<br>lazarusd@coned.com |
| Rockland Electric<br>Company | | Kacie Rettig<br>Con Ed<br>Con Edison Company of New York<br>4 IRVING PL<br>NEW YORK, NEW YORK 10003<br>rettigk@coned.com |
| Rolling Hills<br>Generating L.L.C. | Michael Engleman<br>Engleman Fallon, PLLC<br>1717 K Street NW<br>Suite 900<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>mengleman@efenergylaw.com | Marjorie R Philips<br>VP, Wholesale Market Policy<br>LS Power Associates L.P.<br>1700 Broadway, 38th Floor<br>New York, NEW YORK 10019<br>mphilips@lspower.com |
| Sierra Club | Justin Vickers<br>Senior Attorney<br>Sierra Club<br>Environmental Law Program<br>1229 W. Glenlake Ave.<br>Chicago, ILLINOIS 60660<br>UNITED STATES<br>justin.vickers@sierraclub.org | |
| Silver Run<br>Electric, LLC | Michael Engleman<br>Engleman Fallon, PLLC<br>1717 K Street NW<br>Suite 900<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>mengleman@efenergylaw.com | Christina R. Switzer<br>Engleman Fallon, PLLC<br>823 Congress Ave<br>Suite 300-67<br>Austin, TEXAS 78701<br>cswitzer@efenergylaw.com |
| Silver Run<br>Electric, LLC | | Sharon Segner<br>Vice President<br>LS Power Associates LP |

| | | |
|---|---|---|
| | | 1001 19th Street North<br>Suite 1200<br>Arlington, VIRGINIA 22209<br>ssegner@lspower.com |
| Solar Energy Industries Association | Melissa Alfano<br>Manager of Regulatory Affairs<br>Solar Energy Industries Association<br>1425 K Street, N.W., Suite 1000<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>malfano@seia.org | Ben Norris<br>Manager of Federal Regulatory<br>Solar Energy Industries Association<br>1425 K St NW<br>Washington, DISTRICT OF COLUMBIA 2(<br>bnorris@seia.org |
| Southern Maryland Electric Cooperative, Inc. | John Rohrbach<br>ED Regulatory<br>ACES POWER MARKETING<br>4140 W 99TH ST<br>CARMEL, INDIANA 46032<br>UNITED STATES<br>JRohrbach@acespower.com | Damon Krieger<br>VP, Legal Affairs, Deputy Gen<br>Southern Maryland Electric Cooperative,<br>15035 Burnt Store Road<br>P.O. Box 1937<br>Hughesville, MARYLAND 20637-1937<br>Damon.Krieger@SMECO.coop |
| Southern Maryland Electric Cooperative, Inc. | | Mark MacDougall<br>Senior Vice President and Gene<br>Southern Maryland Electric Cooperative,<br>PO Box 1937<br>Hughesville, 20637-1937<br>mark.macdougall@smeco.coop |
| Southern Maryland Electric Cooperative, Inc. | | Eugene Bradford<br>Vice President, Rates and Ener<br>SOUTHERN MARYLAND ELECTRIC COOP<br>15035 Burnt Store Rd.<br>Hughesville, MARYLAND 20637<br>Eugene.Bradford@smeco.coop |
| Sustainable FERC Project | Tom Rutigliano<br>Sr. Advocate<br>NRDC/FERC Project<br>1124 15th St. NW<br>Suite 300<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>trutigliano@nrdc.org | |
| The Potomac Edison Company | Evan Dean<br>Senior Corporate Counsel<br>FirstEnergy<br>76 S MAIN ST # A-GO-15<br>AKRON, OHIO 44308<br>UNITED STATES<br>edean@firstenergycorp.com | |
| The Potomac Edison Company | Amanda Parker<br>Attorney<br>FirstEnergy Service Company<br>76 South Main Street<br>Akron, OHIO 44308<br>UNITED STATES<br>aparker@firstenergycorp.com | |
| Trans-Allegheny Interstate Line Company | Evan Dean<br>Senior Corporate Counsel<br>FirstEnergy<br>76 S MAIN ST # A-GO-15<br>AKRON, OHIO 44308<br>UNITED STATES<br>edean@firstenergycorp.com | |
| Trans-Allegheny Interstate Line Company | Amanda Parker<br>Attorney<br>FirstEnergy Service Company<br>76 South Main Street<br>Akron, OHIO 44308<br>UNITED STATES<br>aparker@firstenergycorp.com | |

[ Back to Query Service List ] [ Back to FERCOnline ]

**Title 18, U.S.C. 1001 makes it a crime for any person knowingly and willingly to make to any Agency or Department of the United States**
**fictitious or fraudulent statements as to any matter within its jurisdiction.**

FERC Online does not require the submission of personally identifiable Information (PII) (e.g. social security numbers, birthdates, and phone num
FERC will not be responsible for any PII submitted to FERC Online, including any accidental or inadvertent submissions of PII.

This site contains information collections that are subject to the Paperwork Reduction Act (PRA). Among other things, the PRA requires FERC to p
with an estimate of the average burden of completing the information collections on this site. Comments regarding the burden estimate or any oth
these forms can be directed to FERC's Information Collection Branch at DataClearance@ferc.gov.

*In addition, you are not required to respond to any collection of information unless it displays a currently valid Office of Management and Budget (number. FERC provides the OMB Control Numbers of the information collections on this site at <u>www.ferc.gov/information-collections</u>.*

**For any issues regarding FERC Online, please contact <u>FERC Online Support</u> or call Local: 202-502-6652 | Toll-free: 866-208-3676. Please current mail address, telephone number, and e-mail address.**